UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DANIEL JONES,

                        Petitioner,

                                            9:21-CV-1007
v.                                         (AMN/ML)

DANIELLE TOPE, Psy. D.,

                            Respondent.

_____

APPEARANCES:                            OF COUNSEL:

DANIEL JONES
  *Pro se* Petitioner
CNY Psychiatric Center
Post Office Box 300
Marcy, New York 13403


LETITIA A. JAMES                       PAUL B. LYONS, ESQ.
New York State Attorney General         Assistant Attorney General
  Counsel for Respondent
28 Liberty Street
New York, New York 10005

MIROSLAV LOVRIC, United States Magistrate Judge

## <u>REPORT and RECOMMENDATION</u>

       Currently before the Court in this habeas corpus proceeding filed by the petitioner, Daniel

Jones ("Petitioner"), pursuant to 28 U.S.C. § 2254, is a referral to the undersigned for a report

and recommendation from United States District Court Judge Anne M. Nardacci regarding the

Petition. (Dkt. No. 1.) Petitioner is currently involuntarily civilly confined at the Central New

York Psychiatric Center ("CNYPC") in the Sex Offender Treatment Program ("SOTP") under

the custody of the New York State Office of Mental Health ("OMH") pursuant to Article 10 of

the New York State Mental Hygiene Law.  On September 13, 2021, Petitioner filed a *pro se*

Petition seeking a writ of habeas corpus challenging his confinement at CNYPC.  (Dkt. No. 1.)

Respondent opposed that motion and Petitioner filed a traverse.  (Dkt. Nos. 16, 17, 18, 20, 29.)

For the following reasons, the undersigned recommends that the Petition be denied.

## I.    BACKGROUND

In 1985, Petitioner pleaded guilty to one count of sexual abuse in the first degree with

respect to multiple incidents of sexual acts by Petitioner against his two stepdaughters and one

stepson that occurred between 1979 and 1982.  (Dkt. No. 20, Attach. 2 at 93; Dkt. No. 20,

Attach. 2 at 102-104.)  He was sentenced to a term of five years probation.  (Dkt. No. 20, Attach.

2 at 93; Dkt. No. 20, Attach. 2 at 102-104.)

Underlying the relevant civil commitment in this habeas petition, a jury found Petitioner

guilty of attempted rape in the first degree, two counts of sexual abuse in the first degree, and

other related offenses.  (Dkt. No. 20, Attach. 2 at 92.)  On May 13, 1992, Petitioner was

sentenced on those convictions to an aggregate indeterminate term of imprisonment from ten to

twenty years.  (*Id.*)

Before the expiration of Petitioner's prison sentence, the State petitioned under N.Y.

Mental Hyg. Law § 10 for Petitioner to remain civilly confined in the State's custody, and

Petitioner was assigned counsel.  (Dkt. No. 20, Attach. 2 at 89-100, 127-28.)

On June 27, 2012, the Erie County Supreme Court found probable cause to believe that

Petitioner would require civil management pursuant to N.Y. Mental Hyg. Law § 10.06.  (Dkt.

No. 20, Attach. 2 at 135-36; Dkt. No. 20, Attach. 2 at 395-448.)

On August 8, 2016, Petitioner waived a jury trial and consented to a finding of mental

abnormality as defined by Article 10 of the N.Y. Mental Hyg. Law.  (Dkt. No. 20, Attach. 2 at

230-231; Dkt. No. 20, Attach. 2 at 524-529.)  Petitioner later moved to vacate his waiver and consent, but the court denied his motion.  (Dkt. No. 20, Attach. 2 at 250-203, 580-599.)

On July 13, 2017, Petitioner filed a state habeas corpus petition.  (Dkt. No. 17, Attach. 1 at 1-7.)  On September 14, 2017, the Erie County Supreme Court denied Petitioner's state habeas corpus petition.  (Dkt. No. 17, Attach. 1 at 19-20.)  On September 26, 2017, Petitioner appealed this order ("Appeal 3").  (Dkt. No. 17, Attach. 1 at 51.)

Following a dispositional hearing, on November 21, 2017, the Erie County Supreme Court concluded that Petitioner is a dangerous sex offender requiring confinement and ordered him committed to a secure treatment facility to receive further sex offender treatment.  (Dkt. No. 20, Attach. 2 at 601-683; Dkt. No. 20, Attach. 2 at 685-688.)  On December 6, 2017, Petitioner appealed this order ("Appeal 1").  (Dkt. No. 17, Attach. 1 at 36.)

On November 29, 2017, Petitioner filed a motion pursuant to N.Y. C.P.L.R. §§ 4404(b), 5015 seeking reconsideration and to vacate the order of commitment.  (Dkt. No. 20, Attach. 2 at 794-844.)  On April 17, 2018, the Erie County Supreme Court denied Petitioner's motion.  (Dkt. No. 20, Attach. 2 at 792.)  On April 30, 2018, Petitioner appealed the denial of his reconsideration motion ("Appeal 2").  (Dkt. No. 20, Attach. 2 at 788.)

On October 25, 2018, Petitioner filed a motion to consolidate his appeals.  (Dkt. No. 17, Attach. 1 at 21-56.)  On November 13, 2018, the New York Appellate Division Fourth Department, granted Petitioner's motion to consolidate to the extent that it sought to consolidate Appeal 1 and Appeal 2, and denied Petitioner's motion to the extent that it sought to consolidate Appeal 3 with Appeals 1 and 2.  (Dkt. No. 17, Attach. 1 at 57-60.)

On November 19, 2018, Petitioner filed a stipulation to withdraw Appeal 3. (Dkt. No. 17, Attach. 1 at 61-62.) On November 30, 2018, the New York Appellate Division Fourth Department dismissed Appeal 3. (Dkt. No. 17, Attach. 1 at 63.)

Through counsel, Petitioner asserted the following six arguments related to Appeals 1 and 2: (1) the State failed to show probable cause to continue to detain Petitioner and his due process rights were violated by the delay in the probable cause hearing; (2) Petitioner's due process rights were violated by the delay in holding the mental abnormality hearing; (3) Petitioner's admission to a mental abnormality should be vacated; (4) the trial court should have excluded all testimony concerning the unsubstantiated hearsay allegations of Petitioner's stepchildren at the disposition hearing; (5) the Appellate Court should exercise its independent power of review and find that the State did not meet its burden of proving by clear and convincing evidence that Petitioner was a dangerous sex offender requiring confinement; and (6) the trial court should have granted Petitioner's *pro se* N.Y. C.P.L.R. § 4404 motion. (Dkt. No. 20, Attach. 2 at 861-926.)

On February 7, 2020, the Appellate Division unanimously affirmed the commitment order, and on June 23, 2020, the New York Court of Appeals denied leave to appeal. *State v. Daniel J.*, 180 A.D.3d 1347 (N.Y. App. Div. 4th Dep't 2020), *lv. denied*, 35 N.Y.3d 908 (2020); (Dkt. No. 20, Attach. 2 at 1008-10, 1067.)

## II.    GROUNDS RAISED

### A.    Petition

On September 13, 2021, Petitioner commenced this proceeding by the filing of a verified Petition for writ of habeas corpus. (Dkt. No. 1.) The Petition asserts the following ten grounds for habeas relief: (1) Petitioner's due process rights were violated by the untimely probable cause

hearing ("Ground 1"); (2) Petitioner's due process rights were violated by the court's finding of probable cause based on legally insufficient evidence ("Ground 2"); (3) Petitioner's due process rights were violated by the untimely mental abnormality hearing ("Ground 3"); (4) Petitioner's due process rights were violated because his admission of mental abnormality was not made knowingly, voluntarily, and intelligently ("Ground 4"); (5) Petitioner's due process rights were violated because the court failed to conduct a proper allocution during his trial waiver ("Ground 5"); (6) Petitioner's due process right to present evidence was violated by the court's refusal to grant an adjournment ("Ground 6"); (7) Petitioner was deprived of effective assistance of counsel ("Ground 7"); (8) Petitioner's due process rights were violated because the court considered unsubstantiated hearsay allegations at the dispositional hearing ("Ground 8"); (9) Petitioner's due process rights were violated because the State did not meet its burden of proving by clear and convincing evidence that Petitioner was a dangerous sex offender requiring confinement ("Ground 9"); and (10) Petitioner was deprived of due process because his procedural rights pursuant to N.Y. Mental Hyg. Law § 10.01, *et seq*. were violated ("Ground 10"). (*See generally* Dkt. No. 1.)

### B.    Respondent's Answer and Memorandum of Law

Generally, Respondent makes the following six arguments in support of her answer: (1) Petitioner's claim regarding the delay in conducting the probable cause hearing is meritless; (2) Petitioner's challenge to the court's probable cause finding is unexhausted, procedurally barred, and meritless; (3) Petitioner's speedy trial claim is unexhausted, procedurally barred, and meritless; (4) there is no merit to Petitioner's unexhausted claims challenging his mental abnormality trial waiver, the effectiveness of his counsel, and the denial of his adjournment

request; (5) Petitioner's hearsay claim is meritless; and (6) Petitioner's legal sufficiency claim as to the court's dispositional finding is unexhausted and meritless. (*See generally* Dkt. No. 18.)

More specifically, with respect to her first argument (addressing Grounds 1 and 10), Respondent asserts that the delay in holding the probable cause hearing was attributable to Petitioner, who requested that the proceeding be removed to Erie County. (Dkt. No. 18 at 27-30.) Respondent argues that the base of Petitioner's claim is not a due process claim, but a violation of N.Y. Mental Hyg. Law § 10.06(h), and federal habeas corpus relief does not lie for errors of state law. (*Id*. at 28-29.) Moreover, Respondent argues that—even if the claim were cognizable—the Supreme Court has never addressed whether due process could be violated by a delay in holding a civil commitment probable cause hearing and thus, it cannot be said that the state court unreasonably applied clearly established federal law within the meaning of the AEDPA. (*Id*. at 29.) Further, Respondent argues that Petitioner has not established a violation of state law so egregious as to amount to constitutional error because N.Y. Mental Hyg. Law § 10.06(h) states that failure to commence the probable cause hearing within the time periods specified shall not result in the dismissal of the petition and shall not affect the validity of the hearing or the probable cause determination. (*Id*. at 29-30.) Finally, Respondent argues that Petitioner cannot establish that he was prejudiced by the delay because the court ultimately found probable cause. (*Id*. at 30.)

With respect to her second argument (addressing Ground 2), Respondent argues that Petitioner's challenge to the court's probable cause finding was raised to the Appellate Division solely on state law terms and, in any event, is barred on adequate and independent state law grounds because the Appellate Division denied the claim as non-appealable. (Dkt. No. 18 at 30-33.) Moreover, Respondent argues that Petitioner's challenge to the probable cause finding is

procedurally defaulted because Petitioner has already had the one direct appeal and one leave application to which he is entitled.  (*Id.*)  Further, Respondent argues that Petitioner cannot overcome the bar to federal habeas review of the procedurally defaulted claim because he cannot establish cause nor can he establish prejudice.  (*Id*. at 31-32.)  Moreover, Respondent argues that, even if the claim was properly exhausted, the New York State procedural rule that no appeal lies from an order finding probable cause, is a firmly established and regularly followed state practice that may be deemed adequate to prevent subsequent review by this Court.  (*Id*. at 32.) Finally, Respondent argues that the claim is meritless because the Constitution does not guarantee a right to a probable cause hearing in a civil commitment proceeding and any error in the probable cause hearing was cured by Petitioner's subsequent decision to waive the trial.  (*Id*. at 32-33.)

With respect to her third argument (addressing Grounds 3 and 10), Respondent argues that Petitioner failed to raise his speedy trial claim in his detailed leave application to the Court of Appeals and it is thus, the claim is unexhausted and defaulted under state law.  (Dkt. No. 18 at 33-34.)  Further, Respondent argues that the Appellate Division found that Petitioner failed to preserve for its review the speedy trial claim and failure to preserve an issue for appeal is an adequate and independent state ground barring habeas review.  (*Id*. at 34.)  Finally, Respondent argues that the speedy trial claim is meritless because (1) a violation of state statute—N.Y. Mental Hyg. § 10.07(a)—is not automatically a federal constitutional violation unless the error was sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment; (2) the Supreme Court has never opined that a delay in a civil commitment proceeding can violate either the Sixth Amendment or due process and thus, the state court could not have unreasonably applied such law; (3) Petitioner's knowing, intelligent, and voluntary

waiver of his right to a jury trial renders academic his challenge to the trial delay; (4) the delay attributable to the prosecution in this case was not so excessive as to violate due process because the vast majority of the delay was at Petitioner's request (over the State's objection) so that he could collaterally attack his 1992 conviction and to accommodate his expert; and (5) given that Petitioner's dangerousness had already been determined by the court at the probable cause hearing, and that Petitioner waived a trial where he could have challenged that finding of dangerousness, there is no basis to find that due process was violated by the delay in holding a trial.  (Dkt. No. 18 at 35-37.)

With respect to her fourth argument (addressing Grounds 4, 5, 6, and 7), Respondent asserts that Petitioner's claims challenging his mental abnormality trial waiver are unexhausted and meritless.  (Dkt. No. 18 at 37-61.)  Respondent asserts that Petitioner's claim that his trial waiver was coerced and involuntary is unexhausted because his arguments to the Appellate Division relied solely on state law and did not "fairly present" a federal constitutional claim.  (*Id.* at 37-38.)  Moreover, Respondent argues that the claims are meritless because (1) there is no clearly established Supreme Court law providing the standard for reviewing claims as to the voluntariness of the waiver of a civil commitment trial so it cannot be said that the state court unreasonably applied clearly established federal law within the meaning of the AEDPA; (2) the record establishes that Petitioner's waiver was both knowing and intelligent; (3) the record establishes that Petitioner's waiver was voluntary; (4) there is no merit to Petitioner's adjournment claim given that (a) there is no clearly established Supreme Court law regarding the standard for reviewing the denial of an adjournment request in a civil commitment proceeding and thus, the Appellate Division could not have unreasonably applied such law, and (b) the trial court's denial of the adjournment was neither unreasonable or arbitrary and Petitioner cannot

show prejudice; (5) Petitioner's waiver-allocution claim is meritless given that (a) Petitioner has not established that the court's purportedly improper statement affected his decision to waive trial, (b) Petitioner stated on the record that no one was forcing him to waive his right to a jury trial, and (c) due process does not require any particular script be followed by the court, Petitioner's own statements implied his awareness that the State carried the burden at trial, and even if he was unaware of the State's burden, it is not probable that such knowledge affected his decision to waive trial; (6) Petitioner's ineffective assistance of counsel claim is meritless given that (a) there is no clearly established Supreme Court law governing ineffective assistance of counsel claims in civil commitment proceedings, and (b) even if there was clearly established Supreme Court precedence, the Appellate Division did not unreasonably apply it; (7) Petitioner's failure to inquire claim is without merit given that (a) there is no clearly established Supreme Court law holding that a trial court has a duty to inquire into a claim of dissatisfaction with assigned counsel made by an indigent respondent in a civil commitment proceeding, (b) Petitioner's complaints about his attorney did not merit further inquiry from the trial court, (c) the trial court did, in fact, conduct an adequate inquiry into Petitioner's complaints about his attorney, and (d) although the trial court reserved decision on reassignment during the hearing of August 8, 2016, it subsequently granted a motion for substitution of counsel, who then filed a motion to withdraw Petitioner's trial waiver, which the court denied and "affirmatively" ruled that counsel had not been ineffective.  (Dkt. No. 18 at 39-61.)

With respect to her fifth argument (addressing Ground 8), Respondent asserts that Petitioner's claim that his due process rights were violated by the admission of hearsay at the dispositional hearing, is meritless.  (Dkt. No. 18 at 61-69.)  More specifically, Respondent argues that there is no clearly established Supreme Court law on the standard for reviewing the

admission of hearsay in civil commitment proceedings, and even assuming that such law exists, the Appellate Division's decision did not unreasonably apply the law. (*Id*.) Respondent asserts that any error in admitting hearsay evidence in this case was harmless because the case against Petitioner relied primarily on admissible evidence including (1) expert testimony about crimes that Petitioner was convicted of or admitted to, and (2) Petitioner's refusal to participate in sex offender treatment while in prison. (*Id*.) Further, Respondent asserts that Petitioner failed to establish that any error in admitting the hearsay was so egregious or fundamentally unfair as to violate due process. (*Id*.)

With respect to her sixth argument (addressing Ground 9), Respondent asserts that Petitioner's claim that the State failed to establish by clear and convincing evidence that Petitioner was a dangerous sex offender requiring confinement, is unexhausted and meritless. (Dkt. No. 18 at 69-74.) More specifically, Respondent argues that (1) Petitioner failed to raise this claim in federal terms in the Appellate Division, and (2) Petitioner failed to mention the claim (in state or federal terms) in his leave application to the Court of Appeals and has failed to allege cause for his failure and/or prejudice. (*Id*.) Respondent argues that in any event, the claim is without merit because the Appellate Division's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (*Id*.) Further, Respondent argues that the New York Appellate Division's holding—that the trial court's disposition finding was supported by the written opinions and testimony of two experts—was correct and should not be second-guessed. (*Id*.)

### C.    Petitioner's Traverse

Petitioner makes the following ten arguments in his Traverse: (1) the delay in conducting the probable cause hearing violated Plaintiff's due process right because (a) his request for a

removal to Erie County was not a consent to a delay in the proceeding, and (b) he exhausted the claim by raising it on direct appeal in federal terms; (2) his due process rights argument related to the probable cause hearing (a) has merit because the probable cause finding was not supported by legally sufficient evidence, (b) was exhausted because the cases he relied on employed a constitutional analysis in similar factual situations, and (c) should not be barred based on adequate and independent state law grounds because the procedural rule—that no appeal lies from a finding of probable cause—is not fairly established and regularly followed; (3) Petitioner's due process rights were violated by the court's failure to hold a trial within sixty days of the probable cause finding and (a) this argument was raised before the Appellate Division and leave application to the Court of Appeals, (b) the New York appeals courts had a duty to review whether Petitioner's fundamental constitutional rights were violated and, despite having an opportunity, failed to make a finding, (c) in any event, the denial of a claim on state law procedural grounds does not deprive the habeas court of jurisdiction, (d) the statutory violation establishes presumptive prejudice; (4) there is merit to Petitioner's exhausted claim asserting that his trial waiver was not made knowingly and intelligently because the trial court failed to (a) inform Petitioner that the state carried the burden at trial, (b) explain the elements of a mental abnormality, and (c) elicit a factual statement or admission from Petitioner implying that he had serious difficulty controlling his conduct; (5) there is merit to Petitioner's exhausted claim asserting that his trial waiver was not made voluntarily because the record reflects that he was under undue pressure in light of (a) the motion he submitted to the trial court outlining his concerns that his assigned counsel was unprepared for trial, (b) the trial court's statement suggesting that it had already determined Petitioner suffered from a mental abnormality before the evidence was introduced or received by the court, (c) the trial court's failure to inquire

further when asked whether anyone was forcing Petitioner to make an admission of a mental abnormality and he stated that it was a hard question, and (d) Petitioner filed a motion to withdraw his waiver which provided specific facts showing that his waiver was not voluntary; (6) there is merit to Petitioner's claim that the denial of his adjournment request violated due process because the State made a late disclosure that effectively left Petitioner without an expert witness to testify on his behalf and present evidence in his case; (7) Petitioner's claim that his assigned counsel provided ineffective assistance of counsel has merit because (a) there is established Supreme Court precedent governing ineffective counsel claims in civil commitment proceedings, and (b) Attorney Cutting was unfamiliar with the facts and law of Petitioner's case and it was never his intention to challenge the State's case or present an expert witness on Petitioner's behalf; (8) the trial court failed to conduct a sufficient inquiry into Petitioner's concerns regarding his assigned counsel; (9) Petitioner's hearsay claim has merit because (a) the State's case relied on experts who relied almost exclusively on inadmissible hearsay, (b) the trial court demonstrated its partiality by having an ex parte conversation with Petitioner's independent doctor and determined that Petitioner had a mental abnormality before any evidence was admitted, and (c) the error admitting the hearsay was not harmless and suggested Petitioner's inability to control his sexual behavior; and (10) Petitioner's exhausted legal sufficiency claim has merit because (a) the factors relied upon by the State's experts did not support a finding that Petitioner had the required difficulty to control his conduct, (b) the State's experts relied upon unsubstantiated hearsay concerning sexual abuse of Petitioner's stepdaughters from his second marriage, (c) the trial court considered how long Petitioner was in the community before reoffending but the alleged re-offense was not a crime he pleaded guilty to and thus should not have been considered a re-offense, (d) the trial court improperly considered that Petitioner has

maintained his innocence for over 25 years—which includes when Petitioner was eligible for

parole or conditional release if he admitted his guilt—and did not fully participate in sex

offender treatment while incarcerated, and (e) no expert testified that a diagnosis of pedophilia

alone demonstrated Petitioner's serious difficulty in controlling his sexual conduct. (Dkt. No. 29

at 5-38.)

## III.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Review of Habeas Petition

A person in custody pursuant to the judgment of a state court may file a petition for a writ

of habeas corpus in the United States District Courts if the custody is in violation of the

Constitution or laws or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a); *Williams*

*v. Taylor*, 529 U.S. 362, 375 n.7 (2000). The fact that Petitioner is challenging his civil

commitment for mental illness rather than his underlying criminal conviction does not change

the outcome as civil commitments are typically challenged in habeas proceedings. *See Duncan*

*v. Walker*, 533 U.S. 167, 176 (2001) (stating that a state court order of civil commitment satisfies

§ 2254's "in custody" requirement). A person in state custody may challenge his confinement

under 28 U.S.C. § 2241 or 28 U.S.C. § 2254. However, a § 2241 petition generally challenges

the execution of a sentence such as "the administration of parole, computation of a prisoner's

sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and

prison conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001). Because Petitioner

challenges the term of his confinement rather than the conditions surrounding it, he has properly

brought his claim under § 2254. *See Buthy v. Comm'r of Office of Mental Health of New York*,

818 F.2d 1046, 1051-52 (2d Cir. 1987) (petitioning for a writ of habeas corpus pursuant to §

2254 is the appropriate method for an individual to challenge the fact or duration of his involuntary civil commitment to a state psychiatric institution).

Where a case challenging a civil commitment is initiated by the filing of a petition for habeas corpus, the case is governed by the deferential standard of review prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). *Ernst J. v. Stone,* 452 F.3d 186, 188 (2d Cir. 2006). Under AEDPA, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it.

*See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d

200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo

standard to a federal claim not reached by the state court).  In so doing, the Court presumes that

the state court decided the claim on the merits and the decision rested on federal grounds.  *See*

*Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see*

*also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman*

interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same).  This

Court gives the presumed decision of the state court the same AEDPA deference that it would

give a reasoned decision of the state court.  *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011)

(rejecting the argument that a summary disposition was not entitled to § 2254(d) deference);

*Jimenez*, 458 F.3d at 145-46.  Under the AEDPA, the state court's findings of fact are presumed

to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28

U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

    **B.**    **Exhaustion**

    "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available

state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged

violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing

*Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28

U.S.C. § 2254(b)(1).  The prisoner must "fairly present" his claim in each appropriate state court,

including the highest court with powers of discretionary review, thereby alerting that court to the

federal nature of the claim.  *Baldwin*, 541 U.S. at 29; *Bossett v. Walker*, 41 F.3d 825, 828 (2d

Cir. 1994).

"A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'" *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir. 1982)).

Where a petitioner has failed to exhaust his claims, but he cannot return to state court, petitioner's claims are then "deemed" exhausted, but barred by procedural default. *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994). The merits of such a procedurally defaulted claim may not be reviewed by a federal court unless the petitioner can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that the constitutional violation has resulted in the conviction of one who is "actually innocent." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012); *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). The actual innocence prong is referred to as the fundamental miscarriage of justice exception. *Rivas,* 687 F.3d at 540. "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

IV.    **ANALYSIS**[1]

A.    **Ground 1**

After carefully considering the matter, I recommend that Petitioner's claim regarding the delay in holding his probable cause hearing (Ground 1) be denied for the reasons set forth in Respondent's memorandum of law.  (Dkt. No. 18 at 27-30.)  The undersigned merely would like to highlight Respondent's argument that the delay in holding the hearing was primarily attributable to Petitioner's request for a change in venue.  (*Id.*)  The New York Appellate Division's denial of Petitioner's claim did not unreasonably apply clearly established Supreme Court law.  *Daniel J.*, 180 A.D.3d at 1328 (citing N.Y. Mental Hyg. § 10.06(g)).

B.    **Ground 2**

After carefully considering the matter, I recommend that Petitioner's claim that the trial court's finding of probable cause was based on legally insufficient evidence (Ground 2) be denied for the reasons set forth in Respondent's memorandum of law.  (Dkt. No. 18 at 30-33.)

As an initial matter, Ground 2—which is a federal constitutional claim—does not appear to have been "fairly presented" to the Appellate Division, given that Petitioner's evidence-sufficiency arguments related to the finding of probable cause, were framed in the context of state evidentiary law.  (Dkt. No. 20, Attach. 2 at 905-07.)  "While this means that Petitioner's claim is unexhausted, it still may be reviewable under one of the narrow exceptions provided for

---

[1]    As the New York State Court of Appeals affirmed the Appellate Division's decision without explanation, the undersigned has reviewed the last state court decision that provided a rationale.  *See Daniel J.*, 180 A.D.3d 1347; *Willson v. Sellars*, 138 S. Ct. 1188, 1192 (2018) (holding that a federal habeas court reviewing an unexplained state-court decision on the merits "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning," but that "the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision").

'procedurally defaulted' claims." *Bennett v. Dill*, 21-CV-1450, 2022 WL 4451040, at *8

(E.D.N.Y. Sept. 23, 2022) (citing *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005); *Murray v.

Carrier*, 477 U.S. 478, 485 (1986)).  However, "Petitioner's claim is procedurally defaulted as he

has already had one appeal and one application for leave to appeal to the New York Court of

Appeals, and therefore can no longer raise the claim in any state forum." *Bennett*, 2022 WL

4451040, at *8 (citing *Ramirez v. Attorney Gen.*, 280 F.3d 87, 94-95 (2d Cir. 2001)).

 As set forth by Respondent, Petitioner fails to provide any reason why this claim was not

presented to the Appellate Division on appeal, thereby failing to meet the criteria of the first

exception to procedural default.  *Id*. (citing *Stepney v. Lopez*, 760 F.2d 40, 45 (2d Cir. 1985)).

 Turning to the "fundamental miscarriage of justice" exception for procedural default, it

"is more difficult to apply here given that Petitioner is challenging a bench [decision] that led to

his *civil confinement*.  The Supreme Court has stated that this exception is reserved for 'petitions

that advance a substantial claim of *actual innocence*.'" *Id*. (quoting *Schlup v. Delo*, 513 U.S.

298, 321-22, 325, 327 (1995) (emphasis added)).  "This standard does not map neatly onto a case

involving civil confinement.  There does not appear to be Second Circuit case law interpreting

the 'actual innocence' standard in the context of civil confinement, nor have other circuits

enunciated a clear rule." *Id*. (citing *Brown v. Watters*, 599 F.3d 602, 609-10 (7th Cir. 2010)

("The correct application of the actual innocence exception to civil commitment cases is a

difficult one.  We have no explicit guidance from the Supreme Court or from our sister circuits. .

. . [Therefore, we shall] proceed to adjudicate the merits.")).

 The Court need not decide whether and how the "actual innocence" exception to

procedural default applies to civil commitments because, as discussed below, I recommend that

Petitioner's Ground 2 claim be dismissed as (1) barred on adequate and independent state grounds, and (2) meritless.

More specifically, the New York State Appellate Division Fourth Department held that Petitioner's "contention regarding the sufficiency of the evidence presented at the probable cause hearing is not properly before us because no appeal lies from the order finding probable cause." *Daniel J.*, 180 A.D.3d at 1348 (citing *Matter of State of New York v. Stein*, 85 A.D.3d 1646, 1648 (N.Y. App. Div. 4th Dep't 2011), *aff'd* 20 N.Y.3d 99 (N.Y. 2012), *cert. denied* 568 U.S. 1216 (2013)).  Further, N.Y. Mental Hyg. Law § 10.13(b) expressly states that "[n]o appeal may be taken from an order entered pursuant to . . . this article determining that probable cause has been established to believe that the . . . sex offender requir[es] civil management."  As set forth by Respondent, New York state courts have consistently applied this provision to deny appeals from probable cause findings.  Thus, there is an independent and adequate state ground barring federal review.

Moreover, as set forth by Respondent, any error in the probable cause hearing was cured by Petitioner's subsequent decision to waive trial and admit to having a mental abnormality. *State v. Kenneth II*, 190 A.D.3d 33, 37-38 (N.Y. App. Div. 3d Dep't 2020) (finding that if the trial court erred in permitting waiver of a probable cause hearing, the error was mooted by the subsequent mental abnormality finding by clear and convincing evidence, which is "a higher standard than would be applied at a probable cause hearing.").

As a result, I recommend that Ground 2 be denied.

### C.    Ground 3

After carefully considering the matter, I recommend that Petitioner's claim that his due process rights were violated by the failure to hold a trial within sixty days after the probable

cause finding (Ground 3) be denied for the reasons stated in Respondent's memorandum of law. (Dkt. No. 18 at 33-37.)

As an initial matter, Petitioner failed to raise Ground 3 in his leave application to the New York Court of Appeals. (Dkt. No. 20, Attach. 2 at 979-1005.) This claim is procedurally defaulted because Petitioner has already had one appeal and one application for leave to appeal to the New York Court of Appeals. Further, Petitioner failed to provide any reason why Ground 3 was not presented to the Court of Appeals, thereby failing to meet the criteria for the first exception to procedural default.

As set forth above in Part IV.B. of this Report and Recommendation, it is difficult to apply the "fundamental miscarriage of justice" exception, to challenges of bench trials that led to civil confinement. However, the Court need not decide whether and how the "actual innocence" exception to procedural default applies to civil commitments because, as discussed below, I recommend that Petitioner's Ground 3 claim be dismissed as (1) barred on adequate and independent state grounds, and (2) meritless.

More specifically, the New York State Appellate Division Fourth Department held that Petitioner "failed to preserve for our review his contention that he was denied due process because a jury trial was not held within 60 days of the probable cause hearing." *Daniel J.*, 180 A.D.3d at 1348 (citing *Matter of State of New York v. Trombley*, 98 A.D.3d 1300, 1302 (N.Y. App. Div. 4th Dep't 2012), *lv denied* 20 N.Y.3d 856 (N.Y. 2013)). The failure to preserve a claim for appeal is considered a state procedural rule, which "preclude[s the claim] from habeas review pursuant to the adequate and independent state ground doctrine." *Switzer v. Graham*, 05-CV-6706, 2010 WL 1543855, *4 (W.D.N.Y. Apr. 16, 2010) (citing *Richardson v. Greene*, 497 F.3d 212, 218 (2d Cir. 2007); *Fore v. Ercole*, 594 F. Supp. 2d 281 (E.D.N.Y. 2009); *Walker v.*

*Goord*, 427 F. Supp. 2d 272 (W.D.N.Y. 2006)).  Thus, there is an independent and adequate state ground barring federal review.

Moreover, as set forth by Respondent, the delay in holding Petitioner's trial was attributable primarily to his requests—over the State's objection—so that he could collaterally attack his underlying conviction (Dkt. No. 20, Attach. 2 at 452-465; Dkt. No. 20, Attach. 2 at 148) and to accommodate his expert (Dkt. No. 20, Attach. 2 at 466-469; Dkt. No. 20, Attach. 2 at 144-45.)  Further, as set forth by Respondent, the trial court had already found that Petitioner was sufficiently dangerous at the probable cause hearing and the delay in scheduling the trial did not violate his constitutional rights.  This finding was further buttressed by Petitioner's waiver of his mental abnormality trial.

As a result, I recommend that Ground 3 be denied.

### D.    Grounds 4, 5, 6, and 7

The parties asserted arguments with respect to Grounds 4, 5, 6, and 7 together and seem to reframe Grounds 4, 5, 6, and 7 as asserting that Petitioner's waiver of his right to a jury trial on whether he had a mental abnormality was involuntary because (1) the court improperly refused to grant Petitioner an adjournment to find a new expert, thereby coercing Petitioner into waiving trial, (2) the trial court made coercive statements during the waiver allocution and failed to ensure the waiver was voluntary, (3) Petitioner's counsel was unprepared for trial, and (4) the court failed to inquire into, or decide, Petitioner's motion for the substitution of counsel.  (Dkt. No. 18 at 37-61; Dkt. No. 29 at 14-32.)

Petitioner's Appellate Division brief on direct appeal appears to primarily focus on state law terms but does mention federal constitutional claims.  (Dkt. No. 20, Attach. 2 at 911 [referring to Petitioner's due process rights]; Dkt. No. 20, Attach. 2 at 912 ["Appellant does have

a fundamental due process right in Article 10 proceedings."]; Dkt. No. 20, Attach. 2 at 914 ["Inasmuch as respondent contends that he received ineffective assistance of counsel under both the state and federal standards . . ."].)  Assuming, without deciding, that these claims were exhausted, I recommend that they be dismissed as meritless.

For the reasons set forth in Respondent's memorandum of law, I find that Petitioner's waiver of his right to a jury trial was entered knowingly, intelligently, and voluntarily.  (Dkt. No. 18 at 39-43.)  Moreover, I find that for the reasons stated in Respondent's memorandum of law Petitioner's (1) adjournment claim (*id*. at 43-46); (2) waiver allocution claim (*id*. at 46-48); (3) ineffective assistance of counsel claim (*id*. at 48-58), and (4) failure-to-inquire claims (*id*. at 58-61), are meritless.

As a result, I recommend that Grounds 4, 5, 6, and 7 be denied.

## E.    Ground 8

After carefully considering the matter, I recommend that Petitioner's claim that his due process rights were violated by the admission at the dispositional hearing, of expert testimony discussing hearsay accusations (Ground 8) be denied for the reasons stated in Respondent's memorandum of law.  (Dkt. No. 18 at 61-69.)

## F.    Ground 9

After carefully considering the matter, I recommend that Petitioner's claim that his due process rights were violated because the State did not prove by clear and convincing evidence that he was a dangerous sex offender requiring confinement (Ground 9) be denied for the reasons stated in Respondent's memorandum of law.  (Dkt. No. 18 at 69-74.)

As noted by Respondent, this claim is unexhausted because Petitioner failed to raise it in federal terms in the Appellate Division and failed to raise this claim at all in his leave application

to the New York Court of Appeals.  (*Id.*)  Moreover, as set forth by Respondent, in any event, the claim is meritless.

As a result, I recommend that Ground 9 be denied.

### G.    Ground 10

After carefully considering the matter, I recommend that Petitioner's claim regarding the delay in holding his probable cause hearing and mental abnormality trial be dismissed for the reasons set forth in Respondent's memorandum of law.  (Dkt. No. 18 at 27-30, 33-37.)  As set forth by Senior United States District Judge James K. Singleton, Jr., in *Roache v. McCulloch*, 16-CV-1069, 17-CV-0574, 2019 WL 4327271, at *5 (N.D.N.Y. Sept. 12, 2019) (Singleton, J.), a claim for speedy trial based on state law violations of N.Y. Mental Hyg. Law § 10.01, *et seq.*, is not cognizable on federal habeas review.  *Roache*, 2019 WL 4327271, at *5 (citing *Bermudez v. Conway*, 09-CV-1515, 2012 WL 3779211, at *9 (E.D.N.Y. Aug. 30, 2012); *Hodges v. Bezio*, 09-CV-3402, 2012 WL 607659, at *4 (E.D.N.Y. Feb. 24, 2012); *Rodriguez v. Superintendent*, Collins Corr. Facility, 548 F. Supp. 2d 226, 23-37 (N.D.N.Y. 2008)).

Moreover, as set forth above in (1) Part IV.A. of this Report and Recommendation, Petitioner's claim regarding the delay in conducting his probable cause hearing is meritless, and (2) Part IV.C. of this Report and Recommendation, Petitioner's claim regarding the delay in conducting his mental abnormality trial is meritless.

As a result, I recommend that Ground 10 be denied.

## V.    CERTIFICATE OF APPEALABILITY

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c).").  In

the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition. *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013). A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154. A petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further."[2] *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted).

In this instance, I find that jurists of reason would not find it debatable as to whether the petition in this matter is meritorious. Accordingly, I recommend against the issuance of a COA.

**ACCORDINGLY**, it is

**RECOMMENDED** that the petition be **DENIED and DISMISSED**, and that a certificate of appealability not be issued to Petitioner; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the parties, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

---

[2]     A similar standard applies when a COA is sought to challenge the denial of a habeas petition on a procedural basis. *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[3]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: February <u>16</u>, 2024
       Binghamton, New York


_Miroslav Lovric_
Miroslav Lovric
U.S. Magistrate Judge

---

[3]      If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Bennett v. Dill, Not Reported in Fed. Supp. (2022)

Case 9:21-cv-01007-AMN-ML    Document 38    Filed 02/16/24    Page 26 of 80

2022 WL 4451040
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Anthony BENNETT, Plaintiff,

v.

Danielle DILL, Psy. D. Acting Executive Director
Central New York Psychiatric Center, Defendant.

21-CV-1450 (PKC)
|
Signed September 23, 2022

**Attorneys and Law Firms**

Anthony Bennett, Marcy, NY, Pro Se.

Andrew W. Amend, NYS Office of The Attorney General, New York, NY, Dennis Andrew Rambaud, Supreme Court of the State of New York, Brooklyn, NY, New York State Attorney Generals Office, Queens County District Attorneys Office, for Defendant.

**MEMORANDUM & ORDER**

PAMELA K. CHEN, United States District Judge:

**\*1** On March 8, 2021, Petitioner Anthony Bennett, currently civilly committed at the Central New York Psychiatric Center,[1] filed a *pro se* petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 ("Petition"), challenging his confinement. (Dkt. 1.) Petitioner filed an application to proceed *in forma pauperis* ("IFP") (Dkt. 7), which the Court granted on April 23, 2021 (Dkt. 8). On October 7, 2021, Respondent Danielle Dill filed a response. (Dkt. 18.) On October 21, 2021, Petitioner filed a motion to appoint counsel (Dkt. 20), which was denied by this Court on October 25, 2021 (10/25/2021 Docket Order). For the reasons below, the Petition is denied in its entirety.

**BACKGROUND**

**I. Factual and Procedural Background**
In 1979, Petitioner was convicted of rape, sodomy, and criminal possession of a weapon for four separate offenses relating to five girls and women who were between eleven to twenty-three years old. (SR.,[2] 109, 110.) While on parole for these convictions in January 1984, Petitioner raped another woman and was convicted of rape (N.Y. Penal Law § 130.35), sodomy (N.Y. Penal Law § 130.50), and sexual abuse (N.Y. Penal Law § 135.10). (SR. 19, 109.) Petitioner was sentenced to an indeterminate term of twelve and one-half to twenty-five years. (SR. 19.) In July 2013, near the expiration of Petitioner's maximum sentence, the State of New York ("State") commenced a sex offender civil management proceeding against Petitioner under Article 10 of the New York Mental Health Law ("MHL").[3] (SR. 111–14.)

**\*2** Prior to the first phase of his Article 10 proceeding, *i.e.*, a trial to determine whether he was suffering from a mental abnormality, Petitioner moved for a hearing pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) ("*Frye* hearing"), challenging the findings of the State's psychologists, Drs. Frances Charder and Stuart Kirschner, who had examined Petitioner (SR. 147) and diagnosed him with Narcissistic Personality Disorder ("NPD"),[4] Antisocial Personality Disorder ("ASPD"),[5] and Other Specific Paraphilic Disorder (Nonconsent) ("OSPD (nonconsent)")[6] (SR. 119–47). Petitioner sought the *Frye* hearing to determine whether OSPD (nonconsent) had received general acceptance in the psychiatric and psychological communities so as to make expert testimony on the diagnosis admissible. (SR. 142.) The motion was denied on February 11, 2015. (SR. 383–88.)

From June through September 2015, the Supreme Court of the State of New York, Queens County ("Trial Court"), conducted a bench trial to determine whether Petitioner suffers from a mental abnormality. (SR. 389–664.) Petitioner was represented by counsel throughout the trial. (SR. 389.) At the trial, Drs. Charder and Kirschner testified on behalf of the State and Dr. Leonard Bard testified on behalf of Petitioner. (*Id.*) Drs. Charder and Kirschner both testified that Petitioner suffers from NPD, ASPD, and OSPD (nonconsent). (SR. 141, 200.) Dr. Kirschner testified that "the mixture of the antisocial and narcissistic component combined with his paraphilia creates ... a predisposition for sexual offending with having no trepidation or remorse about it." (SR. 519.) In describing how OSPD (nonconsent) was diagnosed, Dr. Kirschner explained that although the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("the DSM-5") only contains eight paraphilic disorders, it is

Bennett v. Dill, Not Reported in Fed. Supp. (2022)

Case 9:21-cv-01007-AMN-ML    Document 38    Filed 02/16/24    Page 27 of 80

"very clear" that there are many more. (SR. 516.) If a clinician diagnoses someone with a paraphilia outside the eight listed, the DSM-5 instructs the clinician to use the diagnostic label "other [specified] paraphilic disorders." (SR. 516.) Dr. Kirschner also testified that Petitioner's "sexual urges, fantasies and his inability to control his impulses are existing today in the same way that they existed 30 years ago." (SR. 544.) Dr. Kirschner concluded that given Petitioner's cognitive distortions, emotional issues, and limited volitional capacity,[7] his case is the "definition of a mental abnormality." (SR. 521.)

Dr. Charder similarly found that the combination of the NPD, ASPD, and OSPD (nonconsent) disorders affected Petitioner's ability to control his sexual behavior and that Petitioner suffers from a mental abnormality. (SR. 477.) Dr. Charder also testified that Petitioner's NPD manifests itself with a strong sexual component. (SR. 463.) In the post-psychological examination report, Dr. Charder, noting Petitioner's involvement in a consensual sexual relationship with his girlfriend in 1984, explained that committing rape during this time "illustrate[d] that his sexual interest in over[-]powering and coercing sex from nonconsenting women ... undermined his ability to control himself." (SR. 141.) Petitioner's expert, Dr. Bard, testified that he did not believe that Petitioner suffered from ASPD, that OSPD (nonconsent) should not be used in a civil confinement proceeding, and that the NPD diagnosis was "far from anything." (SR. 611.)

**\*3** At the conclusion of the trial, the Trial Court credited the testimony of the State's experts, finding that Petitioner suffers from a mental abnormality, and set a date for phase two of Petitioner's Article 10 proceeding, *i.e.*, the disposition hearing to determine whether Petitioner should be committed to a secure treatment facility or undergo a strict and intensive supervision and treatment plan in the community. (SR. 663.) In February 2016, the dispositional hearing was conducted, with Drs. Charder, Kirschner, and Bard all testifying again. (SR. 665–848.) Petitioner was again represented by counsel. (SR. 665.) Following the hearing, the Trial Court determined that the State had met its burden and that Petitioner should be committed to a secure treatment facility. (SR. 847.)

Petitioner, again represented by counsel, appealed the Trial Court's decision to the Supreme Court of the State of New York Appellate Division, Second Department ("Appellate Division"), asserting four grounds for reversal: (1) the Trial Court erred in denying Petitioner's motion to conduct a *Frye*

hearing (SR. 43–50); (2) the expert testimony on Petitioner's Wiccan religious beliefs was irrelevant, prejudicial, and a violation of his state and federal constitutional rights of religious freedom and equal protection (SR. 51–60); (3) the State failed to present sufficient evidence to support a finding that Petitioner suffers from a mental abnormality (SR. 60–78); and (4) the Court erred in concluding that Petitioner should be confined to a secure treatment facility (SR. 78–89).

On March 30, 2018, the Appellate Division remitted the matter to the Trial Court to conduct a *Frye* hearing to determine whether OSPD (nonconsent) had received general acceptance in the psychiatric and psychological communities. (SR. 898–99.) Following the *Frye* hearing, the Trial Court determined that the diagnosis of OSPD (nonconsent) was not generally accepted, and, therefore, the testimony on OSPD (nonconsent) by Drs. Charder and Kirschner at Petitioner's bench trial was inadmissible. (SR. 2830.) Petitioner submitted a supplemental brief to the Appellate Division in light of the *Frye* hearing outcome. (SR. 2836–2930.) In addition to his initial grounds for reversal, Petitioner argued that the State, by relying on the inadmissible OSPD (nonconsent) diagnosis testimony, had failed to present legally sufficient evidence to support a mental abnormality finding at phase one of Petitioner's Article 10 proceeding. (SR. 2879–2901.)

By decision dated February 5, 2020, the Appellate Division affirmed the Trial Court's finding that Petitioner suffers from a mental abnormality and that he requires civil confinement. (SR. 3279–81.) The Appellate Division reasoned that while the OSPD (nonconsent) testimony should not have been admitted, it was harmless error and that "there was no reasonable possibility that, had this testimony been excluded, the court would have reached a different verdict." (SR. 3280–81.) The Appellate Division further concluded that the remainder of Petitioner's contentions were either unpreserved for appellate review or without merit. (SR. 3281.) Petitioner filed a motion for leave to appeal (SR. 3167–3236), which was denied by the New York State Court of Appeals (SR. 3283).

## LEGAL STANDARDS

### I. State Court Exhaustion Requirement Under AEDPA
The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") constrains review of state-court decisions in *habeas* proceedings. Under AEDPA, a claim must be "adjudicated on the merits" in state court to serve as a

Bennett v. Dill, Not Reported in Fed. Supp. (2022)

Case 9:21-cv-01007-AMN-ML    Document 38    Filed 02/16/24    Page 28 of 80

basis for habeas relief 28 U.S.C. § 2254(b)(1); [8] *see also* *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) ("If anything is settled in habeas corpus jurisprudence, it is that a federal court may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State[.]" (internal quotation marks and citation omitted)). A claim is "adjudicated on the merits" in state court if the state court "(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)).

**\*4** This exhaustion requirement includes two parts. First, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005) (emphasis omitted) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). In New York, a *habeas* petitioner must first appeal the relevant conviction to the Appellate Division, and then seek further review by applying to the New York Court of Appeals for a certificate granting leave to appeal. *Id.* at 74 (citing, among other things, *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000)). Second, *habeas* petitioners must have " 'fairly presented [their] claims to the state courts,' such that the state court had a fair opportunity to act." *Id.* at 73 (quoting *O'Sullivan*, 526 U.S. at 848); *see also* *Aparicio*, 269 F.3d at 89–90 ("To satisfy § 2254's exhaustion requirement, a petitioner must present the substance of the same federal constitutional claim[s] that he now urges upon the federal courts to the highest court in the pertinent state." (internal quotation marks and citations omitted)).

A *habeas* petition, however, "may be denied on the merits, notwithstanding the failure of the [petitioner] to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Additionally, the exhaustion requirement may be excused if "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the [petitioner]." *Id.* § 2254(b)(1)(B).

## II. Federal Court Adjudication on the Merits Under AEDPA

*Habeas* relief is improper unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state-court decision is "contrary to" clearly established federal law if it (1) applies a rule that contradicts governing Supreme Court cases, or (2) decides a case differently from the Supreme Court given "materially indistinguishable" facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A state-court decision involves an "unreasonable application" of clearly established federal law if it (1) correctly identifies the governing legal rule but "unreasonably applies it" to the instant case, or (2) "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. An unreasonable application "must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

Where, however, a federal claim has not been adjudicated on the merits in the state court, "AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo." *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## III. *Pro Se* Petitions

The Court construes the Petition liberally and interprets it "to raise the strongest arguments that [it] suggest[s]" because Petitioner is proceeding *pro se. Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*) (emphasis and citation omitted). However, "pro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.' " *Id.* at 477 (quoting

Bennett v. Dill, Not Reported in Fed. Supp. (2022)

Case 9:21-cv-01007-AMN-ML   Document 38   Filed 02/16/24   Page 29 of 80

*Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)); *accord O'Neal v. New York*, 465 F. Supp. 3d 206, 216 (E.D.N.Y. 2020).

## DISCUSSION

**\*5** Construed liberally, the Petition raises three separate issues. First, the Appellate Division erred in determining that admission of the OSPD (nonconsent) testimony at Petitioner's bench trial, which was later determined to be inadmissible, constituted "harmless error." (Petition, ("Pet."), Dkt. 1, at 8–10.) Second, the Trial Court lacked sufficient evidence under state law to support its findings that Petitioner suffers from a mental abnormality and is a dangerous sex offender requiring confinement, and that the lack of sufficient evidence violated his right to Due Process under the Fourteenth Amendment. (*Id.* at 4–7, 10–11.) Third, the admission of testimony on Petitioner's Wiccan religious beliefs was prejudicial and a violation of his First and Fourteenth Amendment rights. (*Id.* at 11–12.)

## I. Appellate Division's Harmless Error Determination

Petitioner contends that the Appellate Division erred in finding that admission of the OSPD (nonconsent) testimony was harmless. (*Id.* at 8.) A "harmless error" determination does not implicate a "freestanding federal constitutional right," but is purely a question of state law and not reviewable in a federal *habeas* proceeding. *Freeman v. Kadien*, 684 F.3d 30, 34 (2d Cir. 2012) ("A harmlessness determination regarding an underlying error of state law does not implicate a freestanding federal constitutional right. Rather, the harmfulness of evidence admitted in violation of state law is itself a question of state law to which the federal 'substantial and injurious effect' standard does not apply.");

*Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). However, a district court may review an error of state evidentiary law to assess whether the error deprived Petitioner of his due process right to a "fundamentally fair trial." *Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004). An evidentiary error rises to this level if the evidence is "so extremely unfair that its admission violates fundamental conceptions of justice." *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998). Thus, in the context of criminal trials, the Second Circuit has explained that "the erroneously admitted evidence, viewed objectively in light of

the entire record," must have been "sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (internal quotation marks omitted).

Here, the admission of testimony regarding OSPD (nonconsent), while erroneous, was not so material as to provide the basis for Petitioner's confinement. The crux of Petitioner's argument is that the OSPD (nonconsent) diagnosis, which the Trial Court found on remand was not generally accepted by the scientific community, "was crucial to and permeated every aspect of" Petitioner's "mental abnormality trial." (Pet., Dkt. 1, at 8–9.) However, the diagnostic label itself is not determinative of Petitioner's due process claim; rather, what is important is how the diagnosis explains *Petitioner's behavior and manifestations.* In other words, "a diagnostic label ... will rarely be dispositive in determining whether an impairment is sufficiently substantial to seriously impair volition;" rather, "it is the manner in which the condition manifests itself in the individual that will determine whether a particular commitment decision comports with due process." *Terry P. v. Bosco*, No. 14-CV-5907 (DLI), 2019 WL 3388807, at \*6 (E.D.N.Y. Jul. 25, 2019) (internal quotation marks and citations omitted).

In diagnosing Petitioner with OSPD (nonconsent), Dr. Charder explained that the events that resulted in Petitioner's 1984 criminal convictions "illustrate[ ] that his sexual interest in over[-]powering and coercing sex from nonconsenting women, fueled by his grandiosity and disregard for the rights of others quickly undermined his ability to control himself and will more likely than not do so again." (SR. 141.) Challenging the "diagnostic label" assigned to this behavior does not discredit the underlying analysis. As the Trial Court noted, while OSPD (nonconsent) may not be generally accepted in the psychological and psychiatric community, there is nonetheless "merit" in the distinctions it draws between sex offenders whose actions are driven by different paraphilias. (SR. 2828.) This is consistent with Dr. Kirschner's testimony that the actual diagnosis of OSPD (nonconsent) was what the DSM-5 instructed clinicians to do if a paraphilia does not match one of the eight listed. (SR. 516.) And as the Appellate Division determined as a matter of state law, Petitioner's other diagnoses, ASPD and NPD, together were sufficient to support a finding of mental abnormality, where the State showed Petitioner's NPD "manifests with a strong sexual component ... [creating a] predisposition to commit sex offenses." (SR. 3279–81.) As

Bennett v. Dill, Not Reported in Fed. Supp. (2022)

the Trial Court and Appellate Division both effectively found, it is the behavior, not the "diagnostic labels" that seek to explain the behavior, that is dispositive. Therefore, the admission of testimony on OSPD (nonconsent) at the bench trial was not a "sufficiently material" error in Petitioner's Article 10 proceeding and did not deprive Petitioner of due process with respect to his civil commitment. *Collins*, 755 F.2d at 19.

**\*6** As outlined above, diagnostic labels such as OSPD (nonconsent) are "rarely dispositive," rather, the focus of the inquiry is on the behavior and manifestations those labels seek to explain. This difference is critical in the cases cited by Petitioner. Petitioner relies on 🚩*Zappulla v. New York*, 391 F.3d 462 (2d Cir. 2004)[9] to argue that a prosecutor's reliance on erroneously admitted evidence is an important factor in determining the significance of the error. (Pet., Dkt. 1, at 8.) While Petitioner is correct that *Zappulla* identifies this as a factor, there are several factors identified by the court including: (1) "the overall strength of the prosecution's case;" (2) "the prosecutor's conduct with respect to the improperly admitted evidence;" (3) "the importance of the wrongly admitted testimony;" and (4) "whether such evidence was cumulative of other properly admitted evidence." 🚩391 F.3d at 468. In analyzing these factors, the *Zappulla* panel determined that (1) the prosecutor's case was relatively weak, as evidenced by an initial mistrial where the jury was unable to reach a verdict, (2) the prosecutor viewed the improperly admitted evidence as central to the case, given that it was the first piece of evidence referenced during the re-trial, and (3) the evidence was extremely important because "a signed confession cannot be underestimated." 🚩*Id.* at 468–73. Petitioner's case is distinguishable on all accounts. First, as discussed below, *see infra* Discussion Part II, there was significant evidence in the record even without the OSPD (nonconsent) testimony that suggested that Petitioner suffers from a mental abnormality. Second, while OSPD (nonconsent) was frequently referenced throughout Petitioner's Article 10 proceedings, its use was more descriptive, *i.e.*, describing a particular paraphilia, than dispositive, *i.e.*, that Petitioner suffers from a mental abnormality *because* of the OSPD (nonconsent) diagnosis. This contrasts with the written confession in *Zappulla* where the evidence was presented as dispositive of the petitioner's guilt. Third, and most importantly, the OSPD (nonconsent) testimony introduced at Petitioner's Article 10 proceedings does not rise to the same level of importance as a signed confession of a criminal defendant. As the Second Circuit

explained in *Zappulla*, "[t]he fact that the evidence at issue is a signed detailed confession should weigh heavily against finding that its erroneous admission was harmless." *Id.* at 473. *Zappulla* is therefore materially distinguishable from the present case and does not support the conclusion that admission of the OSPD (nonconsent) testimony harmed Petitioner.

Petitioner also cites 🚩*Fuentes v. T. Griffin*, 829 F.3d 233 (2d Cir. 2016) as an example of an evidentiary error that can warrant *habeas* relief. (Pet., Dkt. 1, at 9.) In *Fuentes*, the petitioner was convicted of first degree rape and first degree sodomy after the prosecution failed to disclose a psychiatric evaluation of the alleged rape victim. 🚩*Fuentes*, 829 F.3d at 236. The Second Circuit granted *habeas* relief, holding that the evidence suppression violated the petitioner's due process rights pursuant to 🚩*Brady v. Maryland*, 373 U.S. 83 (1963) due to the "uniquely important nature of the [psychiatric record] ..., where [the alleged victim] provided the only evidence that Fuentes's conduct was a crime and where the [psychiatric record] was the only evidence by which the defense could have impeached [the alleged victim's] credibility as to her mental state." 🚩*Id.* at 253. Similar to *Zappulla*, the evidentiary error was "uniquely important" and central to the defendant's criminal conviction. As discussed above, the inadmissible testimony in this case does not rise to that level and, therefore, renders the Second Circuit's harmless-error determination in *Zappulla* and *Fuentes* inapplicable here.

## II. Sufficiency of the Evidence and Due Process

Petitioner contends that absent testimony on OSPD (nonconsent), the State lacked legally sufficient evidence to show that Petitioner (1) suffers from a mental abnormality and (2) is a dangerous sex offender requiring confinement. (Pet., Dkt. 1, at 4–7.) Petitioner challenges the legal determinations made by the Trial Court during both phases of his Article 10 proceeding. (*Id.*)

As discussed, under AEDPA, federal *habeas* relief "pursuant to the judgment of a State court" is only appropriate if the state court's "adjudication of the claim" either: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of

Bennett v. Dill, Not Reported in Fed. Supp. (2022)

Case 9:21-cv-01007-AMN-ML    Document 38    Filed 02/16/24    Page 31 of 80

the facts in light of the evidence....” 28 U.S.C. § 2254(d). “Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.” *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (quotation omitted). A decision is “contrary to” established federal law if it either “applies a rule that contradicts the governing law set forth in [Supreme Court cases],” or it “confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.” *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (quotations omitted). A decision is an “unreasonable application of” clearly established Supreme Court precedent if it “correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.” *Id.* (quotation omitted).

**\*7** AEDPA establishes a deferential standard of review —“ ‘a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.’ ” *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)); *see also Eze v. Senkowski*, 321 F.3d 110, 121 (2d Cir. 2003) (observing that where a state court adjudicates a federal constitutional claim on the merits, “we must apply AEDPA deference”). Under this standard, the Court must “assess whether the state court's decision was ‘so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.’ ” *Garner v. Lee*, 908 F.3d 845, 861 n.14 (2d Cir. 2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Finally, “if the federal claim was not adjudicated on the merits, ‘AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo.’ ” *Dolphy*, 552 F.3d at 238 (quoting *Spears*, 459 F.3d at 203).

Here, the Trial Court's findings in both phases of the Article 10 proceeding and the Appellate Division's review were neither “contrary to” nor an “unreasonable application of” “clearly established federal law.” 28 U.S.C. § 2254(d). The Trial Court's determination that Petitioner suffers from a mental abnormality that makes him a dangerous sex offender requiring confinement was based on the testimony of Drs. Kirschner and Charder, who both testified that Petitioner had an “inability to control his impulses.” (SR. 434, 544.) The determination was reached not because of a particular diagnosis, but rather a plethora of evidence discussed below. This is significant.

In *Kansas v. Crane*, the United State Supreme Court stated:

> [W]e did not give to the phrase “lack of control” a particularly narrow or technical meaning. And we recognize that in cases where lack of control is at issue, “inability to control behavior” will not be demonstrable with mathematical precision. It is enough to say that there must be *proof of serious difficulty in controlling behavior*. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

534 U.S. 407, 413 (2002) (emphasis added) (internal citations omitted). The Supreme Court's rule emphasizes that it is not a particular diagnosis that forms the basis for confinement; rather, the question is whether “the condition ... is serious enough to cause an inability to control sexually violent behavior.” *Brown v. Watters*, 599 F.3d 602, 614–15 (7th Cir. 2010); *Terry P.*, 2019 WL 3388807, at \*6 (“Moreover, it is not the diagnosis alone, in the abstract, that is the focus in assessing the constitutionality of a civil commitment but how the mental disorder manifests itself in the individual, particularly as regards its effect on his ability to control his behavior.”) (internal citations omitted).

Relying on the testimony that Petitioner has an “inability to control his impulses” and correctly applying the rule from

*Crane*, the Appellate Division's analysis focused not on a particular diagnosis but rather how the diagnosis related to Petitioner's "serious difficulty in controlling behavior." *Crane*, 534 U.S. at 413. The Appellate Division explained that evidence that Petitioner's NPD "manifests with a strong sexual component ... [creating a] predisposition to commit sex offenses" supported both the mental abnormality finding and was "clear and convincing evidence" that Petitioner has "serious difficulty controlling his sexual conduct." (SR. 3281.)

**\*8** Additional testimony from the Trial Court's bench trial supports this conclusion. Citing Petitioner's psychological evaluation and sex offender treatment, Dr. Kirschner observed that Petitioner has cognitive distortions, difficulties regulating emotions, and issues with volitional capacity that make his case the "definition of a mental abnormality." (SR. 521.) Dr. Charder, noting the circumstances surrounding Petitioner's second conviction, explained that Petitioner's sexual urges in "over-powering" women "undermined his ability to control himself and will more likely than not do so again." (SR. 141.) In sum, the record provides ample support for the Appellate Division's determination that Petitioner suffers from a mental abnormality requiring civil confinement, and that ruling, therefore, is not contrary to, or an unreasonable application of, clearly established federal law; nor is it an unreasonable determination of the facts in light of the evidence presented.

Petitioner's Due Process claim essentially rests on the same basis as his sufficiency-of-the-evidence claim. (Pet., Dkt. 1, at 6.) He argues that because there was insufficient evidence of mental abnormality without the OSPD (nonconsent) testimony, his due process rights were violated. This claim fails for the several reasons.

As an initial matter, this federal constitutional claim does not appear to have been "fairly presented" to the Appellate Division, given that Petitioner's evidence-sufficiency arguments were framed in the context of state evidentiary law. (SR. 1–92, 970–1064, 3060–3131.) While this means Petitioner's claim is unexhausted, *Galdamez, 394 F.3d at 73*, it still may be reviewable under one of the narrow exceptions provided for "procedurally defaulted" claims, *Murray v. Carrier, 477 U.S. 478, 485 (1986)*. Petitioner's claim is procedurally defaulted as he has already had one appeal and one application for leave to appeal to the New York Court of Appeals, and therefore can no longer raise the claim in any state forum. [10] *Ramirez v. Attorney Gen., 280 F.3d 87, 94–95 (2d Cir. 2001)*.

When a claim is procedurally defaulted, the District Court can review it only if Petitioner shows either: (1) "cause" for the default and actual prejudice from barring the claim; or (2) that the failure to consider the claim will result in a "fundamental miscarriage of justice." *Murray, 477 U.S. at 485*. Here, with respect to the first exception, Petitioner fails to provide any reason why this claim was not presented to the Appellate Division on appeal, thereby failing to meet the criteria of the first exception. *Stepney v. Lopez, 760 F.2d 40, 45 (2d Cir. 1985)*. The "fundamental miscarriage of justice" exception, however, is more difficult to apply here given that Petitioner is challenging a bench trial that led to his *civil confinement*. The Supreme Court has stated that this exception is reserved for "petitions that advance a substantial claim of *actual innocence*." *Schlup v. Delo, 513 U.S. 298, 321–22, 325, 327 (1995)* (emphasis added). This criminal standard does not map neatly onto a case involving civil confinement. There does not appear to be Second Circuit case law interpreting the "actual innocence" standard in the context of civil confinement, nor have other circuits enunciated a clear rule. [11] *Brown v. Watters, 599 F.3d 602, 609–10 (7th Cir. 2010)* ("The correct application of the actual innocence exception to civil commitment cases is a difficult one. We have no explicit guidance from the Supreme Court or from our sister circuits.... [Therefore, we shall] proceed to adjudicate the merits.").

**\*9** However, the Court need not decide whether and how the "actual innocence" exception applies to civil commitments because, having already discussed the sufficiency of the evidence under *Crane, 534 U.S. 407*, the Court finds that Petitioner was not deprived of due process under the Fourteenth Amendment and therefore Petitioner's due process claim does not provide a basis for *habeas* relief.

### III. Testimony About Petitioner's Wiccan Religious Beliefs

Petitioner contends that the admission of testimony on his Wiccan religious beliefs was prejudicial and violated his First and Fourteenth Amendments rights. (Pet., Dkt. 1, at 11–12.) Testimony about a person's religious beliefs is proper only if it has "relevance to the issue being decided in the proceeding." *Dawson v. Delaware, 503 U.S. 159, 160*

(1992). Here, a substantial portion of the Wiccan testimony was related to Petitioner's own invocation of his religious beliefs in his 2005 sex offender treatment program. (SR. 431–32, 469–70.) Dr. Charder, in describing the treatment, testified that Petitioner identified similarities in the ritualistic aspects of the Wiccan religion and Petitioner's "cruising," or search, for future victims. (SR. 431–32.) Dr. Charder also explained that Petitioner "conflates the notion about the natural life, being important in the [W]iccan religion" with "his anger." (SR. 472.) During the dispositional hearing, Dr. Charder testified that Petitioner spoke about his Wiccan beliefs during his psychological evaluation. (SR. 740.) The relevance of the testimony was therefore a result of Petitioner himself identifying it as relevant to his sexual misconduct, psychological state, and motivations. *See* ⚑ *United States v. Stewart*, 686 F.3d 156, 167 (2d Cir. 2012) ("The sentencing judge was determining the characteristics of the defendant, which were legally relevant to a determination of the appropriate sentence to impose on [the defendant], through the contents of statements she voluntarily and publicly made."). Additionally, the testimony was not merely a discussion of Petitioner's "abstract beliefs;" rather, it was directly related to the ways in which his behavior manifests his beliefs. ⚑ *Dawson*, 503 U.S. at 162. Therefore, the Court finds that the testimony was "relevan[t] to the issue being decided in the proceeding," ⚑ *id.* at 160,[12] and properly admitted and considered by the Trial Court and Appellate Division.

### IV. Other Considerations

In several of Petitioner's filings, he notes that he does not have access to legal materials nor a law library. (Pet., Dkt. 1, at 2;

Dkt. 23, at 2.) The Court construes this as a denial-of-access-to-the-courts claim. To state a such a claim, a Petitioner must show an "actual injury" was suffered. *Kaminski v. Semple*, 796 F. App'x 36, 39 (summary order) (2d Cir. 2019) (holding that access to a law library is not a cognizable injury absent dismissal of habeas petition for technical reasons that could have been cured through access to legal materials.) Here, the Court observes that Petitioner has "adequately and competently set forth his claims" (10/25/2021 Docket Order), and the Court is not dismissing his petition "for a technical deficiency that would have been cured with appropriate legal facilities," *Kaminski*, 796 F. App'x at 39. Therefore, the Court finds that Petitioner has not alleged an "actual injury" sufficient to state a denial-of-access-to-the-courts claim.

### CONCLUSION

**\*10** For the reasons set forth herein, the petition for a writ of *habeas corpus* pursuant to ⚑ 28 U.S.C. § 2254 is denied in its entirety. No certificate of appealability is granted with respect to Petitioner's claims, as there is no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *see Middleton v. Att'ys Gen.*, 396 F.3d 207, 209 (2d Cir. 2005) (petitioner has not shown that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further").

**All Citations**

Not Reported in Fed. Supp., 2022 WL 4451040

---

### Footnotes

1  Central New York Psychiatric Center is located in Marcy, New York. (Dkt. 18, at 2.) While the facility is not within the Eastern District of New York, the order to commit Petitioner was issued by the New York State Supreme Court, Queens County, which is located in this district. 28 U.S.C. § 1404(a); *see also* L. Civ. R. 83.3 ("Unless otherwise provided by statute, applications for a writ of habeas corpus made by persons under the judgment and sentence of a court of the State of New York shall be filed, heard and determined in the District Court for the district within which they were convicted and sentenced.").

2     Citations to "SR" refer to the consecutively paginated State Court Record (Dkts. 16, 17), not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

3     The Article 10 proceeding was "designed to reduce the risks posed by and to address the treatment needs of those sex offenders who suffer from mental abnormalities that predispose them to commit repeated sex crimes." *Matter of State v. Rashid*, 16 N.Y.3d 1, 5 (2010); *see* MHL § 10.01(a)-(b). If the State Office of Mental Health ("OMH") determines that a sex offender suffers from a "mental abnormality," it refers the case to the New York Attorney General who, after a probable cause hearing, *id.* §§ 10.06(g), 10.07(a), initiates an Article 10 proceeding, *id.* §§ 10.05(g), 10.06(a). *See also id.* § 10.05(d)-(e) (outlining sex offender screening by the OMH). Article 10 proceedings have two phases: (1) the fact-finder determines whether there is clear and convincing evidence that the respondent is "a detained sex offender who suffers from a mental abnormality," *id.* § 10.07(d) and (2) if the fact-finder concludes the respondent suffers from a mental abnormality, the court will hold a dispositional hearing to determine whether the respondent should be committed to a secure treatment facility or undergo a "strict and intensive supervision and treatment" plan in the community, *id.* §§ 10.07(f), 10.10(a), 10.11(a). In the first phase, the fact-finder can be either the jury or the court. *Id.* § 10.07(d).

4     NPD is characterized by "a pervasive pattern of grandiosity, need for admiration, and lack of empathy that begins by early adulthood and is present in a variety of contexts." (SR. 134.)

5     ASPD is characterized by "a pervasive pattern of disregard for, and violation of, the rights of others, that begins in childhood or early adolescence and continues into adulthood." (SR. 131.)

6     "Paraphilia is a persistent and intense fantasy or attraction to or behavior towards any subject or object other than a normal age, appropriately aged consenting individual and involves a drive to enact the fantasy connected to that paraphilic disorder." (SR. 425.) OSPD (nonconsent) "does not meet the criteria for any specific paraphilic disorder" (SR. 129); however, it is intended to describe a person whose paraphilia is towards nonconsensual sex (SR. 425–26).

7     Dr. Kirschner found that Petitioner's cognitive distortions were evidenced by his belief that his victims "appreciated" the sexual assaults, that his emotional issues related to his inability to control his anger, and that his limited volitional capacity was evidenced by his own admission that he could not control his urges. (SR. 521.)

8     While the issue of whether an action challenging civil confinement is appropriately brought under 42 U.S.C. § 2254 or § 2241(c)(3) is "not always straightforward," the Court finds that § 2254 is the appropriate vehicle for Petitioner to challenge his civil commitment because Petitioner challenges the commitment itself, not its conditions. *Henry v. Murphy*, No. 17-CV-5852 (VSB) (BCM), 2018 WL 7291456, at *6 n.5 (S.D.N.Y. Oct. 31, 2018), *report and recommendation adopted*, 2019 WL 289865 (S.D.N.Y. Jan. 23, 2019); *see also Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314 (2d Cir. 2020) ("While in the custody of the New York State Office of Mental Health, Janakievski filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition challenged the validity of the original state-court order ... as well as three subsequent orders that extended the duration of the confinement."); *Terry P. v. Bosco*, No. 14-CV-5907 (DLI), 2019 WL 3388807, at *3 (E.D.N.Y. Jul. 25, 2019) (evaluating Petitioner's challenge to involuntary civil commitment pursuant to New York Mental Hygiene Law § 10.01 under 42 U.S.C. § 2254); *Best v. Barbarotta*, No. 12-CV-6218 (NGG), 2016 WL 1588501, at *1 (E.D.N.Y. Apr. 19, 2016) (§ 2254 "is the proper vehicle for a challenge to involuntary civil commitment").

9    *Zappulla* was a criminal prosecution, in which the *habeas* petitioner was convicted of second-degree murder after the trial court erroneously admitted petitioner's defective confession, given without *Miranda* warnings, that he committed the murder. ⚑391 F.3d at 468.

10    "New York procedural rules bar its state courts from hearing either claims that could have been raised on direct appeal but were not, or claims that were initially raised on appeal but were not presented to the Court of Appeals." *Parrish v. Lee,* No. 10-CV-8708 (KMK), 2015 WL 7302762, at *7 (S.D.N.Y. Nov. 18, 2015) (internal quotation marks omitted).

11    There are three potential rules emerging from the sparse case law, each approaching the analysis of "actual innocence" in civil confinement petitions differently. First, Petitioner must present new evidence that supports a miscarriage of justice claim. ⚑*Schlup,* 513 U.S. at 299 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.") Petitioner's claim would fail under this test because the Petition does not provide any new evidence. Second, the "actual innocence" standard can be satisfied if Petitioner can show he does not have a mental abnormality as defined by state law to warrant civil confinement. ⚑*Levine v. Torvik,* 986 F.2d 1506, 1517 n.9 (6th Cir. 1993). This rule would present a high bar and would likely not be satisfied here, where there exists significant evidence that Petitioner suffers from a mental abnormality. Third, the Court can decide to "pretermit a discussion" of the "actual innocence" exception and "proceed to adjudicate the merits." ⚑*Brown,* 599 F.3d at 617 n.10. Under this rule, the Court would proceed to address Petitioner's due process claim on the merits.

12    Petitioner notes that Dr. Charder referred to his religious beliefs as "disturbing." (Pet., Dkt. 1, at 12; SR. 3100.) The Court does not interpret the relevant section of the transcript in this way. (*See* SR. 740.) Dr. Charder notes that certain Wiccan tenets can be "looked at in a positive way," but goes on to say that "under the history and the facts of all [of Petitioner's] crimes," his use of the religion is "disturbing" and potentially a vehicle to "charm and talk to women." (SR. 740.)

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 1543855

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
W.D. New York.

Benjamin SWITZER, Petitioner,

v.

H.D. GRAHAM, Superintendent, Respondent.

No. 05-CV-6706 (MAT).
|
April 16, 2010.

**Attorneys and Law Firms**

Benjamin A. Switzer, Stormville, NY, pro se.

Nancy A. Gilligan, Rochester, NY, for Respondent.

**ORDER**

MICHAEL A. TELESCA, District Judge.

**I. Introduction**

**\*1** Petitioner Benjamin Switzer ("petitioner"), proceeding *pro se* seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court of four counts of Murder in the First Degree (N.Y. Penal L. § 125.27(1)(a)(vii), (viii)), two counts of Murder in the Second Degree (Penal L. § 125.25(3)), and two counts of Attempted Robbery in the First Degree (Penal L. §§ 110.00, 160.15(2)). Following a jury trial before Judge Patricia Marks, petitioner's judgment of conviction was entered on June 26, 2001. He was sentenced to various terms of imprisonment, the longest of which being life without parole.

**II. Factual Background and Procedural History**

The charges against petitioner stemmed from the murder of two men during the course of an attempted armed robbery on Columbia Avenue in Rochester, New York in April of 2000.

Through counsel, petitioner appealed the judgment of conviction to the Appellate Division, Fourth Department,

raising three points for review: (1) the sentences violated N.Y. Penal L. § 70.25(2); (2) the verdict was against the weight of the evidence; and (3) the sentence was harsh and excessive. *See* Respondent's Appendix ("Appx.") A. The Fourth Department unanimously the judgment of conviction. *People v. Switzer*, 15 A.D.3d 913, 788 (4th Dept.); *lv. denied*, 5 N.Y.3d 770, 801 N.Y.S.2d 264, 834 N.E.2d 1274 (2005).

Petitioner then filed a timely petition ("Pet.") for writ of habeas corpus raising the same grounds as he did on direct appeal. (Dkt.# 4). On December 22, 2008, petitioner filed a motion to stay his habeas petition in order to exhaust his remedies in state court, which was granted by this Court on January 1, 2009. (Dkt.12, 15). While petitioner's habeas proceedings were stayed, he filed a motion to vacate his sentence in Monroe County Court pursuant to N.Y.Crim. Proc. Law § 440.20. That motion was denied on procedural grounds as well as on the merits. *See* Decision and Order, No. 00/0361, dated 6/25/2009. Petitioner did not seek leave to appeal that decision. Petitioner's stay was lifted on October 20, 2009 (Dkt.# 21). For the reasons that follow, I find that petitioner is not entitled to habeas relief, and the petition is dismissed.

**III. Discussion**

**A. General Principles Applicable to Federal Habeas Review**

**1. Standard of Review**

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375-76, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

**2. Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State...."

28 U.S.C. § 2254(b)(1)(A); *see, e.g., O'Sullivan v. Boerckel,* 526 U.S. 838, 843-44, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *accord, e.g., Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984).

### 3. Adequate and Independent State Ground Doctrine

**\*2** It is a well-settled aspect of federal habeas jurisprudence that if "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred" absent (1) a showing of cause for the default and actual prejudice attributable thereto, or (2) a showing that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A state ground will create procedural default sufficient to bar habeas review if the state ground first was an "inadequate" basis for the decision; this means that "the last state court rendering a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar ." In addition, the state procedural bar must be "adequate" to support the judgment-that is, it must be based on a rule that is " 'firmly established and regularly followed' by the state in question ." *Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir.1999) (quoting *Ford v. Georgia,* 498 U.S. 411, 423-24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991)).

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

### B. Merits of the Petition

### 1. Unlawful Sentence Pursuant to N.Y. Penal L. § 70.25(2)

Petitioner contends, as he did on direct appeal, that his sentences for the attempted robbery convictions are illegal in that they were supposedly ordered to run consecutively to his first-degree murder convictions. [1] Pet., Attach. # 2, Ground I. The Appellate Division denied this assertion on the merits:

> Contrary to defendant's contention, the court imposed two sentences of "15 years consecutive to each other determinate sentence," and thus the sentences imposed on the attempted robbery counts run consecutively to one another, not to the sentence imposed on those two first degree murder counts. Because there were two robbery victims, the court properly imposed consecutive sentences on the two counts of attempted robbery. Defendant's interpretation of the court's statements at sentencing failed because life without parole is an indeterminate sentence. *Switzer,* 15 A.D.3d at 913, 788 N.Y.S.2d 760 (citations omitted).

New York Penal Law § 70.25 limits the general power of a sentencing court to run sentences concurrently or consecutively. Under Subsection (2), concurrent sentences are required where two or more offenses are committed: "(1) 'through a single act or omission,' or (2) 'through an act or omission which in itself constituted one of the offenses and also was a material element of the other.' " *Bethune v. Superintendent, Bare Hill Correctional Facility,* 299 F.Supp.2d 162, 166 (W.D.N.Y.2004) (citing New York Penal Law § 70.25(2)); *see also People v. Laureano,* 87 N.Y.2d 640, 643, 642 N.Y.S.2d 150, 664 N.E.2d 1212 (1996). The crux of petitioner's argument is that because attempted robbery was a material element of the two counts first-degree murder (which were predicated on an intentional killing in the course of an enumerate felony), he must receive concurrent sentences as to the attempted robbery and the first-degree murder convictions. *See* Appx. A at 8-13.

**\*3** The respondent correctly argues that petitioner has not set forth his claim in federal, constitutional terms. *See* Respondent's Answer at 2. (Dkt. # 10). A review of the record similarly indicates that he did not present the issue as a constitutional question to the Appellate Division or to the state court in his § 440 motion. Appx. A at 8-13; Petitioner's Mot. for Stay "Argument" Section (b .). (Dkt.# 12). To the extent petitioner proffers the instant claim based solely on a misapplication of state law, such a claim does not constitute a viable basis for habeas relief. *See Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)

("[F]ederal habeas corpus relief does not lie for errors of state law." (citation omitted)).

In any event, the Court notes that petitioner's argument rests on a misapprehension of the sentencing proceedings. The record reflects that the sentences for attempted robbery ran consecutive to one another, and not to the first-degree murder sentences. Sentencing Mins. 40-41. The sentence of life imprisonment without parole for first-degree murder is an indeterminate sentence as provided by statute, and therefore does not constitute the "determinate sentence" referred to by the sentencing court in ordering the consecutive terms of imprisonment. *See* N.Y. Penal L. § 70.00(5). The Appellate Division's ruling was therefore correct.

Moreover, because the sentence imposed was within the range prescribed by state law, Petitioner has raised no federal constitutional violation. *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992); *see also* discussion *infra* Part III.B.3. Accordingly, this claim is dismissed.

### 2. Weight of the Evidence

Petitioner alleges that the verdict was against the weight of the evidence with respect to the first-degree murder convictions. Pet., Attach. # 2, Ground II. Specifically, petitioner argues that the proof at trial did not establish intent to kill. *Id.;* Appx. A at 13-17.

Challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on federal habeas review. *Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996). A claim that a verdict was against the weight of the evidence derives from C.P.L. § 470.15(5), which permits an appellate court in New York to reserve or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." C.P.L. § 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. *People v. Bleakley,* 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987). Since a weight of the evidence claim is purely a matter of state law, it is not cognizable on habeas review.

*See* U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("In conducting

habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

**\*4** Insofar as petitioner attempts to raise a claim that the evidence at trial was legally insufficient to support his first-degree murder convictions, such a claim is procedurally defaulted and thus precluded from habeas review. On direct appeal, the Fourth Department held that petitioner "failed to preserve for our review his contention that the evidence of his intent to kill is legally insufficient." *Switzer,* 15 A.D.3d at 913, 788 N.Y.S.2d 760 (citing, *inter alia,* *People v. Gray,* 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 652 N.E.2d 919 (1995) (holding that a party seeking to challenge the sufficiency of the evidence must contemporaneously object by making a trial order of dismissal and must "specifically direct[ ]" his argument at the alleged error to preserve the claim for appellate review)).

Because the Appellate Division relied on a state procedural rule to reject petitioner's legal insufficiency argument, the claim is precluded from habeas review pursuant to the adequate and independent state ground doctrine.[2] *See, e.g., Richardson v. Greene,* 497 F.3d 212, 218 (2d Cir.2007) (recognizing New York's "contemporaneous objection" rule as an adequate and independent state ground barring habeas review); *see also Fore v. Ercole,* 594 F.Supp.2d 281 (E.D.N.Y.2009) (finding appellate court's determination that petitioner failed to preserve his sufficiency challenge by making only a general motion to dismiss was an adequate and independent state ground); *Walker v. Goord,* 427 F.Supp.2d 272 (W.D.N.Y.2006) (appellate court's rejection of legal insufficiency claim based on New York's contemporaneous objection rule was an adequate and independent state ground barring habeas review).

Petitioner has not alleged cause for the procedural default or prejudice resulting therefrom. Nor has he attempted to make the factual showing of "actual innocence" required to qualify for the "fundamental miscarriage of justice" exception. This claim is therefore dismissed as procedurally barred.

### 3. Harsh and Excessive Sentence

Petitioner asserts that his sentence of life without parole was harsh and excessive. Pet., Attach. # 2, Ground III.

A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim

subject to review by a habeas court. *See* 🚩 *Fielding v. LeFevre,* 548 F.2d 1102, 1109 (2d Cir.1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing 🚩 *Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. 🚩 *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992); *accord Ross v. Gavin,* 101 F.3d 687 (2d Cir.1996) (unpublished opinion).

**\*5** Here, petitioner was sentenced to life imprisonment without parole for the murder of two people during an attempted robbery. New York's sentencing statute provides for life imprisonment without parole upon conviction of murder in the first degree. *See* 🚩 N.Y. Penal L. §§ 70.00(5), 🚩 125.27. Thus, petitioner's sentence was within the prescribed statutory scheme, and petitioner has not set forth a constitutional infirmity. 🚩 *White,* 969 F.2d at 1383. This claim is dismissed.

### IV. Conclusion

For the reasons stated above, Benjamin Switzer's petition for writ of habeas corpus pursuant to 🚩 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. *See, e.g.,* 🚩 *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 111-113 (2d Cir.2000). The Court hereby certifies, pursuant to 🚩 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. 🚩 *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 1543855

---

### Footnotes

1    Petitioner was sentenced to life without parole for the first-degree murder convictions; 25 years to life on the second-degree murder convictions, and fifteen years determinate for the attempted robbery convictions. The sentences for attempted robbery were to run consecutively to one another, as to the two victims involved. Sentencing Mins. 40-41.

2    *See* N.Y.Crim. Proc. Law § 470.05(2) (codifying New York's contemporaneous objection rule).

---

**End of Document**                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Roache v. McCulloch, Not Reported in Fed. Supp. (2019)

Case 9:21-cv-01007-AMN-ML    Document 38    Filed 02/16/24    Page 40 of 80

2019 WL 4327271
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Walter J. ROACHE, Petitioner,

v.

Deborah MCCULLOCH, Executive Director,

Central New York Psychiatric Center, [1] Respondent.

Nos. 9:16-cv-1069-JKS, 9:17-cv-574-JKS
|
Signed 09/12/2019

**Attorneys and Law Firms**

Walter J. Roache, Marcy, NY, pro se.

Lisa E. Fleischmann, New York State Attorney General, New York, NY, for Respondent.

MEMORANDUM DECISION

JAMES K. SINGLETON, JR., Senior United States District Judge

**\*1**  Walter J. Roache, a civil detainee proceeding *pro se,* filed a Petition for Writ of Habeas Corpus with this Court pursuant to 🚩 28 U.S.C. § 2254. Roache is in New York state custody and involuntarily confined at the Central New York Psychiatric Center ("CNYPC") as a "sex offender requiring civil management" pursuant to Article 10 of the New York State Mental Health Law ("MHL"). Respondent has answered the Petition, and Roache has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

In 1977, Roache pled guilty to public lewdness with respect to two incidents that occurred within two months of each other. Following a jury trial, Roache was also convicted in 1978 of two counts of first-degree rape and two counts of third-degree rape for offenses that occurred while Roache was serving a 1-year probation term on the public lewdness conviction. Roache was sentenced to 100 months to 25 years' imprisonment on the four rape counts. Docket No. 24-1 at 9-10. [2]

Roache subsequently pled guilty in 1992 to first-degree sexual abuse after molesting two young girls who were picking berries. For those offenses, Roache was sentenced to 3 to 6 years' imprisonment, to run consecutively with the 11 years of undischarged time remaining on Roache's 1978 rape conviction. Docket No. 24-1 at 11-12.

Prior to the 2010 expiration of Roache's aggregate prison sentence, the State petitioned under MHL § 10 for Roache to remain civilly confined in the State's custody, and Roached was assigned counsel from the Mental Hygiene Legal Service. On April 23, 2010, the Supreme Court found probable cause pursuant to 🚩 MHL § 10.06 to believe that Roache would require civil management. A jury subsequently rendered a unanimous verdict that Roache suffered from a "mental abnormality" that predisposes him to commit sex offenses. On June 4, 2014, however, the Appellate Division of the Supreme Court of New York set aside that verdict and ordered a new trial, holding that the State's experts improperly provided considerable hearsay that formed the basis of their opinions, and the State failed to establish that the hearsay was reliable in violation of *State v. Floyd Y.,* 22 N.Y.3d 95 (N.Y. 2013). *State v. Walter R.,* 987 N.Y.S.2d 104 (N.Y. App. Div. 2014).

Following a second trial, a jury rendered a unanimous verdict finding that Roache is a detained sex offender who suffers from a "mental abnormality" as defined in MHL § 10.03(i). Following the jury verdict, the county court held a dispositional hearing on September 16, 2016, and found that Roache is a "dangerous sex offender requiring confinement" as defined by 🚩 MHL § 10.03(e). Thus, on September 21, 2016, the county court granted the State's petition and directed that Roache remain commitment to a secure treatment facility for care and treatment. Docket No. 24 at 50-51.

Through counsel, Roache directly appealed the order for commitment, arguing that: 1) the evidence was legally insufficient to sustain the commitment order; 2) the county court erred by failing to instruct the jury on the definition of "sex offense" under 🚩 MHL § 10.03(p); and 3) the county court erred in admitting double hearsay through the State's expert witnesses. Docket No. 72-1 at 75-96. Roache filed a supplemental *pro se* appellate brief raising the following arguments for relief: 1) the county court erred because the experts' evaluations were based on inadmissible hearsay, including pre-sentencing investigative reports, police reports, and victim statements; 2) the county court erred in

admitting evidence of a prior bad act–namely Roache's public masturbation at CNYPC; 3) violation of confrontation clause, malicious prosecution and ineffective assistance of counsel when the State presented hearsay from a witness who never appeared to testify; 4) the trial judge unlawfully prejudiced the jury by referring to Roache as a dangerous sex offender during most of the trial; 5) the trial judge had a conflict of interest during the September 16, 2016, dispositional hearing because he had notice of Roache's 41 U.S.C. § 1983 case against him; [3] 6) ineffective assistance of counsel against Randy Siper because the second trial was delayed beyond 60-day deadline, he failed to defend by providing evidence of Roache's completion of educational programs while in custody of the State, he failed to adequately prepare, and the jury was prejudiced by seeing Roache in shackles and hand cuffs throughout trial; and 7) ineffective assistance against Richard Lentino for preventing Roache from getting a psychological evaluation and transferring from CNYPC to Manhattan Psychiatric Center and failing to prepare defense for dangerous hearing. Docket No. 72-1 at 44-66.

**\*2** On October 31, 2018, the Appellate Division affirmed the county court's finding that Roache is a dangerous sex offender requiring civil confinement. *State v. Walter J.R., 84 N.Y.S. 3d 804 (N.Y. App. Div. 2018)*. The appellate court found that "the jury verdict was supported by legally sufficient evidence, since there was a valid line of reasoning by which the jury could conclude that [Roache] suffered from a mental abnormality as defined in [MHL], and the verdict was not contrary to the weight of the evidence, as it was supported by a fair interpretation of the evidence." *Id. at 805*. The Appellate Division also rejected Roache's contention that his due process and confrontation rights were violated by the State's expert testimony regarding a statement made by Roache in connection with his prior public lewdness conviction. *See id.* Finally, the Appellate Division rejected Roache's "remaining contentions, including those raised in his pro se supplemental brief, [as] either unpreserved for appellate review or without merit." *Id.* Roache petitioned for leave to appeal to the New York Court of Appeals, which was summarily denied on January 10, 2019. *State v. Walter J.R., 117 N.E. 3d 818, 818 (N.Y. 2019)*.

While his case was pending in state court, Roache challenged his civil confinement and sought immediate release through an initial *pro se* Petition for a Writ of Habeas Corpus under ⚑ 28 U.S.C. § 2254 filed in this Court on August 18, 2016. Case No. 9:16-cv-01069 ("Lead Case"), Docket No. 1. Around the same time, Roache sought the same relief

in another *pro se* petition for habeas relief filed in the Southern District of New York, which was transferred to this Court. Case No. 9:17-cv-0574 ("Member Case"). This Court, through a previously-assigned district judge, consolidated the two cases. [4] Docket No. 32. The cases are now before the undersigned judge for adjudication.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Roache challenges the validity of his civil commitment, arguing that: 1) his confinement is unconstitutional because it is pursuant to an "unsigned" restraining order, he was unconstitutionally held while awaiting second trial, and he has been denied periodic reviews for release; 2) there was an unconstitutional delay of his probable cause hearing and both trials; and 3) counsel rendered ineffective assistance in a variety of ways. Docket No. 1 at 1–10. After Roache's two petitions were consolidated, the following additional grounds for relief, which were already raised before the Southern District of New York, were raised in a supplemental petition: 4) additional grounds for ineffective assistance of counsel; 5) erroneous admission of hearsay through expert witnesses' testimony and diagnoses; and 6) inadmissible hearsay evidence from witnesses who failed to appear in court. Docket No. 33 at 4-6.

In his Reply, Roache raises additional grounds for relief by attacking the validity of the State's expert's psychological evaluation and asserting the trial court committed an evidentiary error by permitting evidence of a prior bad act which was unreliable hearsay. Docket No. 28. The Court does not ordinarily consider grounds raised in a Reply. "The petition must 1) specify *all* the grounds for relief available to the petitioner; 2) state the facts supporting each ground; [and] 3) state the relief requested...." Rules Governing Section 2254 Cases in the U.S. District Courts, Rule 2(c) (2012) (emphasis added). Because Roache did not raise these additional arguments in either of his petitions, he denied Respondent an opportunity to respond to the claims. Accordingly, they need not be considered by this Court.

*See* ⚑ *Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999)* (declining to consider the plaintiff's argument because it was raised for the first time in his reply brief); ⚑ *United States ex rel. Morgan v. McElroy, 981 F. Supp. 873, 876 n.3 (S.D.N.Y. 1997)* (declining to consider a number of "eleventh hour" claims raised for the first time in the petitioner's reply brief).

### III. STANDARD OF REVIEW

**\*3** A person in custody pursuant to the judgment of a state court may file a petition for a writ of habeas corpus in the United States District Courts if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a); *Williams v. Taylor,* 529 U.S. 362, 375 n.7 (2000). The fact that Roache is challenging his civil commitment for mental illness rather than his underlying criminal conviction does not change the outcome as civil commitments are typically challenged in habeas proceedings. *See Duncan v. Walker,* 533 U.S. 167, 176 (2001) (stating that a state court order of civil commitment satisfies § 2254's "in custody" requirement). A person in state custody may challenge his confinement under 28 U.S.C. § 2241 or 28 U.S.C. § 2254. However, a § 2241 petition generally challenges the execution of a sentence such as "the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian v. Nash,* 245 F.3d 144, 146 (2d Cir. 2001). Because Roache challenges the term of his confinement rather than the conditions surrounding it, he has properly brought his claim under § 2254. *See Buthy v. Comm'r of Office of Mental Health of New York,* 818 F.2d 1046, 1051-52 (2d Cir. 1987) (petitioning for a writ of habeas corpus pursuant to § 2254 is the appropriate method for an individual to challenge the fact or duration of his involuntary civil commitment to a state psychiatric institution).

Where a case challenging a civil commitment is initiated by the filing of a petition for habeas corpus, the case is governed by the deferential standard of review prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). *Ernst J. v. Stone,* 452 F.3d 186, 188 (2d Cir. 2006). Under AEDPA, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor,* 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke,* 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied)Where a case challenging a civil commitment is initiated by the filing of a petition for habeas corpus, the case is governed by the deferential standard of review prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). *Ernst J. v. Stone,* 452 F.3d 186, 188 (2d Cir. 2006). Under AEDPA, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor,* 529 U.S. 362, 406 (2000).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker,* 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello,* 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith,* 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v.*

Case 9:21-cv-01007-AMN-ML   Document 38   Filed 02/16/24   Page 43 of 80

Roache v. McCulloch, Not Reported in Fed. Supp. (2019)

*Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

### A. Exhaustion

**\*4** As an initial matter, Roache failed to exhaust several of his claims, including his assertions that his confinement is unconstitutional because it is pursuant to an "unsigned" restraining order, he was unconstitutionally held while awaiting second trial, and denied periodic reviews for release; and that there was an unconstitutional delay of his probable cause hearing and both trials. [5] This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases); *see also Rosado v. McCulloch*, No. 916CV1422TJMCFH, 2018 WL 7960305, at *3 (N.D.N.Y. Sept. 26, 2018), report and recommendation adopted, No. 916CV1422TJMDJS, 2019 WL 1542862 (N.D.N.Y. Apr. 9, 2019) (acknowledging the exhaustion requirement applies to habeas petitions challenging civil commitment proceedings); *Sincere M. v. New York Office of Mental Hygiene*, No. 13-CV-04028 (LDH), 2018 WL 4344947, at *2 (E.D.N.Y. Sept. 11, 2018) (same) (citation omitted).

Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the

state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *See Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *See Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

Despite Roache's failure to exhaust a number of his claims, this Court nonetheless may deny those unexhausted claims on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2); ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005). Accordingly, the Court declines to dismiss these unexhausted claims solely on exhaustion grounds and will instead reach the merits of the claims as discussed below.

### B. Merits

#### 1. Unconstitutional confinement (Ground 1)

Roache first argues that he is unconstitutionally held in civil confinement pursuant to an "unsigned restraining order." The referenced order, which he attaches to his Petition, is an Order to Show Cause dated January 27, 2010, initiating an action to determine whether Roache is a sex offender requiring civil management pursuant to MHL ("Order to Show Cause"). Docket No. 1-1 at 1-2. Contrary to Roache's assertion, however, the Order to Show Cause was electronically signed by Justice David Murad by printing his name on the signature line. Regardless, Roache is confined not pursuant to the Order to Show Cause, but instead pursuant to Justice Nicholas DeRosa's September 21, 2016, Order for Confinement, which was properly signed and authorized. Docket No. 24 at 50-51 ("Order for Confinement"). Roache provides no other basis on which to conclude that either the Order to Show Cause or

the Order for Confinement were unconstitutionally entered. *See Fair v. Duffy*, No. 14 CIV. 4836 (ER), 2017 WL 1410810, at \*3 (S.D.N.Y. Apr. 19, 2017) (citing *Nyenekor v. New York*, No. 09 Civ. 8719 (DAB), 2014 WL 785690 (S.D.N.Y. Feb. 25, 2014) (adopting the report and recommendation finding that "nonsensical and conclusory allegations" do not fairly present the factual and the legal premises for a court to assess a habeas petitioner's claim); 🔖 *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982)).

**\*5** Roache fares no better on his claim that his pre-trial confinement was unlawful. Pursuant to 🔖 MHL § 10.06(k), an individual should not be released pending trial after the court determines that probable cause has been established. In this case, the county court determined that there was probable cause to believe that Roache was a sex offender requiring civil management on April 23, 2010. That the Appellate Division set aside Roache's first trial in June 2014 does not negate county court's determination of probable cause in 2010.

Finally, Roache's claim that he was denied period review for release is misplaced. Pursuant to MHL § 10.09, "each respondent committed under this article shall have an examination for evaluation of his or her mental condition made at least once every year." But Roache has not been entitled to such an evaluation since February 14, 2018, when, by request of Roache's attorney in the state proceedings, the Oneida County Supreme Court stayed Roache's annual review pursuant to MHL § 10.08(f).[6] Docket No. 72 at 2. And even if there were no stay, this argument seeks relief exclusively on state law grounds, which are not cognizable before this Court on review for habeas relief. *See* 🔖 *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). "We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' " 🔖 *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *see also* 🚩 *Walton v. Arizona*, 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by* 🔖 *Ring v. Arizona*, 536 U.S. 584 (2002). Accordingly, Roache is not entitled to relief on any argument advanced in support of this ground.

2. Speedy trial violations (Ground 2)

Roache further contends that his constitutional rights were violated because the probable cause hearing was delayed for 80 days in violation of 🔖 MHL § 10.06, which provides that "[w]ithin 30 days after the sex offender civil management petition is filed ... the county court before which the petition is pending shall conduct a hearing without a jury to determine whether there is probable cause to believe that the [habeas petitioner] is a sex offender requiring civil management."

Roache fails to acknowledge 🔖 MHL § 10.06(h), however, which provides that "[a]ny failure to commence the probable cause hearing within the time periods specified shall not result in the dismissal of the petition and shall not affect the validity of the hearing or the probable cause determination." Furthermore, MHL § 10.08(f) provides that "[t]ime periods specified by provisions of this article for actions by state agencies are goals that the agencies shall try to meet, but failure to act within such periods shall not invalidate later agency action." These MHL provisions undermine Roache's argument. Furthermore, this claim is based on state law grounds, and thus is not cognizable on federal habeas review. *See, e.g., Bermudez v. Conway*, No. 09-CV-1515, 2012 WL 3779211, at \*9 (E.D.N.Y. Aug. 30, 2012); *Hodges v. Bezio*, No. 09-CV-3402, 2012 WL 607659, at \*4 (E.D.N.Y. Feb. 24, 2012); *Rodriguez v. Superintendent, Collins Corr. Facility*, 549 F. Supp. 2d 226, 236-37 (N.D.N.Y. 2008).

**\*6** Roache also contends that there was an unconstitutional delay with respect to both his first and second trials. Preliminarily, Roache has already received relief from any defects of his first trial because, as aforementioned, the Appellate Division set aside that trial and ordered a new one. Thus, his claim with respect to the first trial is denied as moot. *See Johnson v. Smith*, 764 F.2d 114 (2d Cir. 1985) (finding that claims from habeas corpus appeal were moot after retrial occurred). To the extent that Roache raises a claim with respect to his second trial, such claim is not cognizable on federal habeas review. Much like his claim based on MHL § 10, Roache's claim is based on New York's speedy trial protection, New York Criminal Procedure Law ("CPL") § 30.30, and state law exclusively, and thus outside the purview of this Court's review for federal habeas relief.

Construing Roache's *pro se* Petition liberally, *see* 🔖 *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), to the extent he additionally asserts a federal speedy trial claim, he is not entitled to relief on that claim either. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial." U.S. CONST.

amend VI. This right is enforced against the states through the Due Process Clause of the Fourteenth Amendment. However, as discussed above, constitutional protections afforded to criminal defendants are not necessarily provided to civil litigants, even those in involuntary civil commitment proceedings. *See* U.S. CONST. AMEND. VI. The "fact that a proceeding will result in loss of liberty does not *ipso facto* mean that the proceeding is a 'criminal prosecution' for purposes of the Sixth Amendment." 🔖*Middendorf v. Henry*, 425 U.S. 25, 37 (1976). Although the Supreme Court has recognized that an involuntary civil commitment proceeding "constitutes a significant deprivation of liberty that requires due process protection," 🔖*Addington v. Texas*, 441 U.S. 418, 425 (1979), the Supreme Court has not clearly established that the Sixth Amendment right to a speedy trial attaches in involuntary civil commitment proceedings, *see* 🔖*Doggett v. United States*, 505 U.S. 647, 655 (1992) ("the Sixth Amendment right of the accused to a speedy trial has no application beyond the confines of a formal criminal prosecution"). Where no principle of clearly established Supreme Court law has been violated, habeas relief is not warranted. *See* 🔖*Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations and internal quotations omitted).

Even assuming, without deciding, that the due process clause protects against trial delay in involuntary civil commitment proceedings, Roache fails to show that he is entitled to relief under the test laid out in 🔖*Barker v. Wingo*, 407 U.S. 514, 530 (1972). The *Barker* balancing test aids courts in determining whether a speedy trial violation has occurred by assessing: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his speedy trial right; and 4) prejudice to the defendant. 🔖*Barker*, 407 U.S. at 530. The list is not exhaustive, and no single factor is dispositive. *Id.* Accordingly, "reasonable minds may disagree in close cases on whether the balance of factors tips in favor of recognizing a violation of the Speedy Trial Clause." 🔖*United States v. Ray*, 578 F.3d 184, 191 (2d Cir. 2009); *see also* 🔖*Barker*, 407 U.S. at 521 ("It is, for example, impossible to determine with precision when the right has been denied."). As the Supreme Court made clear in *Barker*:

> [T]he right to a speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial.

**\*7** 🔖407 U.S. at 521; *see also* 🔖*Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (the right to a speedy trial is "amorphous," "slippery," and "necessarily relative"); 🔖*United States v. Ghailani*, 733 F.3d 29, 41 (2d Cir. 2013).

Here, Roache's second trial began about sixteen months after his first trial was set aside. In light of the four *Barker* factors, Roache's claim fails. First, a sixteen-month delay is shorter than the delays in other cases in which the United States Supreme Court and the Second Circuit have found no Sixth Amendment violation. *See* 🔖*United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) (twenty-six month delay did not violate right to speedy trial); *United States v. McGrath*, 622 F.2d 36, 41 (2d Cir. 1980) (twenty-four month delay did not violate right to speedy trial). Moreover, Roache did not assert his right to a speedy trial before the trial court and has not claimed that the delay in the commencement of his second trial caused him to suffer prejudice or that the delay prevented him from presenting a full defense. Accordingly, Roache cannot prevail on any speedy trial claim.

### 3. Ineffective assistance of counsel (Grounds 3, 4)

Roache contends that his counsel were ineffective for a variety of reasons, some of which he argues for the first time in his Petition. However, as discussed above, constitutional protections afforded to criminal defendants are not necessarily provided to civil litigants, even those in involuntary civil commitment proceedings. On its face, the Sixth Amendment right to counsel does not apply in civil actions. *See* U.S. CONST. AMEND. VI ("In all

criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense."). The Supreme Court has not addressed whether a right to counsel under the Sixth Amendment or independently by the Due Process Clause attaches in involuntary civil commitment proceedings, and neither has the Second Circuit so held.

*Project Release v. Prevost*, 722 F.2d 960, 976 (2d Cir. 1983) (assuming, without deciding, that there is a right to counsel under the due process clause because "[a] right to counsel in civil commitment proceedings may be gleaned from the Supreme Court's recognition that commitment involves a substantial curtailment of liberty and thus requires due process protection" (citing *Addington*, 441 U.S. at 425-27)); *cf. Ambrose v. Roeckeman,* 749 F.3d 615, 619-20 (7th Cir. 2014) (declining to decide whether there is a constitutional right to appellate counsel in civil commitment appeals). In fact, other Circuit Courts have held that individuals subject to civil commitment do not have a right to counsel. *See United States v. Lesch*, 717 Fed. App'x 244, 247 (4th Cir. 2018) (holding that a person subject to civil commitment because he is a sexually dangerous person under state law " 'does not have a right to effective assistance of counsel under the Sixth Amendment.' In the past, this court has declined to decide whether such a right exists under the Due Process Clause of the Fifth Amendment, and we need not decide that question today.") (citations omitted); *Young v. King County,* 70 Fed. App'x 939 (9th Cir. 2003) (holding that a person subject to civil commitment is not entitled to Sixth Amendment right to counsel). Where there is no principle of clearly established Supreme Court law, the Petition cannot show a violation, and habeas relief is not permitted. *See Knowles*, 556 U.S. at 121.

**\*8** And even if there is an independent due process right to effective counsel in civil commitment proceedings, it is no broader than that afforded by the Sixth Amendment. Thus, by analogy, this Court will refer to the two-prong test for ineffective assistance of counsel claims based on the Sixth Amendment laid out in *Strickland v. Washington.* 466 U.S. 668, 687 (1984). To demonstrate ineffective assistance of counsel under *Strickland*, a defendant must show both that his counsel's performance was deficient, and that the deficient performance prejudiced his defense. A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has

established prejudice and is entitled to relief. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.

Thus, Roache must show that his counsel's representation was not within the range of competence demanded of attorneys in similar cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Only in "the exceedingly rare and exceptional case" will there be a finding that "the state court's decision involved an 'unreasonable application' of *Strickland.*" *Rivas v. Fischer*, 780 F.3d 529, 550 (2d Cir. 2015) (citing 28 U.S.C. § 2254(d)). Ultimately, the petitioner bears the burden of proof to overcome the strong presumption that counsel acted reasonably to show that counsel's "performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." *Williams*, 529 U.S. at 393 n.17 (2000); *see also, Garner v. Lee*, 908 F.3d 845, 865 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 1608 (2019) (citing *Waiters v. Lee*, 857 F.3d 466, 479 (2d Cir.), *cert. denied sub nom. Waiters v. Griffin*, 138 S. Ct. 385 (2017)). The Petitioner cannot merely speculate as to how counsel might have executed a different trial strategy. *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

In reviewing an ineffective assistance of counsel claim on federal habeas review:

> "The question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *accord Waiters at* 478. An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Roache v. McCulloch, Not Reported in Fed. Supp. (2019)

Case 9:21-cv-01007-AMN-ML    Document 38    Filed 02/16/24    Page 47 of 80

Roache's ineffective assistance claims fail to satisfy the *Strickland* standard. Roache contends that trial counsel failed to adequately prepare a defense by arriving late and missing scheduled meetings with Roache and by presenting a closing argument that was too short. But but he does not demonstrate how these actions prejudiced his defense or describe with particularity what his counsel should have done differently. *See, e.g.*, *Powers v. Lord*, 462 F. Supp. 2d 371, 381-82 (W.D.N.Y. 2006) (laying out the general rule that "undetailed and unsubstantiated assertions [about counsel's alleged shortcomings] have consistently been held insufficient to satisfy either Strickland prong" (citation omitted)). The record shows that, in fact, Siper successfully requested Roache's transfer to a facility closer to counsel 30 days before trial so that he could more effectively prepare. Docket No. 24-1 at 74-77. Roache also contends that Siper failed to timely seek records that demonstrated Roache's satisfactory completion of educational and treatment programs during his confinement. To the contrary, Roache admits on reply that Siper presented to the jury evidence demonstrating that Roache completed various courses and certificates regarding anger and aggression management. Docket No. 28 at 9. Moreover, the record demonstrates Siper's familiarity with the programs Roache completed and that Siper made use of them at trial. *See* Docket No. 24-1 at 156-57; 166-67; 191-94; 206-14; and 220.

**\*9** Roache next argues that Siper prevented him from presenting five witnesses during his second trial. Preliminarily, Roache never provided a sworn affidavit or declaration from any of these potential witnesses setting forth the proposed testimony and affirmatively stating that they would have actually testified if called. *See* *McCray v. Ercole*, No. 07 Civ. 6589, 2010 WL 6804661, at \*7 (S.D.N.Y. Dec. 16, 2010) ("The failure to call a witness is particularly unlikely to constitute ineffective assistance in the absence of an affidavit or other evidence that the proposed witness would have provided relevant testimony."); *see also* *Schulz v. Marshall*, 528 F. Supp. 2d 77, 96 n.13 (E.D.N.Y. 2007) ("In evaluating claims of ineffective assistance of counsel based on failure to investigate witnesses, courts place weight on a defendant's ability to show that these witnesses would have had helpful information.") (collecting cases). Moreover, the ultimate decision of whether to call witnesses to testify is well within counsel's "full authority to manage the conduct of the [proceeding]." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988) ("Putting to one side the exceptional cases in which counsel is ineffective, the client must accept the consequences of the lawyer's decision ... to decide not to put certain witnesses on

the stand."). "The decision of whether to call any witnesses on behalf of a defendant, and which witnesses to call or omit to call, is a tactical decision which ordinarily does not constitute incompetence as a basis for a claim of ineffective assistance of counsel." *Speringo v. McLaughlin*, 202 F. Supp. 2d 178, 192 (S.D.N.Y. 2002); *see also* *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). Ineffective assistance claims based on a failure to call certain witnesses are disfavored on habeas review because "allegations of what a witness would have testified [to] are largely speculative." *Speringo*, 202 F. Supp. 2d at 192 (citation omitted); *see also* *Montalvo v. Annetts*, 02 Civ. 1056, 2003 WL 22962504 (S.D.N.Y. Dec. 17, 2003) (the decision not to call a particular witness "generally should not be disturbed" because of "its inherently tactical nature"). Indeed, Roache does not demonstrate that either lay or expert witnesses would have provided beneficial testimony or that the omission of such testimony deprived him of a fair trial.

Roache also contends that Siper prevented Roache from testifying on his own behalf during the second trial. It is undisputed that a defendant in a criminal case has a constitutional right to testify on his own behalf. [7] *See* *Rock v. Arkansas*, 483 U.S. 44, 49 (1987) ("[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense."). The Second Circuit "has repeatedly held that defense counsel must inform a criminal defendant 'of the nature and existence of the right to testify,' and that this obligation is a component of effective assistance." *Zayac v. United States*, 771 Fed. App'x 54, 55 (2d Cir. 2019) (quoting *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997)). "Although counsel has the right, and indeed the professional duty, to advise his client of the benefits and pitfalls of a decision to take the stand on his own behalf, the ultimate decision regarding whether to testify belongs to the defendant." *Brown v. Artuz*, 124 F.3d 73, 78 (2d Cir. 1997) (internal citation omitted), *cert. denied*, 522 U.S. 1128 (1998). However, unlike the waiver of some fundamental rights, there is "no general obligation on the trial court to inform a defendant of the right to testify and ascertain whether the defendant wishes to waive that right." *Id.* at 79 ("[T]he judge need not intervene when counsel announces that the defendant rests and the defendant has not testified.").

In this case, Roache clearly knew he could testify at the second trial because the record shows that he testified at his first trial. The record does not indicate that Roache ever

Case 9:21-cv-01007-AMN-ML    Document 38    Filed 02/16/24    Page 48 of 80

Roache v. McCulloch, Not Reported in Fed. Supp. (2019)

expressed to the trial court that he intended or desired to testify over counsel's objections or advice. While Roache may now wish, with the benefit of hindsight, that he had testified at the second trial, the record reflects that he voluntarily waived that right. Moreover, Roache provides nothing to demonstrate the substance of his proposed testimony or that it would have resulted in a different verdict, and thus fails to establish prejudice under *Strickland.*

Finally, Roache contends that his counsel failed to properly defend against the State's presentation of hearsay evidence from a woman with a young child who Roache was accused of stalking. The trial court permitted the State to introduce as evidence of grooming love letters, gifts, and phone and voicemail transcripts from Roache, but neither the woman nor her child testified at trial about their interactions with Roache. During the pre-trial hearing on the admissibility of the hearsay evidence, [8] Siper reserved an objection pending his review of the evidence, but the Court ruled that this evidence was admissible on its face because it contained relevant subject matter and was reliable because it consisted of Roache's own statements. Docket No. 24-1 at 70-71. Siper cross-examined the State's experts regarding this evidence, but had no sound basis upon which to object to the non-production of these individuals. Moreover, given that the State's experts testified at length about Roache's uncontrollable sexual urges, counsel may reasonably have chosen to avoid the risk of having the woman and her child in Roache's presence at trial. *See* 🔖 *McKee v. United States,* 167 F.3d 103, 106 (2d Cir. 1999) ("Actions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance, and a court may not use hindsight to second-guess counsel's tactical choices." (citations and internal quotation marks omitted)). Accordingly, there is no clear misapplication of established Supreme Court law in the Appellate Division's rejection of Roache's ineffective assistance claims.

### 4. Evidentiary errors (Grounds 5, 6)

**\*10**  Roache's first trial was set aside because the Appellate Division determined that the State's experts had relied on unreliable hearsay evidence regarding unproven accusations at trial which violated his constitutional right to due process. *State v. Walter R.,* 987 N.Y.S.3d 104 (N.Y. App. Div. 2014). The Appellate Division held that in "article 10 trials, hearsay basis evidence is admissible if it satisfies two criteria. First, the proponent must demonstrate through evidence that the hearsay is reliable. Second, the court must determine that the 'probative value in helping the jury evaluate the [expert's]

opinion substantially outweighs [its] prejudicial effect.' " *Id.* at 715 (quoting FED. R. EVID. 703); *see also* 🔖 *State v. Floyd Y.,* 22 N.Y.3d 95, 109 (N.Y. 2013).

Before the second trial, the Orange County Supreme Court held a Floyd Y hearing to evaluate the reliability and substantial relevance of the evidence. With respect to expert testimony, the Court specifically ruled "if [Roache] admitted that to [expert], obviously [the expert] can testify to it, but he can't testify to it from another document." Docket No. 24-1 at 64. During trial, the psychological experts had access to their reports in order to refresh their recollection, but only provided oral testimony. Docket No. 24-1 at 89. The jury did not see the expert reports because they were not admitted into evidence.

As he did following his first trial, and on appeal after the second trial, Roache contends that the State's expert witnesses' testimony and diagnoses were based on inadmissible hearsay in violation of New York law. Docket No. 33 at 5. Specifically, Roache contends that the State's psychologists based their diagnoses on Roache's pre-sentencing investigation reports, police reports, and victim statements, which are inadmissible hearsay in violation of *State v. Dove,* 846 N.Y.S.2d 863 (N.Y. Sup. Ct. 2007). The Appellate Division summarily denied this claim as without merit.

Roache fares no better on federal habeas review. Roache's Petition raises a claim that is grounded in state law exclusively rather than any violation of the federal Constitution. As noted above, it is well-settled that issues of improper application of state law are beyond the purview of this Court in a federal habeas proceeding. *See* 🔖 *Swarthout v. Cooke,* 562 U.S. 216, 221–22 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.,* 🔖 *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); 🔖 *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by* 🔖 *Ring v. Arizona,* 536 U.S. 584 (2002).

To the extent that Roache's Petition could be broadly construed, *see* 🔖 *Erickson,* 551 U.S. at 89, to raise a federal due process or confrontation claim, such claims are cognizable but nonetheless without merit. The Confrontation

Case 9:21-cv-01007-AMN-ML   Document 38   Filed 02/16/24   Page 49 of 80

Roache v. McCulloch, Not Reported in Fed. Supp. (2019)

Clause mandates that a criminal defendant has the right to confront and cross-examine the witnesses against him. *See* *Pennsylvania v. Ritchie,* 480 U.S. 39, 51 (1987). This generally means that out-of-court testimonial statements by a witness are not admissible against a defendant unless the witness is available for cross-examination at trial or the defendant had an opportunity to cross-examine the witness about the statements before trial. *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004). However, as discussed thoroughly above, constitutional protections afforded to criminal defendants are not necessarily provided to civil litigants, even those in involuntary civil commitment proceedings. The Supreme Court has not clearly established that the Sixth Amendment right to confront and cross-examine witnesses attaches in involuntary civil commitment proceedings. *See* *Pennsylvania v. Ritchie,* 480 U.S. 39, 52 (1987) ("the right to confrontation is a [criminal defendant's] trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination."); *Barclay v. New York,* 602 F. App'x 7, 13 (2d Cir. 2015) (holding that Sixth Amendment right to confrontation did not apply in state inmate's civil action against State and prison officials); *Walker v. Hadi,* 611 F.3d 720, 724 (11th Cir. 2010) (rejecting state civil detainee's confrontation claim because state court decision was not contrary to, or an unreasonable application of, federal law in absence of Supreme Court holdings requiring state court to exclude testimonial hearsay evidence in a civil commitment hearing); *Carty v. Nelson,* 426 F.3d 1064, 1073 (9th Cir. 2005). Where no principle of clearly established Supreme Court law has been violated, habeas relief is not warranted. *See* *Knowles,* 556 U.S. at 121.

**\*11** Although the Due Process Clause may protect against a state court's improper admission of hearsay evidence, *see* *Michigan v. Bryant,* 562 U.S. 344, 371 (2011) ("the Due Process Clauses of the Fifth and Fourteenth Amendments may constitute a further bar to admission of, for example, unreliable evidence.") (citations omitted); *Montana v. Egelhoff,* 518 U.S. 37, 53 (1996) (plurality opinion) ("[E]rroneous evidentiary rulings can, in combination, rise to the level of a due process violation"); *Dutton v. Evans,* 400 U.S. 74, 96-97 (1970) (Harlan, J., concurring in result) ("[T]he Fifth and Fourteenth Amendments' commands that federal and state trials, respectively, must be conducted in accordance with due process of law" are the "standard"

by which to "test federal and state rules of evidence"), the petitioner must first "demonstrate that the state court's erroneous conclusions about New York evidence law were so egregious as to implicate the Fourteenth Amendment's guarantee of due process. That guarantee, in this case, is one of 'fundamental fairness,' a principle that the Supreme Court has 'defined ... very narrowly,' " *Evans v. Fischer,* 712 F.3d 125, 133 (2d Cir. 2013) (quoting *Dowling v. United States,* 493 U.S. 342, 352 (1990)). Establishing a violation of fundamental fairness is a more general rather than specific rule, and "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004). Moreover, a hearsay "[e]rror is harmless if it is highly probable that it did not contribute to the verdict." *United States v. Gomez,* 617 F.3d 88, 95 (2d Cir. 2010) (quoting *United States v. Kaiser,* 609 F.3d 556, 573 (2d Cir. 2010)). In determining whether an alleged error is harmless, a court considers, among other factors, "the importance of the wrongly admitted testimony" and "whether such evidence was cumulative of other properly admitted evidence." *United States v. Kaplan,* 490 F.3d 110, 123 (2d Cir. 2007).

Upon independent review, the Court concludes that the Appellate Division's rejection of Roache's evidentiary claim is reasonable and fully supported by the record. Under both federal and New York law, expert testimony "is not rendered inadmissible" merely because it relies on other evidence which is itself not admissible. *See* FED. R. EVID. 703 ("If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted."); *State v. Floyd Y.,* 22 N.Y.3d 95, 107 (N.Y. 2013) ("we have held that hearsay may play a role in an expert's testimony because the expert may base an opinion on hearsay if it 'is of a kind accepted in the profession as reliable in forming a professional opinion' ").

In accordance with the trial court's Floyd Y ruling, the experts described Roache's own statements from the underlying records or read from documents properly admitted into evidence. *See, e.g.,* Docket No. 24-1 at 98 (quoting Roache's statement in pre-sentence investigation report regarding his 1977 conviction); 102 (describing Roache's statement in a 1978 mental health evaluation); 151, 153,199-201, 231-232, 238 (describing Roache's statements during Dr. Hadden's

Case 9:21-cv-01007-AMN-ML   Document 38   Filed 02/16/24   Page 50 of 80

Roache v. McCulloch, Not Reported in Fed. Supp. (2019)

interview of him);183-84, 311-12 (quoting from Roache's love letters to a woman and her young child); 234-35 (quoting from a certified progress note regarding Roache's demotion to phase 1); 280 (describing Roache's statements regarding his conviction for public lewdness in 1978); 292 (describing Roache's statements regarding a parole violation and conviction in 1992); and 300-01 (describing Roache's prior inconsistent statement regarding denying his prior convictions). They opined, based on their education and experience and a reasonable degree of certainty in the field of psychology, that Roache suffers from a mental abnormality after considering information of the type that is typical in psychology, including Roache's criminal and behavioral history, treatment records, pre-sentence investigation reports, police records, statements from past victims, parole records, hearing transcripts, District Attorney records, court records, Board of Examiners of Sex Offenders records, military records, and Orange County Sheriff's Office records. *See generally* Docket No. 24-1 at 89, 142, 266-67. Because Roache's history is so extensive, and his first sex offense conviction goes back to 1978, the experts reviewed thousands of pages of such records in preparation. Furthermore, during trial the Court gave a limiting instruction to the jury:

>  **\*12**  Testimony concerning the information the expert relied upon may be considered solely for the purpose of evaluating this witness's credibility and his opinions and understanding the basis of his conclusions. That's the only reason you can use that underlying material. You must not consider the testimony or the information relied upon by the witness for the purpose of establishing the truth of the allegations made in that information that was relied upon by the expert witness.

Docket No. 24-1 at 245.

It is somewhat troubling that the State did not call any victims to testify as to their personal encounters with Roache but instead relied exclusively on expert testimony. However, the record evidence underlying the expert testimony is overwhelming. On independent review, this Court cannot find that the Appellate Division's rejection of Roache's claim is anything but reasonable and in compliance with clearly established Supreme Court law.

V. CONCLUSION

Roache is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.' " (quoting *Miller-El,* 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment in each case accordingly.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4327271

## Footnotes

1    Deborah McCulloch, Executive Director, Central New York Psychiatric Center, is substituted for Ann Marie Sullivan, Commissioner of the Office of Mental Health, and the New York State Office of Mental Health. Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts. For purposes of a habeas corpus petition, the proper respondent is the individual "with the ability to produce the [petitioner's] body

**Roache v. McCulloch, Not Reported in Fed. Supp. (2019)**

Case 9:21-cv-01007-AMN-ML    Document 38    Filed 02/16/24    Page 51 of 80

before the habeas court." 🚩 *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Such an individual is generally the director of the detention facility because that person has immediate custody over the petitioner. *Id.*

2    The docket references in this memorandum opinion refer to Lead Case No. 9:16-cv-1069.

3    *Roache v. DeRosa, et al.,* U.S. District Court for the Southern District of New York, Case No. 1:16-cv-06334-CM.

4    This memorandum decision refers collectively to these consolidated petitions as "Petition."

5    Notably, Roache did not bring all of the claims that were exhausted on direct appeal.

6    This Court takes judicial notice of the docket of the New York State Court system. Judicial notice is "[a] court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact; the court's power to accept such a fact." BLACK'S LAW DICTIONARY (10th ed. 2014); FED. R. EVID. 201(b); *see* 🚩 *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003) (taking judicial notice of the court's records is appropriate).

7    The federal counterpart of MHL Article 10, the Adam Walsh Child Protection and Safety Act of 2006, provides that the subject of an involuntary commitment hearing "shall be afforded an opportunity to testify." 18 U.S.C. § 4247(d). For purposes of this proceeding, the Court assumes that an individual facing the threat of civil commitment also has a constitutional right to testify on his own behalf.

8    Under New York law, the State must identify all hearsay evidence it intends to introduce as basis testimony upon which its experts relied in forming their opinions, and the court holds a hearing to determine its admissibility. This hearing is referred to as a "Floyd Y." hearing based on the Court of Appeals' decision in that case. *See* 🚩 *State v. Floyd Y.*, 22 N.Y.3d 95, 107 (N.Y. 2013) ("we have held that hearsay may play a role in an expert's testimony because the expert may base an opinion on hearsay if it 'is of a kind accepted in the profession as reliable in forming a professional opinion' ").

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   12

Bermudez v. Conway, Not Reported in F.Supp.2d (2012)

2012 WL 3779211
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Isaias BERMUDEZ, pro se, Petitioner,
v.
James T. CONWAY, Superintendent, Respondent.

No. 09–CV–1515(DLI).
|
Aug. 30, 2012.

**Attorneys and Law Firms**

Isaias Bermudez, Comstock, NY, pro se.

Anastasia Spanakos–Orfan, Kew Gardens, NY, Queens County District Attorney's Office, for Respondent.

**OPINION & ORDER**

DORA L. IRIZARRY, District Judge.

**\*1** *Pro se* petitioner Isaias Bermudez filed this Petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See generally* Petition ("Pet."), Doc. Entry No. 1.) Petitioner was convicted of Criminal Possession of a Weapon in the Second Degree, in violation of New York Penal Law § 265.03. (Spanakos–Orfan Affidavit, ("Resp.Aff."), Doc. Entry No. 8, ¶ 3.) The state court sentenced Petitioner as a second felony offender, to a definite term of imprisonment of ten years. (*Id.*) The Petition is construed as raising the following claims: (1) Petitioner's statutory and constitutional speedy trial rights were violated; (2) Petitioner's conviction is unsupported by the record; (3) Petitioner's conviction was obtained with uncorroborated accomplice testimony in violation of N.Y. Criminal Procedure Law § 60.22; (4) Petitioner was improperly indicted; (5) Petitioner was denied a fair trial as the trial court failed to instruct the jury on circumstantial evidence; (6) the state failed to meet its discovery obligations as set forth under N.Y. Criminal Procedure Law §§ 240.44 and 240.45; (7) prosecutorial misconduct; (8) ineffective assistance of counsel; and (9) actual innocence. Respondent opposes each of these grounds. (Respondent's Memorandum in Opposition ("Resp.Opp."), Doc. Entry No. 8.)

For the reasons set forth below, the Petition is denied in its entirety and is dismissed with prejudice.

**BACKGROUND**

On December 7, 2000, police officers in a patrol car responded to a 911 call regarding an attempted robbery and met with an individual named Alex Perez on the corner of 110th Street and Jamaica Avenue, in the 102 Precinct in Queens, New York. Within minutes, a livery cab driver approached them motioning for them to follow him. They followed the driver to 86th Avenue, where the driver pointed towards the sidewalk. The police found Petitioner and David Pabon hiding underneath vehicles parked on the street. Petitioner had a knife around his waistband. The police located a pistol underneath the vehicle that concealed Petitioner, within arm's reach of where Petitioner was hiding. Petitioner and Pabon were charged with one count of Attempted Robbery in the First Degree in violation of N.Y. Penal Law § 110/160.15[2], two counts of Attempted Robbery in the Second Degree in violation of N.Y. Penal Law § 110/160.10[1], [2A], and one count of Criminal Possession of a Weapon in the Second Degree in violation of N.Y. Penal Law § 265.03[2] ). (*See* Indictment, Queens County Indict. No. 3918–2000.) Pabon pled guilty to Attempted Robbery in the First Degree and Criminal Possession of a Weapon in the Second Degree and received a sentence of a term of imprisonment of three and one-half years.

**I. Pre–Trial Proceedings**

Petitioner elected to proceed to trial and, prior to trial, engaged in motion practice. On November 13, 2002, Petitioner, who was represented by counsel, filed a *pro se* motion seeking dismissal on the ground that the delay in prosecuting his case violated his speedy trial rights guaranteed under the Sixth Amendment of the U.S. Constitution and N.Y. Criminal Procedure Law § 30.30. The trial court denied his motion with leave to file again upon consultation with counsel. *See People v. Bermudez,* Indict. No. 3918–2000, Order dated Nov. 20, 2002. On January 13, 2003, counsel filed a brief on behalf of Petitioner, charging the state with 231 days of delay and seeking dismissal under the Sixth Amendment and N.Y. C.P.L. § 30.30. The trial court denied the motion, finding no speedy trial violations as the state was only responsible for

152 days of delay. *See People v. Bermudez,* Indict. No. 3918–2000, Order dated Feb. 27, 2003.

**\*2**  On June 24, 2002, Petitioner appeared with counsel before the trial court for an omnibus suppression hearing to address the photo array identification of Petitioner, the line-up identification of Petitioner, and the conversations between Petitioner and law enforcement officers after his arrest. (*See* June 24, 2002 Hearing Transcript, Indict. No. 3918–2000.) The hearing was continued to July 2, 2002. (*See* July 2, 2002 Hearing Transcript, Indict. No. 3917–2000, 3918–2000.) None of the parties have provided the Court with the rulings from this hearing nor are they discernible from the record submitted by respondent in connection with its opposition. Nonetheless, it does not appear that these rulings are essential to the resolution of Petitioner's claims.

On March 6, 2003, the trial court heard arguments and issued a *Sandoval* ruling.[1]  The trial court held that the state could ask the Petitioner about: (1) a 1995 New York felony conviction for possession of a controlled substance; and (2) a 1998 Florida conviction for two felonies and one misdemeanor. (Trial Transcript ("Tr."), Indict. No. 3918–2000, 29:13–30:21.) With respect to these prior convictions, the trial court held that the state could inquire as to whether Petitioner was convicted of felonies and misdemeanors on those dates, but could not ask about the "underlying acts or the specific crimes." (Tr. 30:1–4.) Additionally, prior to the start of the trial, the state dismissed all of the counts against Petitioner, except for Criminal Possession of a Weapon in the Second Degree. Petitioner's counsel requested a ruling that would prohibit the state from asking any witnesses about the events underlying the armed robbery, and the trial court reserved its ruling. (Tr. 12:20–23.) The trial court later ruled that the state could not ask witnesses about the prior assault and attempted robbery that occurred on the night of Petitioner's arrest. (Tr. 71:16–17.)

**II. The State's Case**

The state called Detective Matthew Rottas as its first witness. Detective Rottas was the police officer who responded to the 911 call that ultimately led to Petitioner's arrest. (Tr. 287:15–348:8.) On the night of Petitioner's arrest, Detective Rottas and his supervisor, Lieutenant Chris Beyers, arrived on the scene of the crime and spoke with Alex Perez. They then followed the livery driver to 86th Avenue, and walked up and down the block looking for potential suspects. They saw Petitioner's legs sticking out from underneath a parked

motor vehicle and ordered Petitioner to present himself. (Tr. 300:20–301:33.) Petitioner remained silent and did not move. (Tr. 301:4–12.) Detective Rottas pulled Petitioner from underneath the vehicle and arrested him. (Tr. 301:13–22.) Petitioner was wearing a dark hooded sweatshirt and black gloves. (Tr. 308:1–4; 310:1–8.) Detective Rottas searched Petitioner and found a knife. (Tr. 328:2–8.)

Lieutenant Beyers pulled a second individual, David Pabon, from underneath the other end of the vehicle and arrested him. (Tr. 308:16–309:10.) Detective Rottas then used a flashlight to search underneath the vehicle and found a firearm. (Tr. 328:9–21.) The firearm contained five bullets, four in the magazine and one in the chamber, and the safety lock was off. (Tr. 330:15–24.) Detective Rottas did not check the firearm for fingerprints. (Tr. 335:2–5.) The firearm was found within arm's reach of where Petitioner was hiding. (Tr. 336:1–9.) Detective Rottas estimated that Pabon was found no less than eight feet away from the firearm. (Tr. 336:10–12.) Detective Rottas admitted that he did not check their hands for gunshot residue. (Tr. 341:23–342:1.) In a case like this, in which a firearm is located, but was not used in connection with a homicide or serious assault, the crime lab does not conduct fingerprint analysis. (Tr. 424:16–425:3.)

**\*3**  Detective Rottas admitted that neither he nor any other members of the police saw Petitioner touching the firearm before he was pulled from underneath the vehicle. (Tr. 339:17–19, 340:1–3, 340:22–341:1, 417:14–21.) Detective Rottas indicated that both Petitioner and Pabon were pulled from underneath the same vehicle. (Tr. 344:9–11.) Lieutenant Beyers testified for the state and clarified that Pabon's feet were underneath the same car as Petitioner, but that the majority of his body was underneath a second car that was parked next to the car concealing Petitioner. (Tr. 418:13–21.) In fact, Pabon's arms and hands were underneath the vehicle in front of the vehicle concealing Petitioner and the firearm. (Tr. 426:10–427:3.)

The state also called Detective John Cuebas, the officer who worked for the New York City Police Department Firearm Analysis Unit and who analyzed the firearm. During his investigation, Detective Cuebas was unable to trace ownership of the firearm. However, on the day that he testified, he received a report from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") indicating that the weapon was owned by an individual located in Virginia, who was neither Petitioner nor Pabon. (Tr. 392:20–394:3.)

At the conclusion of the state's case, defense counsel moved to dismiss the charge against Petitioner, contending that the state failed to establish that Petitioner knowingly possessed the firearm. (Tr. 433:1–434:2.) The trial court denied the motion. (Tr. 434:22–435:1.)

## III. Defense Case

Petitioner testified at his trial. (Tr. 436:25–450:17, 462:17–484:20.) Additionally, Petitioner called Pabon to testify on his behalf. (Tr. 491:19–538:4.)

### A. Petitioner's Testimony

During direct examination, Petitioner testified that, on the night in question, he was hiding underneath a vehicle at 2:00 A.M. with Pabon. (Tr. 438:14–22; 439:17–22.) Petitioner stated that he and Pabon were facing each other underneath the vehicle. (Tr. 440:24–441:10; 442:12–14.) He explained that he was carrying a knife and that, when he and Pabon saw the police, they were "scared," and hid underneath the vehicle "like a reflex or like an instinct." (Tr. 439:23–440:13.) Petitioner stated that he carried the knife because he had been unarmed when assaulted a month before, and had suffered serious injuries. (Tr. 440:14–20.) Petitioner testified he did not know that Pabon possessed a firearm on that particular day, but that he had seen Pabon with firearms in the past. (Tr. 445:15–446:5.)

During direct examination, Petitioner's attorney solicited the following testimony:

> Q: Mr. Bermudez, in your lifetime, have you ever been arrested?
>
> A: Yes, sir.

* * *

> Q: How many times have you been convicted of a crime?
>
> A: Twice.
>
> Q: And were those crimes felonies or misdemeanors?
>
> A: Felonies.
>
> Q: Both of them?
>
> A: Yes, sir.

> Q: And were you twice convicted by a jury or did you plead guilty?
>
> **\*4** A: I plead[ed] guilty.
>
> Q: And why is that, sir?
>
> A: I was guilty.
>
> Q: On both occasions?
>
> A: Yes, sir.

(Tr. 437:16–438:9.)

Petitioner testified during cross-examination that he and Pabon were walking on the street at that hour because they were on their way to meet with two female friends of Pabon's. (Tr. 448:13–449:19.) The prosecutor asked Petitioner how long it took him to get from the neighborhood where he and Pabon lived to the location where he was arrested, and he estimated it took one to two hours. (Tr. 450:3–5.) The prosecutor then asked Petitioner what he and Pabon had done before they began their walk, to which he responded "[n]othing." (Tr. 450:6–10.)

The judge then excused the jury for arguments regarding Petitioner's testimony on his prior convictions and his activities on the night of his arrest. (Tr. 450:22–462:9.) The judge permitted the state to clarify the number of Petitioner's prior convictions, including felonies and misdemeanors. Petitioner testified on direct that he had two prior felony convictions; however, Petitioner pled guilty to one felony in 1995 and two felonies and one misdemeanor (arising out of one arrest) in 1998. (Tr. 457:8–11) The judge denied the state's request to inquire about Petitioner's convictions after he was arrested on this case, reaffirming his earlier ruling. (Tr. 457:19–21.) The trial court explained that defense counsel should have structured the question regarding Petitioner's prior convictions differently, and that, as asked, opened the door for further clarification from the state. (Tr. 457:4–5.) Additionally, because Petitioner said that he was doing "nothing" before deciding to hide under the vehicle, the trial court ruled that the state could ask him if he saw Pabon strike anyone earlier in the evening. (Tr. 461:1.)

The state then continued its cross-examination of Petitioner. When asked whether he saw Pabon assault anyone on their walk from Brooklyn, Petitioner said: "No, ma'am. David Pabon never assaulted nobody." (Tr. 463:1–10.) He denied

that the assault was the reason the police were called to the crime scene that evening and he denied that the assault was the reason that they were hiding. (Tr. 463:11–20.) With respect to his prior convictions, Petitioner admitted to a felony conviction in 1995, a misdemeanor conviction in 1996, and two felonies and one misdemeanor in 1998. (Tr. 464:3–465:11.) He admitted that he had more than two convictions in his lifetime (Tr. 465:12–13), which was in direct conflict with his earlier testimony (Tr. 437:16–438:9).

### B. Pabon's Testimony

Pabon testified that, on the evening of their arrest, he was carrying the firearm found near Petitioner. (Tr. 495:8–496:3, 18–20.) He stated that they hid from the police underneath vehicles and, once he was underneath a vehicle, he threw the firearm. (Tr. 497:13–25.) He testified that he pled guilty to assault and possession of a weapon. (Tr. 499:19–21.) On cross-examination, Pabon admitted that he assaulted another individual just before he and Petitioner hid underneath the vehicles (Tr. 506:16–17), which contradicted Petitioner's testimony (Tr. 463:1–10). When confronted with the minutes from his plea allocution, Pabon refused to admit that he pled guilty to attempted robbery rather than assault. (Tr. 510:4–6.) He also refused to admit that he testified at his plea allocution that Petitioner acted in concert with him with respect to the attempted robbery and that it was Petitioner who possessed the firearm that night. (Tr. 510:7–511:15; 512:16–18.) He conceded that due to the darkness of the night, he was unable to determine whether he and Petitioner were facing each other underneath the vehicle or whether his feet were towards Petitioner's face. (Tr. 521:19–22.)

### IV. Summations

**\*5** During closing arguments, Petitioner's counsel argued that the state failed to establish that Petitioner knowingly possessed the firearm, whether under a theory of actual or constructive possession. In particular, defense counsel reiterated that: (1) both Petitioner and Pabon were under the vehicle where the firearm was found; (2) the police did not check the firearm for fingerprints or the Petitioner for gunshot residue; (3) Pabon admitted that the firearm was his, and; (4) Pabon admitted that he threw the firearm under the vehicle. (Tr. 548:21–556:22.) During closing arguments, the prosecutor argued the state had established that Petitioner, acting in concert with Pabon, possessed the firearm. (Tr. 556:24–569:22.) With respect to Pabon's claim that he pled guilty to assault rather than attempted robbery, the prosecutor stated:

> The evidence shows, that is, Mr. Pabon plead [sic] guilty not to assault, as the [Petitioner] would have him believe and possession of the weapon, but rather to an attempted robbery, acting in concert with another individual, and possession of a weapon, acting in concert with another individual, with intent to unlawfully use against another, and the evidence also showed that the only other individual with David Pabon on December 7, 2000, was him, [Petitioner].

(Tr. 558:3–11.) The prosecutor pointed out inconsistencies between the testimony of Pabon and Petitioner, as well as between Petitioner's testimony and that of the law enforcement witnesses. (Tr. 558:15–560:12; 561:14–21.) The prosecutor also argued that Pabon's testimony regarding his ownership of the firearm was not credible because he waited several years before admitted it was his, while, Petitioner, his self-professed close friend, remained in custody pending disposition of the firearm charge. (Tr. 564:20–25; 567:17–569:5.)

### V. Jury Verdict and Sentencing

In addition to standard charges on principles such as reasonable doubt and the elements of the crime, the trial court instructed the jury on constructive possession. (Tr. 585:12–586:1.) The trial court did not instruct the jury on circumstantial evidence or on the duty to refrain from finding Petitioner liable simply because his co-defendant, Pabon, pled guilty. During deliberations, the jury requested a second reading of the constructive possession charge, which the court granted. (Tr. 601:11–602:4.) The jury also requested readings from Pabon's testimony and instructions on reasonable doubt and the elements of the offense. The jury deliberated for three days, ultimately finding Petitioner guilty of criminal possession of a weapon in the second degree. Defense counsel moved to set aside the verdict.[2] On April 4, 2003, Petitioner was sentenced as a second felony offender and received a sentence of a definite term of incarceration of ten years.

### VI. Post–Conviction Litigation

On appeal, Petitioner argued that (1) the state failed to prove that he knowingly or constructively possessed the firearm; (2) the trial court erred in failing to instruct the jury on circumstantial evidence as the state's case was based entirely on circumstantial evidence of constructive possession; and (3) the prosecutor improperly urged the jury to consider Pabon's guilty plea as evidence of Petitioner's guilt. (Petitioner's Appellate Brief ("Pet.App.Br."), at 3.) Petitioner also filed a supplemental *pro se* brief, again arguing that both his statutory and constitutional speedy trial rights were violated. (Petitioner's *Pro Se* Supplemental Brief ("Pet. *Pro Se* Br."), at 3.)

**\*6** The Appellate Division, Second Department, affirmed Petitioner's conviction. *See People v. Bermudez,* 36 A.D.3d 928, 828 N.Y.S.2d 554 (2d Dep't.2007). The Appellate Division held that the state's case "was legally sufficient to establish the [Petitioner's] guilt beyond a reasonable doubt" and that the "verdict of guilt was not against the weight of the evidence." *Id.* With respect to Petitioner's claim regarding the prosecutor's comments during closing arguments, the Appellate Division rejected his claim as "unpreserved for appellate review," explaining that Petitioner's counsel "either failed to object to the remarks or, when an objection was made, failed to request further instructions or move for a mistrial after the court issued a curative instruction." *Id.* However, the court also ruled that the comments "constituted fair response to comments made during the [Petitioner's] summation." *Id.* The Appellate Division rejected Petitioner's *pro se* speedy trial appeal as "without merit." *Id.* Finally, the Appellate Division held that Petitioner's "remaining contention is unpreserved for appellate review." *Id.* Petitioner sought leave from the New York Court of Appeals, seeking to appeal each of the grounds asserted in his main and supplemental *pro se* appellate briefs, which the Court of Appeals denied. *See People v. Bermudez,* 8 N.Y.3d 944, 836 N.Y.S.2d 554, 868 N.E.2d 237 (2007).

Petitioner then moved, *pro se,* to vacate his conviction, pursuant to N.Y. Criminal Procedure Law § 440.10. (*See* Petitioner's 440.10 Brief ("Pet. 440 Br.").) Petitioner contended his conviction should be vacated because: (1) his statutory and constitutional speedy trial rights were violated, (2) the prosecutor improperly changed her theory of the case from actual to constructive possession, (3) the prosecutor engaged in misconduct during summation, (4) the trial court failed to instruct the jury on accomplice testimony, (5) the prosecutor failed to turn over *Rosario* material, and (6) he received ineffective assistance of counsel. Petitioner's motion

to vacate was denied in its entirety. *See People v. Bermudez,* Indict. No. 3918/00, N.Y. Supreme Court, Queens County Criminal Term, Decision & Order dated Aug. 7, 2007. The court rejected Petitioner's claims finding them "unpersuasive and without merit." *Id.* The court also rejected the claims as procedurally barred under N.Y. Criminal Procedure Law § 440.10(2)(c), as Petitioner "raised or should have raised these claims on appeal." *Id.* In addition to the procedural bar, with respect to Petitioner's ineffective assistance of counsel claim, the court held that Petitioner failed to establish prejudice and "failed to provide any objective evidence to support his claims." *Id.* Petitioner sought leave to appeal, which was denied. *See People v. Bermudez,* Appellate Division, Second Department, Decision & Order dated Nov. 13, 2008.

Petitioner then moved for a writ of error *coram nobis* based on ineffective assistance of appellate counsel, contending that appellate counsel failed to argue that: (1) the indictment was defective because it was not signed by the foreman or the District Attorney; (2) the state failed to corroborate Pabon's testimony; and (3) Petitioner's trial counsel was ineffective for his failure to (a) request Petitioner's immediate release on his speedy trial motion or a hearing on the motion; (b) make proper objections; (c) request a circumstantial evidence charge; and (d) craft a better question to elicit testimony from Petitioner regarding his prior convictions. The Appellate Division, Second Department, denied Petitioner's motion, holding that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *See People v. Bermudez,* 57 A.D.3d 555, 867 N.Y.S.2d 701 (2d Dept.2008). The New York State Court of Appeals denied leave to appeal. *See People v. Bermudez,* 13 N.Y.3d 834, 890 N.Y.S.2d 450, 918 N.E.2d 965 (2009).

**\*7** Petitioner filed the instant action on April 10, 2009, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Petition is construed as raising the following claims: (1) Petitioner's statutory and constitutional speedy trial rights were violated; (2) Petitioner's conviction is unsupported by the record; (3) Petitioner's conviction was obtained with uncorroborated accomplice testimony, in violation of N.Y. Criminal Procedure Law § 60.22; (4) Petitioner was improperly indicted; (5) Petitioner was denied a fair trial as the trial court failed to instruct the jury on circumstantial evidence; (6) the state failed to meet its discovery obligations as set forth under N.Y. Criminal Procedure Law §§ 240.44 and 240.45; (7) prosecutorial

misconduct; (8) ineffective assistance of counsel; and (9) actual innocence.

## DISCUSSION

### I. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions when the state courts have adjudicated a Petitioner's federal claims on the merits. Under the AEDPA standard, which governs the review of petitions challenging state convictions entered after 1996, federal courts may grant habeas relief only if the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable determination" is one in which "the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

*Pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (citation omitted). Courts should "interpret [such papers] to raise the strongest arguments that they suggest." *Forsyth v. Fed'n Emp't & Guidance Serv.,* 409 F.3d 565, 569 (2d Cir.2005) (citation and internal quotation marks omitted). Though a court need not act as an advocate for *pro se* litigants, in such cases "there is a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Davis v. Kelly,* 160 F.3d 917, 922 (2d Cir.1998) (citation omitted).

### II. Procedural Default

**\*8** District courts cannot review a state prisoner's federal claims, if they are barred from federal review by an independent and adequate state ground, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). When a state court concludes that a claim is unpreserved for appellate review, this is "an independent and adequate state ground that bars a federal court from granting habeas relief." *Butler v. Cunningham,* 313 F. App'x 400, 401 (2d Cir.2009) (citing *Coleman,* 501 U.S. at 750); *see also Reid v. Senkowski,* 961 F.2d 374, 377 (2d Cir.1992). Therefore, if a state court's holding contains a statement that a claim is procedurally barred based on a state rule, the federal court may not review it even if the state court also rejected the claim on the merits "in any event." *See Fama v. Comm. of Corr. Servs.,* 235 F.3d 804, 811 n. 4 (2d Cir.2000); *see also Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

If a claim has been procedurally defaulted in state court, a federal court may address its merits only if the petitioner demonstrates cause for the default and prejudice to the petitioner or that a fundamental miscarriage of justice will occur if the court does not review the claim. *See Murray v. Carrier,* 477 U.S. 478, 485, 492 (1986); *Wainright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594

(1977); *Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray,* 477 U.S. at 488; *see also Clark v. Perez,* 510 F.3d 382 (2d Cir.2008). To establish prejudice, petitioner must show that the alleged violation "worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

## III. Exhaustion

Under 28 U.S.C. § 2254(b) and (c) a petitioner must exhaust his or her state court remedies before a federal court may grant habeas relief to a petitioner in state custody. *Galdamez v. Keane,* 394 F.3d 68, 72 (2d Cir.2005). The exhaustion of state remedies requirement means that a petitioner must present his or her claim to the highest court of the state. *Harris v. Fischer,* 438 F. App'x 11, 13 (2d Cir.2011) (citing *Galdamez,* 394 F.3d at 73). A claim is properly exhausted when the state court has been "fairly apprised" of the factual and legal premises of the constitutional claim. *Id.* (citing *Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991)).

## IV. Application

### A. Speedy Trial

Petitioner contends that his statutory and constitutional speedy trial rights were violated. In particular, Petitioner contends that the trial court erred in denying his speedy trial motion because: (1) the trial court misread the "crims appearance menu" and the actual transcripts of his pre-trial proceedings indicate significant delay; (2) there was no evidence presented by the state that controverted the alleged violations; (3) the transcripts of the pre-trial proceedings were inaccurate as Petitioner never consented to adjournments; and (4) the trial court improperly attributed delay to Petitioner. Petitioner raised these issues in his *pro se* supplemental appellate brief. The Appellate Division denied Petitioner's appeal, ruling that his speedy trial claims were "without merit." *See People v. Bermudez,* 36 A.D.3d 928–29, 828 N.Y.S.2d 554 (2d Dept.2007). The New York State Court of Appeals denied leave to appeal. *See People v. Bermudez,* 8 N.Y.3d 944, 836 N.Y.S.2d 554, 868 N.E.2d 237 (2007).

Thus, Petitioner's speedy trial claims were exhausted before he sought federal habeas review of them.

**\*9** To the extent that Petitioner raises speedy trial violations premised on N.Y. Criminal Procedure Law § 30.30, a state statutory protection, his claims are not cognizable on federal habeas review. *See, e.g., Hodges v. Bezio,* 2012 WL 607659, \*4 (E.D.N.Y. Feb.20, 2012) (denying Petitioner's Section 30.30 speedy trial claim as "any alleged violation of New York's statutory speedy trial provision is a *state law* claim not cognizable on federal habeas review"). Accordingly, Petitioner's Section 30.30 speedy trial claims are dismissed with prejudice.

Petitioner also challenged his pre-trial delay as a violation of the Sixth Amendment, which guarantees the "right to a speedy and public trial." U.S. Const. amend. VI. The Supreme Court has held that it is "impossible to determine with precision when [the federal constitutional right to a speedy trial] has been denied" and has found "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." *Barker v. Wingo,* 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Instead, the Court adopted a balancing test that "compels courts to approach speedy trial cases on an ad hoc basis," considering factors that include the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530.

The first Barker factor weighs in Petitioner's favor as the overall delay between his arrest and his trial was 27 months or 810 days. *See Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (noting that lower courts have found that a post-accusation delay of one year is "presumptively prejudicial," meaning that the delay is unreasonable enough to trigger *Barker* analysis). However, the remaining factors weigh in the state's favor. Much of the complained of delay is attributable to Petitioner as Petitioner consented to adjournments, engaged in motion practice, refused to appear on numerous occasions, and sought and received new counsel three times. (*See* Resp. at pp. 21–23 (citing pre-trial transcripts for calendar dates and motion practice).) The portion of the delay attributable to the state—167 days—is not unreasonable. *See Hodges,* 2012 WL 607659, at \*5 (concluding that a delay of 29 months, even if the entire period is attributable to the prosecution, "easily falls within the range of delays found to be acceptable for speedy

trial purposes under the federal Constitution"). Furthermore, Petitioner did not aggressively assert his right to a speedy trial as he waited until November 13, 2002, nearly twenty-four months after his arrest, to first assert his right. *See United States ex rel. Eccleston v. Henderson,* 534 F.Supp. 813, 816 (E.D.N.Y.1982) (finding that "petitioner did not assert his right aggressively enough" as petitioner raised the issue only one time and nine months after his arrest). Finally, Petitioner suffered no prejudice from the delay. There is nothing in the record to indicate that he was unable to call witnesses or that the witnesses could no longer recall the events that transpired on the night of his arrest.

**\*10**  As the foregoing analysis indicates, the state court's resolution of these claims did not contravene or unreasonably apply settled Supreme Court law. Accordingly, Petitioner's speedy trial claims are dismissed with prejudice.

#### B. Sufficiency of the Evidence

Petitioner assails the legal sufficiency of the evidence presented at trial, contending that the state failed to adduce sufficient proof of each element of the crime charged—possession of a weapon in the second degree. (Pet.¶ 12.) Petitioner moved for dismissal at the conclusion of the state's case and to set aside the jury verdict on the ground that the state failed to adduce legally sufficient proof. The trial court denied both of these motions. On appeal, Petitioner argued that the state failed to prove that he had either actual or constructive possession of the firearm, as he was not the legal owner of the firearm, there was no evidence that he possessed it, and no evidence that he acted in concert with Pabon, who admitted that it was his and that he possessed it on the night of their arrests. The Appellate Division denied his claim, holding that the state's case "was legally sufficient to establish the [Petitioner's] guilt beyond a reasonable doubt" and that the "verdict of guilt was not against the weight of the evidence." *See People v. Bermudez,* 36 A.D.3d 928–29, 828 N.Y.S.2d 554 (2d Dept.2007). The New York State Court of Appeals denied leave to appeal. *See People v. Bermudez,* 8 N.Y.3d 944, 836 N.Y.S.2d 554, 868 N.E.2d 237 (2007). Thus, Petitioner's claim challenging the sufficiency of the evidence is properly before this Court as it was exhausted in the state courts.[3]

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (quoting *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson,* 433 U.S. at 317. Thus, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324.

A habeas Petitioner challenging the sufficiency of the evidence faces a "very heavy burden." *United States v. Carson,* 702 F.2d 351, 361 (2d Cir.1983). As the Supreme Court explained:

> [T]his inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

**\*11**  *Jackson,* 443 U.S. at 318–19 (citations omitted). This rigorous "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n. 16.

Under New York law, a defendant is guilty of possession of a weapon in the second degree when the evidence demonstrates that the defendant possessed a loaded firearm with the intent to use the firearm unlawfully against another individual. N.Y. Penal Law § 265.03. Possession may be proven by either actual physical possession or by constructive possession. *See* N.Y. Penal Law § 10.00(8). "A person has constructive possession of a loaded firearm if he exercises 'dominion or control' over the area in which the weapon and ammunition is found." *See Gomez–Kadawid v. Kirkpatrick,* 2011 WL 2581838, at \*9 (S.D.N.Y. May 5, 2011) (citing *People v. Manini,* 79 N.Y.2d 561, 573, 584 N.Y.S.2d 282, 594 N.E.2d

563 (1992)). Possession of an unlicensed, loaded firearm is presumptive evidence of the intent to use the firearm unlawfully against another. *See* N.Y. Penal Law § 265.15(4).

In the instant action, the state established Petitioner's constructive possession of the firearm. Detective Rottas testified that the weapon was found under the vehicle concealing Petitioner within arm's reach of Petitioner. (Tr. 328:9–21; 336:1–9.) The firearm was loaded and ready to fire as the safety trigger was off. (Tr. 330:15–24.) Lieutenant Beyers testified that the majority of Pabon's body was underneath another vehicle and that only Pabon's feet were underneath the vehicle concealing Petitioner. (Tr. 418:13–21.) According to Lieutenant Beyers, the firearm was not within Pabon's arm's reach, as Pabon's hand and arms were underneath the other vehicle. (Tr. 425:10–427:3.) Petitioner and Pabon testified otherwise. Petitioner and Pabon testified that they were hiding underneath the same vehicle facing each other. (Tr. 439:17–22; 440:24–441:10; 442:12–14.) Petitioner claimed the firearm belonged to Pabon and he did not know Pabon was carrying it that evening and that he never saw the firearm that evening. (Tr. 445:15–446:5.) Pabon testified that the firearm was his and that he threw it when they hid from the police and did not see where it landed. (Tr. 495:8–496:3, 18–20; 521:19–22.)

The state presented evidence in the form of testimony from two law enforcement officers that established the firearm was located in an area over which Petitioner exercised dominion or control. The jury also heard testimony from Petitioner and Pabon that attempted to refute the testimony of the law enforcement officers. The jury resolved this conflicting testimony in favor of the state and, in doing so, found the state's witnesses more credible than Petitioner and Pabon. A review of the record supports their credibility determinations, as Petitioner and Pabon were impeached during cross-examination on numerous issues and there were several inconsistencies in their descriptions of the events of that night. It would be improper for a habeas court to overturn the credibility determinations of the jury. Indeed, it is clear from the record that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. As such, the state court's resolution of this claim did not contravene or unreasonably apply settled Supreme Court law. Accordingly, Petitioner's sufficiency of the evidence claim is dismissed with prejudice.[4]

### C. Uncorroborated Accomplice Testimony

**\*12** Petitioner contends that he was convicted based on Pabon's uncorroborated testimony, in violation of N.Y. Criminal Procedure Law § 60.22. Petitioner first raised this claim in his 440 Motion, which the state court rejected as "unpersuasive and without merit." *See People v. Bermudez,* Indict. No. 3918/00, N.Y. Supreme Court, Queens County Criminal Term, Decision & Order dated Aug. 7, 2007. Additionally, the court rejected the claims as procedurally barred under N.Y. Criminal Procedure Law § 440.10(2)(c),[5] as Petitioner "raised or should have raised these claims on appeal." *Id.* Petitioner sought leave to appeal, which was denied. *See People v. Bermudez,* Appellate Division, Second Department, Decision & Order dated Nov. 13, 2008.

The Court must dismiss this claim. First, this claim is procedurally barred from federal habeas review as it was rejected by the state court on an independent and adequate state law ground. *See Williams v. Goord,* 277 F.Supp.2d 309, 318–19 (E.D.N.Y.2003) ("The Second Circuit and this Court have previously held that the denial of a § 440.10 motion for failure to raise a claim on direct appeal represents the application of a 'firmly established and regularly followed' New York rule.") (quoting *Arce v. Smith,* 889 F.2d 1271, 1273 (2d Cir.1989)). Second, Petitioner cannot show any prejudice from this ruling as there is no merit to his claim. Under N.Y. Criminal Procedure Law § 60.22, "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." This protection is inapplicable to the instant action as it was Petitioner, and not the state, who called his accomplice, Pabon, to testify. The state had met its evidentiary burden prior to Pabon taking the stand and the state is not required to call any witnesses to corroborate the testimony of a witness for the defense. Accordingly, Petitioner's claim arising out of uncorroborated accomplice testimony is dismissed with prejudice.

### D. Sufficiency of the Indictment

Petitioner contends that the indictment was insufficient because it did not name him. Petitioner did not raise this theory before the state courts, and thus, it is unexhausted. Nonetheless, it is entirely lacking in merit as the Petitioner is named in the caption of the indictment and he and his co-defendant are referred to as "Defendants" throughout the body of the indictment.[6] In his motion for a writ of error *coram nobis,* Petitioner assailed his indictment on the ground

that it was not signed by the foreperson or the District Attorney. To the extent the Petition can be construed as asserting this claim, it, too, lacks merit. Both the foreperson and the District Attorney signed his indictment.

### E. Circumstantial Evidence Jury Charge

Petitioner contends that he was denied a fair trial by the court's failure to instruct the jury on circumstantial evidence. Petitioner raised this claim on appeal, and it was denied as "unpreserved for appellate review," without citation to any specific authority. *See People v. Bermudez,* 36 A.D.3d 928–29, 828 N.Y.S.2d 554 (2d Dept.2007). The Court assumes that this ruling was premised on the fact that Petitioner did not request a circumstantial evidence jury instruction. Nonetheless, this claim is not cognizable on federal review. There is no federal constitutional right to a circumstantial evidence jury instruction. *See Martinez v. Reynolds,* 888 F.Supp. 459, 464 (E.D.N.Y.1995) (denying habeas relief in part because "the constitutional right to due process does not require a court to give ... special jury instructions when a case is founded on circumstantial evidence") (citing 🚩 *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1955)). Further, "[t]o the extent Petitioner's claim is grounded in state law exclusively, the claim is unreviewable by a federal habeas court." *See Parisi v. Artus,* 2010 WL 4961746, at *4 (E.D.N.Y. Dec.1, 2010) (dismissing petitioner's claim based on the trial court's denial of his request for a circumstantial evidence jury instruction). Moreover, even if Petitioner had requested the jury instruction and the court denied his request, the claim would fail. "A special instruction on circumstantial evidence is required under New York law only when the prosecution's case rests *solely* on circumstantial evidence." *Id.* at *6 (emphasis in original) (citing *People v. Ruiz,* 52 N.Y.2d 929, 437 N.Y.S.2d 665, 419 N.E.2d 343 (1981)). Contrary to Petitioner's claims, the prosecution presented both circumstantial and direct evidence. Thus, under New York law, this claim would fail. Accordingly, Petitioner's claim is dismissed with prejudice.

### F. Discovery Violations

**\*13** Petitioner contends that the state violated its pretrial discovery obligations under 🚩 N.Y. Criminal Procedure Law §§ 240.44 and 🚩 240.45, which essentially, is a claim assailing the state for failing to adhere to the discovery requirements set forth in 🚩 *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961). Petitioner faults

the state for failing to provide him with transcripts of grand jury testimony from Detectives Rottas and Frank P. Lorelli, with respect to a separately indicted case against Petitioner, and transcripts of grand jury testimony from Detective Cuebas and Lieutenant Beyers in the criminal case underlying the instant petition. (Pet.¶¶ 16(A–J).) Petitioner contends that Detective Rottas perjured himself by testifying that he was the arresting officer of the separately indicted case against Petitioner, when he was not, and by testifying that Petitioner was involved in an attempted robbery "for an unknown material" instead of, as he later testified, "money." (Pet.¶¶ 16(C–D, H).) With respect to the transcripts of the grand jury testimony of Detectives Lorelli (who testified before the grand jury that indicted Petitioner on the separate indictment), Cuebas, and Lieutenant Beyers, Petitioner asserts that the transcripts could have "support [ed] a defense of police fabrication." (Pet.¶ 16(G).)

Petitioner first raised this claim in his 440 Motion. The state court rejected this claim as procedurally barred under 🚩 N.Y. Criminal Procedure Law § 440.10(2), as Petitioner "should have raised these claims on appeal." *See People v. Bermudez,* Indict. No. 3918/00, N.Y. Supreme Court, Queens County Criminal Term, Decision & Order dated Aug. 7, 2007. The Appellate Division denied leave to appeal. *See People v. Bermudez,* Appellate Division, Second Department, Decision & Order dated Nov. 13, 2008. This claim is procedurally barred from federal habeas review as it was rejected by the state court on an independent and adequate state law ground. *See supra,* Part IV.C (explaining that rejection of a claim in state court pursuant to 🚩 N.Y.Crim. Pro. L. § 440.10(2) operates to bar federal habeas review of that claim). Moreover, Petitioner's *Rosario* claim is not cognizable on federal habeas review. *See, e.g.,* 🚩 *Green v. Artuz,* 990 F.Supp. 267, 274 (S.D.N.Y.1998) (noting that "the failure to turn over *Rosario* material is not a basis for federal habeas relief as the *Rosario* rule is purely one of a state law"). Finally, to the extent the Petition can be construed as raising a violation of 🚩 *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the claim lacks merit. There is nothing in the record to suggest that Petitioner was prejudiced by these alleged discovery violations. Accordingly, Petitioner's discovery claims are dismissed with prejudice.

### G. Prosecutorial Misconduct

Petitioner contends that the prosecutor unfairly: (1) questioned him during cross-examination about his prior convictions; (2) asked him during cross-examination whether he witnessed Pabon assault anyone on the night of their arrest; (3) impeached Pabon with Pabon's plea allocution, thereby putting facts of the attempted robbery before the jury in violation of the trial court's earlier ruling; and (4) argued during summation that: (a) Pabon's guilty plea is evidence of Petitioner's guilt, and (b) Pabon and Petitioner were cousins. On appeal, Petitioner raised only one of these grounds—that the prosecutor improperly urged the jury to consider Pabon's guilty plea as evidence of Petitioner's guilt. (Pet.App. Br. at 3.) The Appellate Division held that this claim was "unpreserved for appellate review" because Petitioner's counsel "either failed to object to the remarks or, when an objection was made, failed to request further instructions or move for a mistrial after the court issued a curative instruction." *People v. Bermudez,* 36 A.D.3d 928–29, 828 N.Y.S.2d 554 (2d Dept.2007). The Appellate Division also held that the comments "constituted fair response to comments made during the [Petitioner's] summation." *Id.* In his 440 Motion, Petitioner raised the same ground and also urged the state court to vacate his conviction because the prosecutor told the jury that he and Pabon were cousins. (Pet. 440 Br. at 13.) The court rejected the claims as "unpersuasive and without merit." *People v. Bermudez,* Indict. No. 3918/00, N.Y. Supreme Court, Queens County Criminal Term, Decision & Order dated Aug. 7, 2007. Additionally, the court held that the claims were barred under N.Y. Criminal Procedure Law § 440.10(2)(c), as Petitioner "raised or should have raised these claims on appeal." Petitioner did not raise any of the other grounds during his state court litigation.

 **\*14**  As the foregoing makes clear, none of the grounds asserted in support of Petitioner's prosecutorial misconduct claim are properly before this Court. Petitioner never raised grounds 1–3 in the state courts. As such, he did not exhaust them. Nonetheless, if Petitioner was to attempt to assert these claims in state court via a 440 motion or a writ of error *coram nobis,* the state court would reject them as they could and should have been raised on direct appeal. *See* N.Y. Criminal Procedure Law § 440.10(2)(c). Under these circumstances, a federal habeas court deems the claims exhausted, but declines to review the claims as "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." *Gray v. Netherland,* 518

U.S. 152, 162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). Thus, this Court is prevented from reviewing grounds 1–3 under an independent and adequate state law ground. In any event, these claims lack merit as Petitioner and Pabon opened the door for the prosecutor's questions. *See United States v. Beverly,* 5 F.3d 633, 639–40 (2d Cir.1993) (rejecting defendant's prosecutorial misconduct argument and explaining that "the government's opportunity to impeach the defendant's credibility once he has taken the stand includes the opportunity to use evidence that it was barred from using on its direct case").

To the extent that Petitioner's prosecutorial misconduct claim is premised on the prosecutor's comments during summation about Pabon's plea allocution, the claim is procedurally barred. The Appellate Division rejected this ground because defense counsel failed to lodge a contemporaneous objection. "It is well settled that New York's contemporaneous objection rule, codified at N.Y.C.P.L. § 470 .05, is an independent and adequate state law ground that ordinarily precludes federal habeas corpus review." *See Rivera v. Graham,* 2012 WL 397826, at \*4 (E.D.N.Y. Feb.7, 2012) (citing *Downs v. Lape,* 657 F.3d 97, 104 (2d Cir.2011)); *Robbins v. Connelly,* 2011 WL 2748679, at \*3 (E.D.N.Y. July 13, 2011) (rejecting petitioner's claim as procedurally barred and explaining that "[w]here a state court finds a claim of prosecutorial misconduct unpreserved because defense counsel failed to satisfy the contemporaneous objection rule, the petitioner's procedural default constitutes an independent and adequate state law ground for rejecting his habeas claim.").

Petitioner has made no attempts to demonstrate cause or prejudice and cannot demonstrate prejudice as this claim lacks merit. First, the prosecutor did not, as Petitioner suggests, instruct the jury to find Petitioner guilty based on Pabon's guilty plea. Rather, the prosecutor structured her summation to remind the jury of Pabon's contradictory testimony regarding his guilty plea. Initially, Pabon testified that he pled guilty to assault and criminal possession of a weapon, and that he was the individual holding the firearm that night. The prosecutor reminded the jury that the transcript of Pabon's plea allocution, as revealed during cross-examination, bore out different details: Pabon pled guilty to "attempted robbery, acting in concert with another individual, and possession of a weapon, acting in concert with another individual" and Pabon told the state court that Petitioner held the firearm that night. (Tr. 558:3–11.) Thus, this argument was not improper as it did not mislead the jury on the appropriate legal standards for determining Petitioner's guilt. Second, the

prosecutor was able to solicit this testimony from Pabon because Petitioner called Pabon as a witness and Pabon's direct testimony included statements that were in conflict with statements he made during his plea allocution. Neither the prosecutor's questions during cross-examination nor the prosecutor's comments during summation were improper. *See* *United States v. Tocco,* 135 F.3d 116, 130 (2d Cir.1998) ("The prosecution and the defense are generally entitled to wide latitude during closing arguments, so long as they do not misstate the evidence.") (citing *United States v. Myerson,* 18 F.3d 153, 163 (2d Cir.1994)); *Osario v. Conway,* 496 F.Supp.2d 285, 301 (S.D.N.Y.2007) (dismissing petitioner's prosecutorial misconduct claim, because, among other infirmities "none of the prosecutor's statements or actions were improper, as they were based on inferences fairly drawn from the evidence presented at trial").

**\*15** Finally, to the extent that Petitioner's prosecutorial misconduct claim is premised on the prosecutor's comment during summation that Petitioner and Pabon were cousins, the claim is procedurally barred from federal habeas review. Petitioner first asserted this claim in his 440 Motion, which was rejected because it could and should have been raised on direct appeal. *See* N.Y. Criminal Procedure Law § 440.10(2)(c). Petitioner has made no attempt to establish cause or prejudice, and cannot establish prejudice as the claim lacks merit. Pabon testified that the Petitioner was his cousin. (Tr. 534:7–8.) There is nothing improper about the prosecutor's restatement of this admission during summations. Accordingly, Petitioner's prosecutorial misconduct claim is dismissed with prejudice.

### H. Ineffective Assistance of Counsel

Petitioner contends that he was denied the effective assistance of counsel, in violation of the Sixth Amendment. Specifically, Petitioner asserts that trial counsel failed to: (1) successfully litigate the speedy trial motion; (2) investigate false statements contained in the "crims appearance menu" and to request an evidentiary hearing to resolve the alleged inconsistencies between the "crims appearance menu" and the transcripts of pre-trial proceedings; (3) solicit testimony regarding Petitioner's prior convictions in a manner that would not overturn the trial court's *Sandoval* ruling; (4) object to prejudicial closing arguments; (5) request an accomplice jury charge; and (6) request a circumstantial evidence charge. Petitioner first raised a claim for ineffective assistance of counsel, asserting each of these grounds, in his 440 Motion.

(Pet. 440 Mot. pp. 13–17.) The trial court rejected his claim as procedurally barred under N.Y. Criminal Procedure Law § 440.10(2)(c) as Petitioner "should have raised these claims on appeal." Additionally, the trial court held that Petitioner failed to establish prejudice and "failed to provide any objective evidence to support his claims." Petitioner sought leave to appeal, which was denied. [7]

Under the Sixth Amendment, criminal defendants "shall enjoy the right ... to have the Assistance of Counsel for [their] defense." U.S. Const. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). To prevail on an ineffective assistance of counsel claim, petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness" measured by "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A "reasonable probability" of a different result is a "probability sufficient to undermine confidence in the outcome." *Id.*

"The burden of establishing both constitutionally deficient performance and prejudice is on the defendant." *U.S. v. Birkin,* 366 F.3d 95, 100 (2d Cir.2004) (citing *Strickland,* 466 U.S. at 687). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690. Generally, "strategic choices made by counsel after a thorough investigation of the facts and law are 'virtually unchallengeable,' though strategic choices 'made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Thomas v. Kuhlman,* 255 F.Supp.2d 99, 107 (E.D.N.Y.2003) (quoting *Strickland,* 466 U.S. at 690–91).

### 1. Exhaustion and Procedural Default

**\*16** As a preliminary matter, Petitioner's claims regarding his trial counsel are procedurally defaulted as New York rejected them on an independent and adequate state procedural rule— N.Y. Criminal Procedure Law §

440.10(2). *See* *Murden v. Artuz,* 497 F.3d 178, 196 (2d Cir.2007) ("Where the basis for a claim of ineffective assistance of counsel is well established in the trial record, a state court's reliance on [440.10] subsection 2(c) provides an independent and adequate procedural bar to federal habeas review."). Petitioner has made no attempt to show cause and prejudice, and Petitioner cannot show prejudice as the claims lack merit.

### 2. Analysis

As this Court has found, there is no merit to Petitioner's claims regarding speedy trial violations, the accomplice jury instruction, the circumstantial evidence jury instruction, and the prosecutor's summation as the asserted claims did not amount to violations of federal constitutional law. Thus, counsel's performance arising out of these alleged violations was not deficient or prejudicial to Petitioner as the alleged violations are meritless. The Court is left with Petitioner's remaining ground for asserting an ineffective assistance of counsel claim, that counsel's performance was deficient because counsel improperly solicited testimony from Petitioner about his prior convictions in violation of the trial court's *Sandoval* ruling.

The record does not support a finding that counsel's performance was deficient. The trial court ruled that, if Petitioner testified, the prosecutor could ask him about whether he was convicted in 1995 and 1998 and whether those convictions were felonies. (Tr. 29:13–30:21.) The trial court prohibited the prosecutor from inquiring as to the "underlying facts or specific crimes charged." (Tr. 30:1–4.) During Petitioner's direct testimony, Petitioner's counsel asked Petitioner, "How many times have you been convicted of a crime?," to which Petitioner responded, "Twice." Petitioner further specified that "both" of the crimes were "felonies." (Tr. 437:16–438:9.) The question comported with the court's *Sandoval* ruling. Instead, it was Petitioner's false answer that opened the door to the prosecution's impeachment. At the *Sandoval* hearing, the court permitted the prosecution to ask about Petitioner's 1995 and 1998 convictions, which involved a total of three felony convictions, not two, as Petitioner asserted. Even the prosecutor's effort to clarify the total number of felony convictions was permissible under the *Sandoval* ruling. Further, contrary to Petitioner's contentions, neither the prosecutor nor defense counsel asked a question that was designed to solicit testimony from Petitioner about his post-arrest felony convictions.

Nonetheless, defense counsel's asking of these questions does not equate to deficient performance. His decision to solicit this testimony during Petitioner's direct testimony, rather than waiting for the prosecutor to solicit it during cross-examination, is the kind of tactical decision that courts in the Second Circuit are reluctant to second guess. *See* *United States v. Luciano,* 158 F.3d 655, 660 (2d Cir.1998) (affirming denial of an ineffective assistance of counsel claim as counsel's decision to solicit testimony from a witness about defendant's prior bad acts was a tactical decision to show bias on the part of the witness and to defuse any potential impeachment value for the prosecution); *Torres v. Fisher,* 2010 WL 1338088, at *7 (E.D.N.Y. Mar.31, 2010) ("An attorney's election to cause the introduction of evidence 'is the kind of tactical decision that courts in the Second Circuit are reluctant to second-guess.' " (citing *Jeremiah v. Artuz,* 181 F.Supp.2d 194, 205 (E.D.N.Y.2002)). Attorneys routinely solicit this information during direct testimony to deprive prosecutors of the impeachment value of such testimony, when heard for the first time during cross-examination. Moreover, counsel sought to use this testimony to bolster Petitioner's credibility by demonstrating that Petitioner pled guilty to those crimes because "[he] was guilty," with the obvious inference that he did not plead guilty to the pending weapons charge because he was not guilty of that crime. Again, this tactical decision should not be second-guessed. *See Torres,* 2010 WL 1338088, at *7 (dismissing ineffective assistance of counsel claim as counsel's decision to solicit testimony on direct examination about petitioner's prior bad acts, which the trial court had prohibited the prosecutor from asking, was a tactical decision and counsel's performance fell within the *Strickland* standard of reasonableness); *Jeremiah,* 181 F.Supp.2d at 205 (dismissing ineffective assistance of counsel claim and noting that "by establishing that petitioner admitted guilt in his only prior incident with law enforcement, counsel could have hoped that petitioner's testimony ... [about the pending charge] ... would appear more credible to the jury").

**\*17** Finally, to the extent Petitioner contends that his attorney's questioning destroyed his credibility with the jury, the record compels a contrary finding. Other portions of Petitioner's testimony likely harmed his credibility with the jury. For example, when asked why they were on the street on the night of their arrest, Petitioner and Pabon indicated that they were walking to meet two "girls," but Petitioner and Pabon contradicted each other as to the names of the girls. (*Compare* Tr. 448:13–449:19; *with* Tr. 505:12–21.) They also

contradicted each other as to whether Pabon assaulted anyone prior to their hiding underneath the vehicles. (*Compare* Tr. 463:1–10; *with* Tr. 506:16–17.) And they contradicted each other as to their locations underneath the vehicle. (*Compare* Tr. 440:24–441:10, 442:12–14; *with* Tr. 521:19–22.)

For all of the reasons set forth above, the state court's resolution of this claim did not contravene or unreasonably apply settled Supreme Court law. Accordingly, Petitioner's ineffective assistance of counsel claim is dismissed with prejudice.

### I. Actual Innocence

The Court construes the Petition as raising a claim of actual innocence as Petitioner states that he "is actually innocent of the crimes charged in the indictment," and cites to *Schlup v. Delo,* 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). (Pet.¶ 7.) Petitioner did not raise this claim in any of his state court proceedings. Thus, he failed to exhaust this claim. Moreover, " 'actual innocence' itself is not a free-standing cognizable ground for habeas relief." *See Russell v. Rock,* 2008 WL 5333327, at *5 (E.D.N.Y. Dec.19, 2008) (dismissing petitioner's claim of actual innocence); *Herrera v. Collins,* 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) ("Claims of actual innocence ... have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). Even if the Court were to consider Petitioner's freestanding actual innocence claim, he has presented no "new reliable evidence ... that was not presented at trial." *Schlup,* 513 U.S. at 324 (discussing actual innocence claims and explaining that "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial"). Accordingly, Petitioner's claim of actual innocence is dismissed with prejudice.

### CONCLUSION

For the reasons set forth above, the Petition is denied in its entirety and the case is dismissed with prejudice. Petitioner is denied a certificate of appealability, as he has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* FED. R.APP. P. 22(b); *Miller–El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Luciadore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**\*18** SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 3779211

### Footnotes

1   *People v. Sandoval,* 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974). "In New York state courts a defendant may request a preliminary hearing, known as a *Sandoval* hearing, to determine whether, if he elects to testify, his prior criminal record may be used to impeach his credibility." *Norde v. Keane,* 294 F.3d 401, 408 n. 1 (2d Cir.2002).

2   The Court notes that the information regarding Petitioner's motion to set aside the verdict was obtained from Petitioner's Appellate Brief. The state failed to submit any documentation of this motion in the record. Nonetheless, the specifics of defense counsel's arguments are not at issue in this action.

3   To the extent the Petition can be construed as arguing that the verdict was against the weight of the evidence, that claim is not properly before this Court, as it was not exhausted in the state courts. More importantly, that claim is not cognizable on federal habeas review. *See McKinnon v. Superintendent, Great Meadow Corr. Facility,* 422 F. App'x 69, 75 (2d Cir.2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus.").

4   To the extent that Petitioner's sufficiency of the evidence claim challenges proof of any of the other elements of the crime, it would be improper for this Court to address the merits of such claims as they were not raised in the state court and, thus, were not exhausted.

5   Under 🏴 N.Y. Criminal Procedure Law § 440.10(2)(c), a claim is procedurally barred from appellate review if the facts underlying the claim were in the record at the time of a defendant's appeal and the defendant omitted that claim from his or her appeal. *See* 🏴 N.Y.Crim. Pro. L. § 440.10(2)(c) ("Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him ....").

6   Although this claim (and a few others) was not exhausted, the Court has the authority to address such claims on the merits. *See* 🏴 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *see also* 🏴 *Rhines v. Weber,* 544 U.S. 269, 277, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005) ("[E]ven if a petitioner had good cause for [failing to present his claims first to the state courts], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.").

7   Petitioner then moved for a writ of error *coram nobis* based on ineffective assistance of appellate counsel, contending that appellate counsel failed to argue that: (1) the indictment was defective because it was not signed by the foreman or the District Attorney; (2) the state failed to corroborate the testimony given by Pabon; and (3) Petitioner's trial counsel was ineffective for his failure to: (a) request Petitioner's immediate release on his speedy trial motion or a hearing on the motion; (b) make proper objections; (c) request a circumstantial evidence charge; and (d) craft a better question to elicit testimony from Petitioner regarding his prior convictions. The Appellate Division, denied Petitioner's motion, holding that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *See People v. Bermudez,* 57 A.D.3d 555, 867 N.Y.S.2d 701 (2d Dept.2008). The New York Court of Appeals denied leave to appeal. *See People v. Bermudez,* 13 N.Y.3d 834, 890 N.Y.S.2d 450, 918 N.E.2d 965 (2009). There is nothing in the petition or in the accompanying memorandum of law to suggest that Petitioner is asserting these grounds in the instant action. Accordingly, the Court will not address these claims.

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 607659
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

William HODGES, Petitioner,
v.
Norman BEZIO, Respondent.

No. 09–CV–3402 (ENV).
|
Feb. 24, 2012.

### *MEMORANDUM & ORDER*

VITALIANO, District Judge.

**\*1** *Pro se* petitioner William Hodges is before the Court on his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the writ is denied and Hodges's habeas petition is dismissed.

### I. *BACKGROUND*

On November 12, 1999, Officer David Gonzalez was shot in the front right hip after responding to a 911 call in Queens. Officers who were present at the scene testified that they witnessed and intervened in a struggle between Gonzalez and Hodges, which resulted in Hodges discharging one round from Gonzalez's police-issued handgun. After the shooting, the struggle continued between Hodges and police, which resulted in a stolen handgun falling to the floor.

Following the incident, Hodges was taken to the police precinct, where Detective Edward Dowd issued *Miranda* warnings and later obtained Hodges's confession to firing Gonzalez's weapon. On November 18, 1999, Hodges was charged under Queens County Indictment Number 3345/99 with attempted murder in the first degree in violation of N.Y. Penal Law §§ 110.00, 125.27[1][a] [i]; attempted murder in the second degree in violation of N.Y. Penal Law §§ 110.00, 125.25[1]; aggravated assault on a police officer in violation of N.Y. Penal Law § 120.11; two counts of assault in the first degree in violation of N.Y. Penal Law §§ 120.10[3], [4]; two counts of criminal possession of a weapon in the second degree in violation of N.Y. Penal Law § 265.03[2]; two counts of criminal possession of a weapon in the third degree in violation of N.Y. Penal Law § 265.02[4]; criminal possession of stolen property in the fourth degree in violation of N.Y. Penal Law § 165.45[4]; resisting arrest in violation of N.Y. Penal Law § 205.30; criminal possession of a controlled substance in the third degree in violation of N.Y. Penal Law § 220.16[1]; and criminal possession of a controlled substance in the fifth degree in violation of N.Y. Penal Law § 220.06[5].

On August 2, 2000, defense counsel served subpoenas on the Civilian Complaint Review Board and the District Attorney's Office in search of records relating to Hodges' arrest. The People moved to quash the subpoenas upon receipt, but Supreme Court denied the motion. The District Attorney filed a motion to reargue, which the court granted on November 14, 2000, but only modified its original order. Still aggrieved, on March 15, 2001, the Queens District Attorney commenced an Article 78 proceeding seeking a writ of prohibition to block enforcement of Supreme Court's orders. On July 30, 2001, the Appellate Division granted the writ. Four months later, on November 20, 2001, the Court of Appeals denied Hodges's application for leave to appeal. *Brown v. Grosso,* 285 A.D.2d 642, 729 N.Y.S.2d 492 (2d Dept.), *appeal denied,* 97 N.Y.2d 605, 762 N.E.2d 930, 737 N.Y.S.2d 52 (2001).

In the meantime, beginning on May 1, 2001, the trial court held pre-trial *Mapp/Huntley* hearings, where defense counsel argued that Hodges's confession was made in violation of his right to counsel. To support this claim, counsel elicited testimony indicating that then Judge-elect Duane Hart had placed a phone call to the precinct on the night of the arrest, invoking petitioner's right to counsel and demanding that the police cease questioning of the suspect. (Hr'g Tr. 259, 265–66.) However, Judge Hart admitted that in his conversation with the precinct he was advised that Hodges had "already rendered a statement." (*Id.* at 259, 737 N.Y.S.2d 52, 762 N.E.2d 930.) Deciding to credit the testimony of two detectives who had interrogated Hodges, the court found that petitioner failed to demonstrate that he was represented by counsel at the time he made his statement. Accordingly, the court denied Hodges's motion to suppress the statement.

**\*2** On June 24, 2002, defense counsel moved to dismiss the indictment under New York's speedy trial statute, alleging a

violation of 📁 N.Y.Crim. Proc. Law § 30.30 for prosecutorial delays exceeding six months. On December 6, 2002, the court granted the motion and dismissed the indictment on all counts. However, on April 27, 2004, that decision was reversed. The indictment was reinstated on November 15, 2004, and leave to appeal was denied on June 2, 2005. *People v. Hodges,* 12 A.D.3d 527, 784 N.Y.S.2d 638 (2d Dept.2004), *appeal denied,* 5 N.Y.3d 763, 834 N.E.2d 1267, 801 N.Y.S.2d 257 (2005).

Hodges's jury trial commenced on March 7, 2006. On April 24, 2006, Hodges was convicted of assault in the first degree; criminal possession of a weapon in the second degree; two counts of criminal possession of a weapon in the third degree; criminal possession of stolen property in the fourth degree; and resisting arrest. The jury acquitted Hodges of attempted murder in the second degree and aggravated assault on a police officer. The charge of attempted murder in the first degree was dismissed before trial; one count of assault in the first degree and one count of criminal possession of a weapon in the second degree were not submitted to the jury. Following his conviction, Hodges also pleaded guilty to criminal possession of a controlled substance in the third degree, which had been severed for trial along with the charge of criminal possession of a controlled substance in the fifth degree. Petitioner received a 25–year prison sentence for first-degree assault, paired with lesser concurrent sentences for the other charges, With respect to his guilty plea, petitioner received a two to six year sentence, also running concurrently with his other sentences.

Petitioner appealed his conviction to the Appellate Division, arguing that: (1) the court's failure to suppress petitioner's statement was erroneous because petitioner's Fifth Amendment right to counsel was invoked before he made a statement to police, (2) the police failure to videotape the confession violated petitioner's right to due process under the Fifth and Fourteenth Amendments, and (3) petitioner's conviction for possession charges should be reversed in the event that the reviewing court granted relief on either of the first two claims.

On January 13, 2009, the Appellate Division found that the hearing court properly denied defendant's suppression motion. *People v. Hodges.* 58 A.D.3d 642, 869 N.Y.S.2d 912 (2d Dept.), *appeal denied,* 12 N.Y.3d 817, 908 N.E.2d 933, 881 N.Y.S.2d 25 (2009). The court noted that "[t]he credibility determinations of the hearing court are entitled to great deference on appeal" and that "[t]he record supports the hearing court's determination to credit the detective's testimony, which established that the [petitioner's] right to counsel had not attached when the [petitioner] made the statements to detectives." *Id.* at 642, 869 N.Y.S.2d 912 (citations omitted). Moreover, the Second Department held that petitioner's claim that his due process rights were violated by the police failure to videotape the interview was "unpreserved for appellate review" and, in any event, "without merit." *Id.* In light of the court's decision on the first two grounds, petitioner's third claim became moot. On April 1, 2009, the Court of Appeals denied petitioner's application for leave to appeal. *People v. Hodges,* 12 N.Y.3d 817, 908 N.E.2d 933, 881 N.Y.S.2d 25 (2009).

**\*3** On July 14, 2009, petitioner filed a pro se motion with the Appellate Division for a writ of error *coram nobis,* arguing that he was denied his right to effective assistance of trial and appellate counsel under the Fifth, Sixth, and Fourteenth Amendments. The Appellate Division denied petitioner's application on January 19, 2010. *People v. Hodges,* 69 A.D.3d 879, 892 N.Y.S.2d 781 (2d Dept.2010). Petitioner never appealed the decision.

On July 27, 2009, Hodges filed the instant petition. He argues that: (1) his right to a speedy trial under the Sixth and Fourteenth Amendments was violated, (2) his right to counsel under the Fifth and Fourteenth Amendments was violated by the court's failure to credit the testimony of Judge Hart and suppress petitioner's statement, and (3) his right to due process under the Fifth and Fourteenth Amendments was denied by the police failure to videotape his interrogation. On August 26, 2009, Hodges filed a motion to expand and clarify his petition. There, he restates his speedy trial and right to counsel claims but adds a claim for ineffective assistance of trial and appellate counsel. He also claims that his "pre-trial right[ ] to discovery" was not adequately protected by the trial court since the police never provided the defense with phone records relating to Hart's call to the precinct.

On February 18, 2010, after filing his petition, Hodges filed a motion to vacate in state court, raising ineffective assistance of trial counsel claims. The trial court denied the motion on April 29, 2011 and permission to appeal was denied by the Appellate Division on February 2, 2012. The Appellate Division did not issue a certificate granting leave to appeal to the Court of Appeals. No further appeal of that order is available under state law. *See Roache v. Connell,* No. 06 Civ. 3567, 2011 WL 1465989, at \*1 (S.D.N .Y. April 14, 2011).

## II. *STANDARD OF REVIEW*

The Supreme Court of the United States has made it clear that "[a]s amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") ], § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington v. Richter,* 562 U.S. ——, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal. *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 332n, 99 S.Ct. 2781, 61 L.Ed.2d 560. 5, 443 U.S. 307, 99 S.Ct. 2781, 2795 n. 5, 61 L.Ed.2d 560 (1979)). Following AEDPA, a federal court is not free to issue a writ of habeas corpus under the independent "contrary to" clause if [d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000) (O'Connor, J., for the Court, Part II). Similarly, a federal court is not free to issue a writ of habeas corpus under the independent "unreasonable application" clause unless "the state court identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413. But a state court's "unreasonable application" of law must have been more than "incorrect or erroneous:" it must have been ' "objectively unreasonable.' " *Sellan v. Kuhlman,* 261 F.3d 303, 315 (2d Cir.2001) (quoting *Williams,* 529 U.S. at 409 (O'Connor, J., for the Court, Part II)).

**\*4** Lastly, claims that were not adjudicated on the merits in state court are not subject to the deferential standard that applies under AEDPA. *See, e.g., Cone v. Bell,* 556 U.S. 449, 129 S.Ct. 1769, 1784, 173 L.Ed.2d 701 (2009) (citing 28 U.S.C. § 2254(d)). But where AEDPA's deferential standard of review does apply, "[d]etermination of factual issues made by a state court 'shall be presumed to be correct,' and the applicant 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.' " *Smith v. Herbert,* 275 F.Supp.2d 361, 365–66 (E.D.N.Y.2003) (quoting 28 U .S.C. § 2254(e)(1)). "This presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility." *Parsad v. Greiner,* 337 F.3d 175, 181 (2d Cir.2003). This is because "[a]lthough state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Cullen v. Pinholster,* —— U.S. ——, ——, 131 S.Ct. 1388, 1401, 179 L.Ed.2d 557 (2011). Under AEDPA's deferential standard of review, " '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.' " *Id.* (quoting *Williams,* 529 U.S. at 437).

## III. *DISCUSSION*

### A. *Speedy Trial Claim*

Hodges first claims that his right to a speedy trial was violated. He specifically challenges the Appellate Division's adjudication of his motion under N.Y.Crim. Proc. Law § 30.30. As a preliminary matter, it is clear that a federal court may entertain a state prisoner's petition for a writ of habeas corpus *"only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added); *see Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). And any alleged violation of New York's statutory speedy trial provision is a *state law* claim not cognizable on federal habeas review. *See Gibriano v. Att'y Gen. of the State of N.Y.,* 965 F.Supp. 489, 491–92 (S.D.N.Y.1997) ("A C.P.L. § 30.30 claim has been held not to raise the federal constitutional speedy trial claim."); *Woodard v. Berry,* No. CV–90–1053, 1992 WL 106508, at \*2 (E.D.N.Y. Apr.24, 1992) (" 'Section 30.30 is a statutory time frame in which the People of the State of New York must be ready for trial; Section 30.30 is not, as such, a statutory embodiment of the constitutional guarantee to a speedy trial.").

Moreover, to the extent that Hodges asserts his right to a speedy trial under the Sixth Amendment, he has not exhausted the remedies available to him in the state courts. Since Hodges's 🔖 § 30.30 claim, as denominated, does not present a federal ground for relief, it follows that any attempts to vindicate that claim in state court did not fairly present a federal constitutional issue to those courts. *See Woodard,* 1992 WL 106508, at *2 (quoting *Picard,* 404 U.S. at 276) ("[B]ecause the petitioner presented his 'speedy trial' claim in the state courts only as a claim under 🔖 Section 30.30, ... he did not give the state courts a 'fair opportunity' to consider the federal question he now presents to this court.);

*see also* 🔖 *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (habeas petitioner does not exhaust state court remedies of a federal claim by raising a "somewhat similar state-law claim"). Hodges claims in his petition that his trial counsel in fact "filed a motion to dismiss the indictment based on violations of the 6th Amend[ment]" (Pet'r Habeas Petition at 8.) While there is no evidence of this in the record before the Court,[1] even if it were true that Hodges's trial counsel invoked the Sixth Amendment in his motion to dismiss the indictment, the claim was never presented to the Appellate Division. *See Baldwin,* 541 U.S. at 31. Therefore, Hodges did not "fairly present[ ]" his claim to the state courts. *Id.*

**\*5** In any event, Hodges's claim also fails on the merits. The Sixth Amendment guarantees the right to a "speedy and public trial" in all criminal prosecutions, U.S. Const. amend. VI, which has been recognized as a fundamental right incorporated against the States through the Due Process Clause of the Fourteenth Amendment. 🔖 *Klopfer v. North Carolina,* 386 U.S. 213, 223–24, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Unlike state statutory provisions securing the right to a speedy trial, the Supreme Court has held that it is "impossible to determine with precision when [the federal constitutional right to a speedy trial] has been denied" and has found "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." 🔖 *Barker v. Wingo,* 407 U.S. 514, 521, 523, 92 S.Ct. 2182, 2187, 2188, 33 L.Ed.2d 101 (1972). Instead, the Court has adopted a balancing test which "compels courts to approach speedy trial cases on an ad hoc basis," considering factors that include the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 🔖 *Id.* at 530.

The first *Barker* factor—the length of delay—is a "triggering mechanism" which demands inquiry into the remaining factors only when the delay is of a "presumptively prejudicial" magnitude. *Id.* To meet this threshold, a delay must be in the ballpark of approximately one year. *See, e.g.,*

🔖 *Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct., 2686, 2691 n. 1, 120 L.Ed.2d 520 (1992) (post-accusation delay "approach[ing] one year" is presumptively prejudicial);

🔖 *United States v. Vassell,* 970 F.2d 1162, 1164 (2d Cir.1992) (citations omitted) (noting "a general consensus that a delay of over eight months" is presumptively prejudicial), Hodges was arrested on November 12, 1999 and his trial did not commence until March 7, 2006, a delay of approximately 76 months. Clearly, this is sufficient to trigger further inquiry.

Considering the remaining three *Barker* factors, however, Hodges's claim fails. First, regarding the reasons for delay, the Supreme Court has acknowledged that "there are important public interests in the process of appellate review" and that "an interlocutory appeal by the government ordinarily is a valid reason that justifies delay." 🔖 *United States v. Loud Hawk,* 474 U.S. 302, 313, 315, 106 S.Ct. 648, 655, 656, 88 L.Ed.2d 640 (1986). Moreover, in judging the reasonableness of such appeals by the prosecution, courts are encouraged to consider "the strength of the [prosecution's] position on the appealed issue, the importance of the issue in the posture of the case, and ... the seriousness of the crime." 🔖 *Id.* at 315. Here, Hodges experienced pre-trial delays from November 15, 2000 to November 20, 2001 and June 24, 2002 to June 2, 2005. It is worth noting that both periods were initiated by petitioner's own efforts to vindicate his rights other than through trial. Moreover, Hodges has made "no showing of bad faith or dilatory purpose" on the People's behalf, and the Appellate Division's reversals on both motions are *"prima facie* evidence of the reasonableness of the [People's] action." *Id.* As such, both periods attributable to the prosecution's successful interlocutory appeals should be excluded for purposes of speedy trial consideration. After subtracting these periods of delay, a maximum of 29 months remain. Even if this entire span were attributable to prosecutorial delays,[2] this period easily falls within the range of delays found to be acceptable for speedy trial purposes under the federal Constitution. *See, e.g.,* 🔖 *Barker,* 407 U.S. at 534, 92 S.Ct. at 2194 (delay exceeding four years due to prosecution's decision to try related defendant first); *United States v. Fasanaro,* 471 F.2d 717, 717 (2d Cir.1973) (delay exceeding

four years due primarily to prosecution's failure to locate witness); *United States v. Saglimbene,* 471 F.2d 16, 17 (2d Cir.1972) (four year delay due to prosecution's decision to try related defendant first).

**\*6** Additionally, Hodges does not claim that he was prejudiced in any way by the People's failure to bring him to trial, whether by some impairment of his defense or by witnesses' deaths or inability to recall events accurately. *See Barker,* 407 U.S. at 532; *see also Rayborn v. Scully,* 858 F.2d 84, 94 (2d Cir.1988) (citing the reluctance of courts to find a speedy trial violation "in the absence of genuine prejudice"). Lastly, Hodges's failure to vigorously assert his speedy trial right also weighs against him. Although it is true that Hodges asserted his right to a speedy trial, he waited approximately 31 months before he did—alleging approximately nine months of delay—while another nine months lapsed following the start of his speedy trial litigation. *See United States ex rel. Eccleston v. Henderson,* 534 F.Supp. 813, 816 (E.D.N.Y.) ("petitioner did not assert his right aggressively enough" where he made only one motion to dismiss the indictment, occurring nine months after arrest and nine months before the commencement of trian, *aff'd sub nom., Eccleston v. Henderson,* 697 F.2d 289 (2d Cir.1982). All of this, of course, is not to lose sight of the fact that Hodges failed to press the claim technically before the Court now by not raising it on federal grounds in the first place.

Considering the totality of circumstances in this case, the Court concludes that Hodges's Sixth Amendment claim is without merit. It is dismissed.

### B. *Right to Counsel*

Next for consideration is the assertion that petitioner's Fifth Amendment right to counsel was violated by the trial court's failure to suppress his inculpatory statement at the precinct. Hodges claims violation because his attorney had called the station, informed the police that he represented Hodges, and insisted that the police cease their questioning—all *prior to* the time Hodges made a statement to police. Regardless that the timing is disputed, any such dispute about when the call was made is irrelevant. New York's constitutional jurisprudence on this score affords much more generous protection in that the New York Court of Appeals has held that the right to counsel attaches "once the police know or have been apprised of the fact that ... an attorney has communicated with the police for the purpose of representing the defendant." *People v. Arthur,* 22 N.Y.2d 325, 329, 239 N.E.2d 537, 539, 292 N.Y.S.2d 663, 666 (1968). Not so under federal law, where it is well-settled that "the privilege against compulsory self-incrimination is ... a personal one that can only be invoked by the individual whose testimony is being compelled." *Moran v. Burbine,* 475 U.S. 412, 434 n. 4, 106 S.Ct. 1135, 89 L.Ed.2d 410. 475 U.S. 412, 106 S.Ct. 1135, 1147 n. 4, 89 L.Ed.2d 410 (1986).[3] Moreover, "[e]vents occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." *Id.* at 422; *see United States v. Scarpa,* 897 F.2d 63, 69 (2d Cir.1990) ("[A] waiver of constitutional rights is valid even though the defendant is not informed that an attorney retained without his knowledge by third person has asked that the defendant not be questioned."). Similarly, the Constitution does not "require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." *Burbine,* 475 U.S. at 422. The federal jurisprudence is clear, therefore, that Hodges's attorney, whether retained by his mother or even by Hodges himself,[4] had no ability to invoke Hodges's right to counsel. Hodges was required to do that himself and it is undisputed that he did not. Accordingly, the writ may not issue on this ground.

### C. *Failure to Videotape Interrogation*

**\*7** Next on Hodges list is a claim that his guarantee of due process under the Fourteenth Amendment was violated by the failure of inquiring detectives to videotape his interrogation. At threshold, the Appellate Division found that this claim was "unpreserved for appellate review and, in any event, [was] without merit. *People v. Hodges,* 58 A.D.3d 642, 642, 869 N.Y.S.2d 912, 912 (2d Dept.) (internal citations omitted), *appeal denied,* 12 N.Y.3d 817, 908 N.E.2d 933, 881 N.Y.S.2d 25 (2009). It is well-established that "federal habeas review is precluded 'as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision.' " *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990) (quoting *Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 1044 n. 10, 103 L.Ed.2d 308 (1989)). Here, the Appellate Division found the claim procedurally defaulted, *in addition to* explaining that it lacked merit. If follows that even if the court had decided that the claim was meritorious, it

would have been subject to an adequate and independent state law ground for dismissal. *See* *Velasquez,* 898 F.2d at 9.

The result would not change on substantive review, since, in addition to being unpreserved, the claim is baseless. The Fourteenth Amendment does not require law enforcement to videotape custodial interrogations, notwithstanding any perceived benefits that might accrue from such a practice. It is noteworthy that Hodges has cited no federal authority to support this claim. And there is good reason. Several circuits have held that there is no federal constitutional right to a videotaped interrogation. *See, e.g.,* *United States v. Meadows,* 571 F.3d 131, 147 (1st Cir.2009), *cert. denied,* ––– U.S. ––––, 130 S.Ct. 569, 175 L.Ed.2d 394 (2009) ("[T]here is no federal constitutional right to have one's custodial interrogation recorded."); *United States v. Tykarsky,* 446 F.3d 458, 477 (3d Cir.2006) ("Whatever the merits of the policy arguments in favor of requiring the recording of interrogations may be, it is clear that such recording is not mandated by the United States Constitution."); *United States v. Zamudio,* No. 99–2256, 2000 WL 488474, at *2 (10th Cir. Apr.26, 2000) (upholding district court's rejection of petitioner's claim "that his Fifth Amendment rights were violated by the [government's] failure to tape-record his interrogation."); *United States v. Toscano–Padilla,* No. 92–30247, 1993 WL 210793, at *2 (9th Cir. June 16, 1993) ("We decline to hold ... that a failure by law enforcement officials to record an interrogation violates due process."); *United States v. Yunis,* 859 F.2d 953, 961 (D.C.Cir.1988) ( "[T]here is no constitutional requirement that confessions be recorded by any particular means."). Indeed, this is true even where the department conducting the interrogation acts contrary to internal mandates that require the use of electronic recording equipment. *See* *Linnen v. Poole,* 766 F.Supp.2d 427, 455 (W.D.N.Y.2011). Therefore, Hodges's claim fails on the merits as well.

### D. *Ineffective Assistance of Counsel*

**\*8** In his amended petition, Hodges also raises a claim for ineffective assistance of counsel. Mindful of petitioner's *pro se* status, his petition is construed as reiterating each of the grounds raised by his *coram nobis* motion and the post-petition motion to vacate in state court. On *coram nobis,* petitioner claimed he was denied effective assistance of appellate counsel for: (1) failure to confer with petitioner regarding claims that would be raised in the appellate brief

prior to its submission, (2) failure to raise issues requested by petitioner such as ineffective assistance of trial counsel, (3) failure to argue that all of petitioner's convictions be reversed and a new trial ordered, and (4) failure to claim a violation of petitioner's Fourth Amendment rights consistent with arguments raised by trial counsel. Petitioner also raised several ineffective assistance of trial counsel claims through his *coram nobis* motion. However, a *coram nobis* motion is not the proper vehicle for adjudicating ineffective assistance of trial counsel claims. *See* *Aparicio v. Artuz,* 269 F.3d 78, 100 (2d Cir.2001) (emphasis in original) (internal citations omitted) ("*Coram nobis* ... has been largely superseded by the motion to vacate a judgment [but] remains available as a remedy only in those situations *not* explicitly covered by § 440.10. Thus far, its use has been sanctioned by the [New York] Court of Appeals only in the context of ineffective assistance of appellate counsel."); *People v. Gordon,* 183 A.D.2d 915, 915, 584 N.Y.S.2d 318, 318 (2d Dept.1992) ("[T]he writ of error of *coram nobis* lies in this court only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel."). Putting aside any procedural shortcomings in the *coram nobis* petition, Hodges also subsequently filed a motion to vacate, claiming he was denied effective assistance of trial counsel for failure (1) to call important eyewitnesses Paul Leggette and Alexander Riddick to testify at trial, (2) to make a timely request to test and examine Officer Gonzalez's holster prior to trial, (3) to make a record that the evidence was insufficient to sustain the jury's verdict, (4) to request a change in venue, and (5) to move to exclude uniformed police officers from the courtroom. Hodges also claims, through his amended petition, that trial counsel was ineffective for his failure to call expert witnesses to rebut the prosecution's scientific evidence.

#### 1. *Ineffective Assistance of Trial Counsel*

To the extent that Hodges relies on his *coram nobis* motion as a method for exhausting his ineffective assistance of trial counsel claims, he succumbs to fatal strategic error. It is clear that the exhaustion requirement is not met where a petitioner seeks post-conviction relief through the wrong appellate procedure. *See* *Dean v. Smith,* 753 F.2d 239, 241 (2d Cir.1985) (citing *Ex parte* *Hawk,* 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572 (1944) (per curiam)) (Since petitioner "used the wrong procedural vehicle, the state courts never had a fair opportunity to pass on his claim."). Given that ineffective assistance of trial counsel claims may be presented only on direct appeal or through a C.P.L. § 440 motion, Hodges erred

by pursuing those claims on *coram nobis*. However, while this petition was pending, Hodges also filed a 440 motion to vacate in the trial court, raising several ineffective assistance of trial counsel claims. Though Hodges did not formally seek a stay of the instant habeas proceedings prior to filing the motion, the Court deems the notice petitioner gave that he had filed the new state court motion to be a motion to stay pending exhaustion of his ineffective assistance claims, which is granted *nunc pro tunc.* [5] The belated strategy was to no avail. Hodges's motion to vacate was denied by the trial court on April 29, 2011 and permission to appeal was denied by the Appellate Division on February 2, 2012. Although there is no right to appeal the Second Department's decision, a defendant may still appeal an adverse decision rendered by the Appellate Division to the Court of Appeals provided that a certificate granting leave to appeal has been issued pursuant to N.Y.Crim. Proc. Law § 460.20. *See* N.Y, Crim. Proc. Law § 450.90. Since Hodges has obtained no such certificate, the claim is, as a result, exhausted. [6]

**\*9** Habeas review focuses on the Sixth Amendment's guarantee that an accused not be denied the right "to have the Assistance of Counsel for his defence," U.S. Const. amend. VI, which has been incorporated against the states through the Fourteenth Amendment. *See* Gideon v. Wainright, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963). Indeed, the Supreme Court has noted in the decision controlling the outcome of this claim that "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial."

Strickland v. Washington, 466 U.S. 668, 684, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). "That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command.... An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Id.* at 685. The Sixth Amendment therefore envisions more than a mere right to counsel, but rather "the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970).

While counsel's performance may not always meet a defendant's expectations, counsel's shortcomings must reach constitutional proportions to support a claim of ineffective assistance of counsel. A defendant must first demonstrate counsel's deficient performance by showing "that counsel

made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. This requires "that counsel's representation fell below an objective standard of reasonableness," considering "all the circumstances" and "prevailing professional norms." Id. at 688. Second, a defendant must establish that "the deficient performance prejudiced his defense," by showing "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. To do this, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Furthermore, when assessing a claim of ineffective assistance, a court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Indeed, "every effort [must] be made to eliminate the distorting effects of hindsight ... and to evaluate the conduct from counsel's perspective at the time." *Id* . "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id* . at 696. At bottom, a court "should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* It is essential to heed these principles, lest "[c]riminal trials resolved unfavorably to the defendant ... come to be followed by a second trial, this one of counsel's unsuccessful defense." *Id.* at 690.

### i. Failure to Call Witnesses, Including Experts, and to Examine Evidence

**\*10** Hodges's first three claims all challenge the strategic decisions of counsel. With respect to strategic decisions of counsel during trial, "[a]ctions or omissions that 'might be considered sound trial strategy' do not constitute ineffective assistance of counsel." Gilmore v. United States, No. 09 Civ. 1183(DAB), 2011 WL 2581774, at \*5 (S.D.N.Y. June 23, 2011) (citing United States v. Berkovich, 168 F.3d 64, 67 (2d Cir.1999)). Moreover, "[t]he Second Circuit has repeatedly instructed that courts 'will not second-guess trial

counsel's defense strategy simply because the chosen strategy has failed.' " *Minor v. Henderson,* 754 F.Supp. 1010, 1018 (S.D.N.Y.1991) (quoting *United States v. Ditommaso,* 817 F.2d 201, 215 (2d Cir.1987)).

With respect to the failure to call Leggette and Riddick, it must be observed that "complaints of uncalled witnesses are not favored in federal habeas review, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Caronia v. Jones,* No. CV–84–4779, 1988 WL 83186, at *1 (E.D.N.Y. June 30, 1988) (citations omitted). *See also United States ex rel. Walker v. Henderson,* 492 F.2d 1311, 1314 (2d Cir.1974) (internal citation omitted). In Hodges's case, counsel might well have believed that calling witnesses to contradict the sworn testimony of several police officers who witnessed the events and to contradict Hodges's own incriminating statement would have been futile. Worse yet, it might have damaged counsel's credibility with the jury. In any case, it is quite difficult to say that counsel's decisions in this regard were unreasonable or failed to reflect sound trial strategy. Giving counsel the deference to which he is entitled under *Strickland,* and viewing the circumstances facing counsel at the time of trial, the Court cannot find that counsel's failure to call these other eyewitnesses constituted ineffective assistance.

With respect to calling experts, it is clear that "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert" must be called by the defense. *Harrington,* 131 S.Ct. at 791. Furthermore, cases of ineffective assistance for failure to call experts typically involve situations where expert testimony would attack the core of the prosecution's theory—for instance, where it would rebut the only evidence linking a defendant to the crime, or where the evidence of a defendant's guilt is thin and relies heavily on expert testimony. *See, e.g., Gersten v. Senkowski,* 426 F.3d 588, 607 (2d Cir.2005) (finding ineffective assistance where "the evidence against petitioner [was] relatively thin, [and] most of it could have been, but was not, effectively challenged by defense experts."); *Rogers v. Israel,* 746 F.2d 1288, 1294 (7th Cir.1984) (finding ineffective assistance where expert testimony could have rebutted the prosecution's theory in a murder case and the facts were otherwise "very close"); *Usher v. Ercole,* 710 F.Supp.2d 287, 313 (E.D.N.Y.2010) (finding ineffective assistance where "the State's case against

[petitioner] was relatively weak" and "[t]he testimony of [the prosecution's expert] and the only physical evidence in the case could each have been undermined by contemporaneous medical literature and informed expert testimony."). The central role expert testimony has played in cases that find ineffective assistance is a far cry from the circumstances of Hodges's case. Miles from being a focal point of establishing Hodges's guilt, the prosecution's expert testimony played a predominately corroborative role. The fact that Hodges fired the weapon was established primarily through the testimony of Officer Gonzalez, by police eyewitnesses, and, again, by Hodges's own statement to police. Faced with eyewitness testimony from multiple police officers and an incriminating statement from the defendant himself, counsel reasonably could have concluded that introducing expert testimony to rebut ballistics evidence would have been fruitless. Indeed, it is unclear what Hodges believes this testimony would have shown. In light of all the circumstances, counsel's conduct in neither consulting nor calling an expert in ballistics was not unreasonable.

**\*11** Finally, with respect to the failure to examine evidence contention, counsel is entitled to "make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. Moreover, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* Surely, "sometimes it is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates." *Richter,* 131 S.Ct. at 790. This may be especially true in cases where the evidence of defendant's guilt is tied more closely to witness testimony than to physical evidence requiring scientific testing. Here, rather than attempting to convince the jury that Hodges could not have grabbed Officer Gonzalez's weapon from his holster, counsel's time was more effectively spent discrediting the testimony of the various eyewitnesses who testified to seeing Hodges shoot Officer Gonzalez with the wandering weapon. Even a convincing argument that Hodges could not unholster the weapon would not carry the day. There remained eyewitness testimony that Hodges shot Officer Gonzalez with the officer's own weapon. Whether or not Hodges or the officer withdrew the weapon from the holster, several officers identified Hodges as having discharged it. In light of this, it was certainly reasonable trial strategy to focus on the eyewitness testimony about how and by whom the weapon was discharged. This testimony was at the heart of the prosecution's case, and any attempt to cast

doubts upon it appears to have been well-placed. More than that, it was largely successful—effectively winning acquittals on the most serious charges of attempted murder.

More critically, even assuming counsel made strategic miscalculations, as required by the second prong of *Strickland*, Hodges cannot show that counsel's errors prejudiced his defense. *See* 🔖 *Strickland*, 466 U.S. at 694. Hodges has provided no evidence to challenge the conclusions of the prosecution's experts, nor has he provided any other evidence to shed new light on the proceedings or the prejudicial effect of counsel's alleged lack of diligence. *See* 🔖 *Richter*, 131 S.Ct. at 792 (no prejudice where petitioner "offered no evidence directly challenging ... conclusions reached by the prosecution's experts" and "did [not] provide any direct refutation of the State's expert testimony."). Additionally, in light of the overwhelming evidence against Hodges, there is no reasonable probability that the jury's verdict would have been different. *See id.* ("[A]ny real possibility of [petitioner] being acquitted was eclipsed by the remaining evidence pointing to guilt."). More broadly, the record reveals that Hodges's conviction at trial was not due to a breakdown in the adversarial process. To the contrary, petitioner's counsel tried his case with an eye toward discrediting the prosecution's most damaging evidence, without which the case against Hodges would have been significantly weakened. Had counsel pursued the strategies petitioner suggests, the jury may have questioned counsel's credibility and wondered why, rather than confronting the principal evidence against his client, he instead chose to focus on peripheral issues that failed to absolve Hodges from any wrongdoing. To be sure, such a strategy might have undermined the substantial success counsel achieved for Hodges. The choices made by counsel were well-within the bounds of *Strickland*.

### ii. Failure to Exclude Police Officers

**\*12**  Petitioner next challenges counsel's failure to exclude uniformed, non-testifying police officers from the courtroom during trial. Hodges argues that counsel's inaction prejudiced his defense, given that "the allege[d] victim was a police officer." (Pet'r Motion to Vacate at 5.) The Supreme Court has held that the presence of uniformed officers may at times pose an "unacceptable risk" to a defendant's right to receive a fair trial. *See* 🔖 *Holbrook v. Flynn*, 475 U.S. 560, 570, 106 S.Ct. 1340, 1346–47, 89 L.Ed.2d 525 (1986) (citations omitted). However, the circumstances that pose

an unacceptable risk are far from well-defined, and few courts have encountered such risks from spectator conduct. *See* 🔖 *id.* at 571 (no unacceptable risk where four armed police officers were present in the front row behind defendant for security purposes); 🔖 *Lambert v. McBride*, 365 F.3d 557, 563–64 (7th Cir.2004) (no unacceptable risk where six to eight officers, but as many as 15, were present during the trial of colleague's alleged murderer and "there was no indication that the officers were in any way trying to intimidate the jurors."); 🔖 *Hill v. Ozmint*, 339 F.3d 187, 200 (4th Cir.2003) (citations omitted) (no unacceptable risk where officers were "dispersed throughout the courtroom" at the trial of colleague's alleged murderer but did not "brand" defendant "with an unmistakable mark of guilt"); 🔖 *Will v. Thaler*, No. H–07–CV–1000, 2010 WL 2179680, at \*22 (S.D.Tex. May 25, 2010) (no unacceptable risk where 13 police officers were present in the courtroom since "law enforcement personnel sitting in the spectator gallery may signal nothing more tha[n] fraternal support for a fallen officer's family."); 🔖 *Bell v. True*, 413 F.Supp.2d 657, 721 (W.D.Va.2006) (no unacceptable risk where "the trial judge clearly acknowledged the potential for prejudice created by the presence of uniformed officers [at trial of alleged murderer of a police officer], and there [was] no evidence that any such problem arose during the course of trial."); *but see* 🔖 *Woods v. Dugger*, 923 F.2d 1454, 1459 (11th Cir.1991) (unacceptable risk where 45 uniformed prison guards were present, for no purpose other than to observe the proceedings, at the trial of defendant charged with the murder of a prison guard in a small community where prisons provided a substantial portion of local employment). In any case, the Supreme Court has not specifically decided what circumstances or number of police officers in a courtroom actually constitute an unacceptable risk to a defendant's right to a fair trial. The short of it is, had such an application been made, it would not likely have been a winning argument, much less a clear winner.

Here, Hodges provides no evidence regarding the number of police officers that were present during trial, claiming in his amended petition that "the courtroom was filled with law enforcement person[nel] to the point of disrupting the proceedings." (Pet'r Amended Pet. at 3.) [7] But even if petitioner's conclusory description establishes the presence of numerous officers, nothing suggests that their presence reached the magnitude encountered in *Woods* or that the community was peculiarly sympathetic to Officer Gonzalez's shooting. As such, Hodges's counsel cannot be deemed

ineffective for his failure to raise an objection of such speculative and, frankly, given the absence of record support of courtroom disruption, doubtful validity. Lastly, the point here is strategy. Counsel's theory, essentially, was to attack the flood of "Blue" testimony. The presence of the uniformed police officers in the courtroom, if anything, may have complemented that point. It is not for a court to second-guess its efficacy.

**\*13**  Assuredly, counsel's representation did not fall below an objective standard of reasonableness. Quite to the contrary, counsel clearly took note of the police presence and made numerous efforts to ensure that the jury would not be adversely affected by the presence of police officers, both asking during *voir dire* whether any jurors would feel intimidated by the presence of police in the courtroom and noting their presence during trial. (Tr. 141–42, 199–200, 370–71, 652.) Finally, Hodges cannot show that any alleged failures of counsel on this score prejudiced his defense. Indeed, as noted, counsel received assurances from prospective jurors that none of them would feel intimidated by the presence of police in the courtroom. Accordingly, there is no reasonable probability that the jury would have exonerated Hodges had there been no uniformed officers present during his trial. In fact, their presence may have easily helped the defense.

### iii. Failure to Move for Change of Venue

Hodges further claims that counsel was ineffective because he did not move for a change of venue, asserting that his case was "highly publicized in the city newspaper" and that there was television news coverage throughout. (Pet'r Motion to Vacate at 5.) However, courts have been reluctant to find constitutional violations for a failure to move for a change of venue where a fair and impartial jury was empanelled and there is no proof that media coverage influenced the jury's verdict. *See United States v. Kennedy,* 21 F. App'x 82, 86 (2d Cir.2001) (internal quotation marks omitted) ("The court had little trouble empaneling a fair and impartial jury and ... the pretrial publicity had not caused a clear and convincing buildup of prejudice among the jurors."); *Strouse v. Leonardo,* 715 F.Supp. 1170, 1179 (E.D.N.Y.1989) ( "There is no allegation that any of the jurors were affected by the media coverage" or that any jurors "disregarded the admonition" from the judge not to "listen or read any account of the case if it appears in the newspaper or other media."). Petitioner does not allege that any news accounts of his case reached the jury or that any juror formed a bias or otherwise acted upon

such information in reaching a verdict. *See Strouse,* 715 F.Supp. at 1179. Furthermore, the record shows that the judge warned jurors that the case had received "some notoriety" and asked whether they had "formed any opinions which would prevent them from reaching a verdict based solely on the evidence." (Tr. 5–6.) In an abundance of caution, the judge also repeatedly alerted the jurors to this issue and stressed that they not discuss the case with anyone or read about it in the news. (*Id.* at 48, 143, 149, 153.) Consequently, petitioner has failed to show that the news coverage of the case played any role in the jury's verdict and so counsel's decision not to move for a change of venue was not deficient in any way. Since Hodges cannot show that any juror relied on evidence beyond what was adduced at trial, he also cannot demonstrate a reasonable probability that the jury's verdict would have been different following a motion to change venue. The facts do not come close to establishing the ineffectiveness of trial counsel on this basis.

### iv. Failure to Make a Record of Insufficient Evidence

**\*14**  Finally, Hodges challenges counsel's failing to make a record that the evidence was insufficient to sustain his conviction. While he does not elaborate on this claim in his petition, his *coram nobis* motion explains that his fingerprints were not found on any weapon, he was not tested for gunshot residue, and there was no ballistic evidence pointing to his guilt. It is unclear how these facts raise a claim for ineffective assistance of counsel. What is clear is that there was sufficient evidence to support the jury's verdict in this case—there were multiple police eyewitnesses who testified that Hodges shot Officer Gonzalez and Hodges was faced with his own incriminating statement to police. Any failure of counsel to "make a record of insufficient evidence" by not pursuing *other* evidence would have also likely had no impact on any appeal on insufficiency grounds.

Stepping back, the Court is cognizant of the deferential nature of its inquiry under AEDPA. In analyzing the merits of each of Hodges's claims for ineffective assistance of trial counsel, it is settled that the state court's denial of Hodges's claims constitute an adjudication on the merits. *See Richter,* 131 S.Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Clearly, AEDPA "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.' "

*Id.* at 785. Hodges must therefore above all show that "the state court's application of the *Strickland* standard was unreasonable." *Id.* at 785. Notably, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 786. Hodges's claims for ineffective assistance of trial counsel are many generations removed from a "strong case for relief." Derivatively from the Court's findings on its independent analysis of the merits of these claims, there are various legitimate reasons spread throughout the record why the state courts could have rejected Hodges's ineffective assistance claims. Quite simply, Hodges fails to surmount AEDPA's high bar. The claims, consequently, do not support issuance of the writ.

### 2. *Ineffective Assistance of Appellate Counsel*

On July 15, 2009, 12 days prior to submitting the instant petition, Hodges filed an application for a writ of error *coram nobis* in the Appellate Division, raising multiple ineffective assistance of appellate counsel claims. Since these claims were pending resolution before the Second Department, they were unexhausted at the time Hodges filed the instant petition. Once again, the Court will *nunc pro tunc* treat his petition as though his exhausted claims had been stayed pending resolution of his *coram nobis* application. *See Zavala,* 254 F.3d at 382–83. The exercise is merely academic though, since, despite his initial diligence, Hodges failed to appeal the Appellate Division's adverse decision rendered on January 19, 2010. Now that more than 30 days have passed from the date of the Appellate Division's decision, Hodges can no longer cure this defect. *See* N.Y.Crim. Proc. Law § 460.10(5)(a). Accordingly, the claim of ineffective assistance of appellate counsel is procedurally barred for failure to exhaust the remedies available to him in state court. Since it is precluded from federal habeas review, the claim is dismissed. *See* 28 U.S.C. § 2254(b)(1)(A).

**\*15** In any event, the claim is meritless. As a preliminary matter, "the proper standard for evaluating [a defendant's] claim that appellate counsel was ineffective ... is that enunciated in *Strickland.*" *Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000). When assessing appellate counsel's performance, a reviewing court should not ' "second-guess reasonable professional judgments' by appellate attorneys as to what are the most promising issues for appellate review." *Tsirizotakis v. LeFevre,* 736 F.2d 57, 65 (2d Cir.1984) (quoting *Jones*

*v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 3313–14, 77 L.Ed.2d 987 (1983)). As a corollary, "appellate counsel has no 'duty to raise every colorable claim suggested by a client,' " but must instead rely on his professional judgment in choosing which issues to press. *Vasquez v. Rock,* 08–CV–1623, 2010 WL 2399891, at \*10 (E.D.N.Y. June 10, 2010) (quoting *Barnes,* 463 U.S. at 754).

#### i. *Failure to Raise Claims Petitioner Suggested*

Hodges first contends that appellate counsel was ineffective for failing to raise points he suggested, including ineffective assistance of trial counsel and a violation of his Fourth Amendment rights. But "[t]he mere fact that [appellate counsel] was unsuccessful on appeal and did not raise every claim urged by the petitioner does not constitute ineffective assistance of counsel." *Stokes v. United States,* 2001 WL 29997, at \*4 (S.D.N.Y. Jan.9, 2001). Certainly, no Supreme Court decision "suggests ... that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Barnes,* 463 U.S. at 751. Accordingly, appellate counsel's reasoned judgment not to pursue Hodges's suggested arguments did not automatically render his assistance ineffective.

Beyond that, the appellate points Hodges faults counsel for failing to raise were clearly baseless. As discussed above, Hodges's trial counsel was not ineffective; he provided Hodges with meaningful, and partially successful, representation. Petitioner was not prejudiced in any way by council's actions or decisions. Because a claim of ineffective assistance of trial counsel would have likely failed on appeal and was decidedly not among the more potent arguments, appellate counsel's failure to raise it cannot constitute ineffectiveness. *See Figueroa v. Heath,* No. 10 CV 0121(JFB), 2011 WL 1838781, at \*28 (E.D.N.Y. May 13, 2011) ("[A]ny claim for ineffective assistance of trial counsel would not have prevailed on appeal, and, therefore, appellate counsel did not err in failing to raise such a claim."). Moving to the Fourth Amendment point, there were two handguns at the scene. There was testimony that Hodges "grabbed Officer Gonzalez's gun and shot him." (Kratter Aff. at 5.) As to the other gun, there was testimony that it "fell from [Hodges's] pocket during the struggle that followed the shooting." (*Id.* at 5–6.) Since the hearing court accepted this version of events and denied petitioner's Fourth Amendment claims, appellate

counsel exercised sound discretion by omitting this claim on appeal.

*ii. Failure to Argue for Reversal and New Trial*

**\*16** Hodges next contends that his appellate counsel should have argued for reversal on all counts and for a new trial. Appellate counsel, in his affirmation, explains that he was "unable to identify viable issues that would have resulted in reversal [of] all of the counts of which [Hodges] was convicted." (Kratter Aff. at 4 .) As a result, "the suppression of [Hodges's] statement ... was the goal of the arguments in the brief," and reversal of other charges was not justified by this approach. (*Id.*) Plainly, this decisionmaking process was well within counsel's discretion as an appellate attorney. In fact, this "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 535–36, 106 S.Ct. 2661,2667, 91 L.Ed.2d 434 (1986) (quoting *Barnes,* 463 U.S. at 751–52). It provides further powerful support justifying council's decision to omit all the arguments Hodges controverts now.

*iii. Failure to Communicate or Confer with Petitioner*

As the final argument in this set, Hodges asserts that counsel was ineffective for his failure "to discuss the specific issues which would be included in the brief." (Pet'r Coram Nobis Motion at 2.) He further alleges that he "did not have the opportunity to review the brief" before submission and "did not agree to counsel['s] arguments." (*Id.*) However, Hodges's appellate counsel claims that he wrote Hodges regarding issues in six separate letters and that he "would have sent [Hodges] a draft of the brief before filing it had [Hodges] asked [him] to do so in a timely fashion." (*See* Kratter Aff. at 4.) Insomuch as Hodges refers to the lack of communication between counsel and himself to prove that counsel omitted meritorious arguments, this claim mirrors petitioner's first point of assault against appellate counsel and on it he cannot prevail. In fact, Hodges's appellate counsel was in a better position than Hodges himself to assess which claims presented the best appellate points, and therefore any prejudice resulting from lack of communication was minimal at worst. *See* *Barnes,* 463 U.S. at 751 (internal quotation marks omitted) (recognizing "the superior ability of trained counsel in the examination into the record, research of the law, and marshalling of arguments on the appellant's behalf."). Furthermore, Hodges cannot otherwise demonstrate prejudice

because the points he complains were not raised on appeal all lack merit. *See* *Williams v. Garvin,* 97 CV 1257(NG), 1997 WL 433397, at *2 (E.D.N.Y. July 21, 1997) ("[E]ven if it were determined that no communications were had, petitioner could not establish that the result of his appeal would have been different" where his preferred claims were nevertheless without merit.). Therefore, even assuming some breakdown in the communication between Hodges and appellate counsel, the claim still fails.

**\*17** In sum, Hodges can only "establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994). This is not the case here. Just the opposite—counsel's choices were well within acceptable limits. And again, on federal habeas review, Hodges's burden of establishing ineffective assistance of appellate counsel is very high. The Appellate Division, citing *Strickland,* held that Hodges "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Hodges,* 69 A.D.3d 879, 892 N.Y.S.2d 781 (2d Dept.2010). AEDPA instructs that Hodges must show that the state court's adjudication of the claim "involved an unreasonable application of clearly established federal law, which is no small feat. *See* *Harrington,* 131 S.Ct. at 786. Furthermore, when viewed in conjunction with the standard of review demanded by *Strickland,* a habeas petitioner faces severe obstacles to obtaining relief when challenging a state court's decision on a claim of ineffective assistance. *See* *Harrington,* 131 S.Ct. at 788 (internal citations and quotation marks omitted) ("The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."). Even had the Appellate Division's determination been the exhausted final word, Hodges cannot show that its determination constituted an unreasonable application of clearly established federal law. There is no shortage of reasonable explanations for why the Second Department denied Hodges's claims on the merits. They fail on habeas review, too.

**E. *Pre–Trial Discovery***

Lastly, Hodges alleges in his amended petition that his "pre-trial rights to discovery" were violated by the trial court's failure to ensure he received phone records regarding now-Judge Hart's call to the precinct. As a preface, this claim is not exhausted. Hodges made no similar claims in state court,

either on direct appeal or through a C.P.L. § 440 motion. But, in any case, it is well-settled that "[t]here is no general constitutional right to discovery in a criminal case," and the Supreme Court has noted that "the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded." *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). At a minimum, "a defendant is entitled to specific exculpatory evidence which is material either to guilt or punishment." *United States v. Hone,* 545 F.Supp.2d 281, 284 (W.D.N.Y.2008); *see Brady v. Maryland,* 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215(1963). Notwithstanding, "[u]nless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." *Pennsylvania v. Ritchie,* 480 U.S. 39, 59, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987); *see also United States v. Rahman,* No. S3 93 Cr. 181(MBM), 1994 WL 533609, at *3 (S.D.N.Y. Sept. 30, 1994) ("Absent a particularized showing that something exists which must be disclosed before trial, the [prosecution] need do no more than acknowledge and abide by its *Brady* and *Giglio* obligations."). Moreover, "[d]efense counsel has no constitutional right to conduct his own search of the State's files to argue relevance." *Ritchie,* 480 U.S. at 59.

**\*18** Consequently, even assuming the amorphous evidence petitioner sought from the prosecution was material and would have affected the jury's verdict, Hodges has made no showing that the evidence he sought actually exists. What's more, Hodges had equal or greater access to the information he demanded, given that the records pertained to a phone call made by his own attorney. Nevertheless, the record of proceedings shows that the prosecution made persistent (though fruitless) attempts to obtain Judge Hart's phone records from his relevant wireless carrier. (*See* Hearing Transcript at 711, 732–33, 736; Calendar Call, January 3, 2002 at 2–6; Calendar Call, January 14, 2002 at 2.) Hodges has not shown that the People subsequently discovered exculpatory evidence and failed to disclose it. There is absolutely nothing that suggests that the prosecution possessed any *Brady* or other material that was not turned over as constitutionally required. The claim is dismissed.

### *CONCLUSION*

For the foregoing reasons, the petition for habeas corpus filed by William Hodges is dismissed and the writ is denied. Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). In this light, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in *forma pauperis* is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 920–21, 8 L.Ed.2d 21 (1962).

The Clerk of Court is directed to enter judgment and to close this case.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 607659

---

### Footnotes

1    Indeed, in the midst of Hodges's state court speedy trial litigation, his own brief recognized that "respondent moved to have the indictment dismissed pursuant to C.P.L. § 30.30" and further argued that "the [trial] court properly dismissed the indictment under C.P.L. § 30.30." (Brief for Defendant–Respondent at 30, 31); *People v. Hodges,* 12 A.D.3d 527, 784 N.Y.S.2d 638 (2d Dept.2004) (No.2002–11322), 2003 WL 23734185. Moreover, Hodges cited only state law to support his speedy trial claim before the Appellate Division.

2    Notably, however, this case is quite different. The Appellate Division found that fewer than six months of the initial 20–month period should have been charged to the People. *See People v. Hodges,* 12 A.D.3d 527,

784 N.Y.S.2d 638 (2d Dept.2004), *appeal denied,* 5 N.Y.3d 763, 834 N.E.2d 1267, 801 N.Y.S.2d 257 (2005). Moreover, Hodges himself does not controvert this finding. He claims that the prosecution should be charged with "184 days" of delay, obviously responding to the outcome of his statutory speedy trial litigation. (Pet'r Habeas Petition at 3.)

3   It is worth noting that *Burbine* was decided on facts nearly identical to those presently before the Court. There, defendant's sister obtained counsel for him following his arrest. An assistant public defender then called the police station, notifying detectives that their suspect was represented by counsel and that she would act as counsel if police sought to question the suspect further. After assuring counsel that no further questioning would take place, the police interrogated the suspect and elicited a full confession about an hour later. Throughout all of this, the suspect was unaware of his sister's efforts to retain counsel on his behalf and the substance of counsel's conversations with the police.

4   *See United States v. Palmieri,* No. 97–CR–0356 (JG), 1998 WL 765138, at *3 (E.D.N.Y. Apr.20, 1998) ("If the Supreme Court's holding that a suspect's Fifth Amendment rights are 'personal' is to have any meaning, then the fact that an attorney who attempts to invoke those rights without her client's knowledge was previously retained by that client, and not by a third party, should make no difference.").

5   Hodges also simultaneously requested leave to expand his petition to address the ineffective assistance claims contained in his motion to vacate. Though these claims were unexhausted at the time this petition was filed, they are addressed here on their merits as they appeared in petitioner's motion to vacate in state court. Furthermore, to the extent Hodges seeks to add any claims not previously and finally considered by the state courts, those claims would be barred as unexhausted. *See* 28 U.S.C. § 2254(b) (1)(A). Since all of petitioner's claims are thoroughly considered here, there is no need for petitioner to amend the petition formally. In light of this expansive treatment, the motion to amend is denied as academic.

6   Though the record is silent, it is likely that Supreme Court denied the motion for failure to raise ineffective assistance of trial counsel on direct appeal. If so, the claim is also defaulted.

7   Interestingly, petitioner fails to even specify whether the officers were actually in uniform or not.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.