**21-100UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DANIEL JONES,

                         Petitioner,

        v.                                          9:21-CV-01007 (AMN/ML)

DANIELLE TOPE, Psy. D.,

                         Respondent.

**APPEARANCES:**                           **OF COUNSEL:**

**DANIEL JONES**
C22582
CNY PC
P.O. Box 300
Marcy, NY 13403
Petitioner, *pro se*

**HON. LETITIA JAMES**                  **PAUL B. LYONS, ESQ.**
New York State Attorney General      Assistant Attorney General
28 Liberty Street
New York, NY 10005
*Attorneys for Respondent*

**Hon. Anne M. Nardacci, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

On September 13, 2021, Petitioner *pro se* Daniel Jones ("Petitioner"), filed a petition seeking *habeas corpus* relief pursuant to 28 U.S.C. § 2254. Dkt. No. 1 (the "Petition"). In the Petition, Petitioner asserts ten grounds upon which he should be released from the custody of the New York State Office of Mental Health, under whose supervision he is currently civilly confined.

*See* Dkt. No. 1 at 8-31.[1]  The Petition's grounds for relief concern alleged procedural deficiencies which Petitioner asserts pervaded the probable cause hearing, mental abnormality trial waiver, and dispositional hearing held pursuant to Article 10 of the New York Mental Hygiene Law ("MHL"). *See id*.  On March 17, 2022, after an extension, Respondent submitted certain records, an Answer, and a memorandum of law ("Respondent's brief") seeking to dismiss the Petition as improper and meritless.  Dkt. Nos. 16-18.  On June 13, 2022, Petitioner filed a Traverse in support of his Petition. Dkt. No. 29.

The Petition was referred to United States Magistrate Judge Miroslav Lovric, who, on February 16, 2024, issued a Report and Recommendation recommending that the Petition be dismissed and no certificate of appealability be issued.  Dkt. No. 38 at 24-25 (the "Report-Recommendation").  Magistrate Judge Lovric advised the parties that under 28 U.S.C. § 636(b)(1), they had fourteen days to file written objections and failure to object to the Report-Recommendation within fourteen days would preclude appellate review.  *Id.* at 25 & n.3.  On March 4, 2024, Petitioner filed Objections to the Report-Recommendation.  Dkt. No. 39 (the "Objections").  On April 18, 2024, following an extension, Respondent submitted a response to the Objections.  Dkt. No. 43.

For the reasons set forth below, the Court[2] adopts the Report-Recommendation in its entirety.

## II.     STANDARD OF REVIEW

### A.     The Antiterrorism and Effective Death Penalty Act

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal

---

[1] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

[2] This case was reassigned to the undersigned on January 19, 2023.  Dkt. No. 35.

court may award *habeas corpus* relief with respect to a claim adjudicated on the merits in state court only if the adjudication resulted in an outcome that: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005) (quoting 28 U.S.C. § 2254(d)). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (*per curiam*) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). The Supreme Court has repeatedly explained that "a federal *habeas* court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (*per curiam*) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

**B.  Review of a Report and Recommendation**

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.'" *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See id*. at 229 (citing Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition). Similarly, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-

recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322 (TJM) (DRH), 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim); *Petersen*, 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing [ ] a 'clear error' review, 'the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Dezarea W. v. Comm'r of Soc. Sec.*, No. 6:21-CV-01138 (MAD/TWD), 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 1:17-CV-0367 (GTS/WBC), 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted).  The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Id*. (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal . . . ."  *Machicote v. Ercole*, No. 06 Civ. 13320 (DAB) (JCF), 2011 WL 3809920, at *2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 1:22-cv-567 (BKS/CFH), 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022).  After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

## III.    DISCUSSION

Petitioner has properly challenged his civil confinement pursuant to a judgment of a state court with a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.  *See Roache v. McCulloch*, No. 9:16-CV-1069-JKS, 2019 WL 4327271, at *3 (N.D.N.Y. Sept. 12, 2019) (citing, *inter alia*, 28 U.S.C. § 2254(a); *Duncan v. Walker*, 533 U.S. 167, 176 (2001) (a state court order of civil commitment satisfies § 2254's "in custody" requirement)); *accord Buthy v. Comm'r of Office of Mental Health of N.Y.*, 818 F.2d 1046, 1051-52 (2d Cir. 1987) (petition for a writ of *habeas corpus* pursuant to § 2254 is the appropriate method for an individual to challenge the fact or duration of an involuntary civil commitment to a state psychiatric institution).  Petitioner's Objections are organized into ten categories, generally tracking the ten grounds initially articulated in the Petition, and functionally objecting to the entire substance of the Report-Recommendation.[3] *See* Dkt. No. 39 at 1-15.  Although each particular objection is alone not necessarily specific, even when read with the solicitude due to Petitioner in light of his *pro se* status,[4] the Court herein conducts a *de novo* review of the Report-Recommendation.

---

[3] Petitioner did not, however, specifically object to the summaries of the background facts and parties' positions in the Report-Recommendation, *see* Dkt. No. 38 at 2-13, and the Court finds that these sections are devoid of clear error.  Accordingly, the background facts are adopted, except with respect to any particular factual dispute identified in the discussion below.

[4] In particular, Petitioner's objections to the pages cited in the Report-Recommendation appear to be the result of the Court's use of the pagination generated by the CM/ECF system (located in blue typeface font at the top center of each page), rather than the pagination included in the document (located at bottom center of each page but beginning after the cover page and table of contents).  As such, this objection is not a basis to set aside any portion of the Report-Recommendation.  The Court also notes that, in further deference to Petitioner's *pro se* status, it will address each ground in the Petition without first reviewing issues of exhaustion or procedural default, and will instead focus on the merits of each asserted ground.  *See McCulloch*, 2019 WL 4327271, at *4 ("Despite [petitioner's] failure to exhaust a number of his claims, this Court nonetheless may deny those unexhausted claims on the merits and with prejudice.") (citing 28 U.S.C. § 2254(b)(2)).

## A.      Ground 1: The Untimely Probable Cause Hearing

Petitioner's first ground concerns the fact that a probable cause hearing pursuant to MHL § 10.06(g), which had been scheduled to occur on March 7, 2012, was adjourned until June 27, 2012—a delay of nearly four months.  Dkt. No. 1 at 8-9.  Petitioner maintains that he was neither responsible for the delay nor consented to it.  *Id*.  The Report-Recommendation adopted the reasoning of Respondent's brief, specifically highlighting that "the delay in holding the hearing was primarily attributable to Petitioner's request for a change in venue" and that "[t]he New York Appellate Division's denial of Petitioner's claim did not unreasonably apply clearly established Supreme Court law."  Dkt. No. 38 at 17; *see also id*. at 6.  In his Objections, Petitioner argues against the Report-Recommendation's conclusions with respect to the first ground because: (a) in requesting a change in venue he did not "consent[ ] to a waiver of all time frames for holding a probable [cause] hearing;" and (b) "the delay in conducting the probable cause hearing was a chain of violating" Petitioner's procedural due process rights by extending his "detention beyond the days allotted by the statute."  Dkt. No. 39 at 1-2.  On this ground, the Court agrees with the Report-Recommendation that Respondent has the better argument.

The MHL affords a detained individual a probable cause hearing to "commence no later than seventy-two hours from the date of the [individual's] anticipated release date."  MHL § 10.06(h).  However, the same section of the MHL makes clear that a "failure to commence the probable cause hearing within the time periods specified shall not result in the dismissal of the petition and shall not affect the validity of the hearing or the probable cause determination."  *Id*.  Accordingly, while Petitioner may have correctly identified a failure to comply with state law, such failure is, per the terms of the state law, not one upon which the state would grant the relief

Petitioner seeks.[5]  It follows then, that the error is not so egregious as to constitute a violation of Petitioner's constitutional rights to procedural due process.  On this point, Petitioner's citation to *Mental Hygiene Legal Serv. v. Spitzer*, No. 07 CIV. 2935 (GEL), 2007 WL 4115936, at *11-15 (S.D.N.Y. Nov. 16, 2007), *aff'd sub nom.*, No. 07-5548-CV, 2009 WL 579445 (2d Cir. Mar. 4, 2009), is unavailing.  There, the court preliminarily enjoined enforcement of indeterminate detention without a determination of probable cause.  Further, Petitioner is unable to identify any prejudice he suffered as a result of the delayed hearing, because the state court ultimately found probable cause to detain Petitioner,[6] and as such, he was not detained any longer than had the hearing occurred within the statutory time.  *See Atkinson v. Okocha*, No. 20-CV-4497 (JS) (ST), 2021 WL 1550493, at *5 (E.D.N.Y. Apr. 19, 2021) ("Plaintiff has not alleged how the brief delay in holding the probable cause hearing harmed Plaintiff, particularly given the fact that his continued detention was ordered.").  The Court therefore adopts the Report-Recommendation as to this ground.

### B.    Ground 2: Probable Cause Found Based on Legally Insufficient Evidence

Petitioner's second ground asserts that his due process rights were violated by the state court determination of probable cause for his continued detention because it was based on legally insufficient evidence.  Dkt. No. 1 at 9-11.  In the Report-Recommendation, Magistrate Judge Lovric determined that this objection was procedurally defaulted without an exception, *see* Dkt. No. 38 at 17-18, and concluded that the objection was in any event insufficient on state law grounds and meritless, *see id*. at 19.  In particular, Magistrate Judge Lovric rightly noted that the MHL

---

[5] Furthermore, MHL § 10.08(f) provides that "[t]ime periods specified by provisions of this article for actions by state agencies are goals that the agencies shall try to meet, but failure to act within such periods shall not invalidate later agency action."

[6] The legal sufficiency of this finding is discussed below in Section III.B.

expressly states that no appeal may be taken from a determination of probable cause, and that any error in the determination "was mooted by the subsequent mental abnormality finding by clear and convincing evidence."[7]  *Id*. (citing MHL § 10.13(b); *State v. Kenneth II*, 190 A.D.3d 33, 37-38 (3d Dep't 2020)).   Petitioner's citation to *State v. Kerry K.*, 157 A.D.3d 172 (2d Dep't 2017), is unavailing because there the appellate division overturned a determination of mental abnormality, but did not disturb the earlier predicate probable cause determination.  *See id*. at 188 (reversing a determination of mental abnormality because "it was error to permit the State's experts to testify about the 1982 convictions" which were vacated due to the defendant's actual innocence, but affirming use of sworn statements regarding unindicted conduct found to be sufficiently reliable and more probative than prejudicial).  Accordingly, the Court adopts the Report-Recommendation as to this ground.

## C.    Ground 3: The Untimely Mental Abnormality Trial

Petitioner's third ground asserts that his subsequent mental abnormality trial was delayed such that his federal due process rights were violated.  Dkt. No. 1 at 11-12.  After determining that this ground was procedurally defaulted because it was not presented to the New York Court of Appeals, *see* Dkt. No. 38 at 20, Magistrate Judge Lovric recommended that this ground be dismissed because it was barred by state law and was in any event meritless, *see id*. at 20-21.   In his objections in support of this ground, Petitioner notes that he did allege "cause" for not including

---

[7] Petitioner also alleges that the probable cause hearing improperly relied only on the testimony of Dr. Colista, the State's psychiatric examiner. Dkt. No. 1 at 9-10.  This assertion is insufficient to provide federal *habeas* relief because courts in this circuit have found testimony from a medical expert alone to be sufficient to comport with procedural due process even at the trial stage of the MHL Article 10 process. *See, e.g.*, *McCulloch*, No2019 WL 4327271, at *10-12 (analyzing a similar argument as either "a federal due process or confrontation [clause] claim" and finding that the state court's reliance "exclusively on [oral] expert testimony" "reasonable and in compliance with clearly established Supreme Court law"); *see also State v. Floyd Y.*, 22 N.Y.3d 95, 105-06 (2013) ("In many [MHL] article 10 trials, expert testimony may be the only thing a jury hears.").

this ground in his state court application.  Dkt. No. 39 at 3-5.  His alleged cause appears to be that "the Court of Appeals was precluded from review based on the state constitution as it lacked jurisdiction on a question of fact" and that "[t]he Appellate Division ba[s]ed its review on a state procedural issue."  *Id*. at 4.  These objections are not sufficient to overcome Magistrate Judge Lovric's recommendation with respect to this ground.  Indeed, neither issue Petitioner specifically identifies in his Objections would provide cause for failing to follow state procedures to preserve his claim, which he was not otherwise inhibited from doing, and, in any event, he was not ultimately prejudiced by the Appellate Division's denial.  *See* Dkt. No. 38 at 20-21; *see, e.g.*, *O'Dell v. Schneiderman*, No. 9:13-CV-635 (GLS/ATB), 2014 WL 2573159, at *11 (N.D.N.Y. June 9, 2014) (finding that a "two year delay in scheduling the [mental abnormality] trial did not violate plaintiff's constitutional rights," where the "court had already found that plaintiff was sufficiently dangerous at the probable cause hearing").  Finally, to the extent that Petitioner correctly argues that not all, or even most, of the delay in Petitioner's mental abnormality trial was his fault, such delay was not prejudicial because Petitioner ultimately waived his right to a trial by acknowledging that he had a mental abnormality, and delays of comparable or longer length are not unconstitutional.  *See Flowers v. Warden, Conn. Corr. Inst*., 853 F.2d 131, 133 (2d Cir. 1988) (collecting cases with delays ranging from 24 months to 6 years where no speedy trial violation was found); *Roache*, 2019 WL 4327271, at *4 (finding no prejudice from a 16-month delay).  Accordingly, the Court adopts the Report-Recommendation as to this ground.

### D.    Ground 4: Petitioner's Admission of Mental Abnormality Was Not Made Knowingly, Voluntarily, and Intelligently

Petitioner's fourth ground is that his admission of mental abnormality at the hearing was not made knowingly, voluntarily, and intelligently in accordance with due process.  Dkt. No. 1 at 12-14.  The Report-Recommendation adopted the reasoning of Respondent's brief in determining

that this ground was meritless because the waiver was both knowing and intelligent, *see* Dkt. No. 18 at 39-41, and free of undue or coercive influence, *see id*. at 41-43.  Dkt. No. 38 at 8-9, 22. Petitioner's objection in support of this ground articulates three reasons that his waiver was insufficient: (1) "The trial court implied to Petitioner [that] it had already determined he suffered from a mental abnormality," (2) he was never informed that the State had the burden to "prove [b]y clear and convincing evidence [that] he suffered a mental abnormality" and Petitioner "never stated that he had serious difficulty in controlling his conduct," and (3) "the waiver was not made clear, unmistakable and without ambiguity." Dkt. 39 at 6.  Petitioner also notes that he later moved to withdraw his admission.  *Id*.

As to this ground, the Court notes that Petitioner acknowledges that at his August 8, 2016 mental abnormality trial, "after speaking with assigned counsel, and weighing his options[, he] agreed to waive his right to a jury trial and state that he had a mental abnormality.  [Petitioner] further stated that his waiver was voluntary, knowingly and intelligently given." Dkt. No. 1 at 13.[8] A month later, however, on September 7, 2016, Petitioner renewed his request for assignment of new counsel and moved to withdraw his trial waiver.  *Id*. at 13-14.  The court granted Petitioner's first request and assigned new counsel, who then represented Petitioner in arguing to reverse his trial waiver by submitting a brief and arguing the motion at a June 15, 2017 hearing.  *Id*. at 14. The state court denied the motion and found that Petitioner's waiver was knowing, intelligent, and voluntary, and that there was no ineffective assistance of counsel.  *Id*.  Nothing in Petitioner's objections on this ground[9] sway the Court to reject Magistrate Judge Lovric's recommendation.

---

[8] Petitioner also notes that he had previously filed a *pro se* motion with the court seeking assignment of new counsel, and the court had deferred ruling on it.  Dkt. No. 1 at 13.

[9] Petitioner also makes arguments here more applicable to his grounds based on ineffective assistance of counsel, discussed in Section III.G below, or the use of hearsay evidence, discussed in Section III.H below.

Significantly, even if the standard for waiving an MHL Article 10 mental abnormality trial is the same as for waiving trial in criminal matters, *cf*. Dkt. No. 18 at 39 (arguing there is no established federal law on the matter), Petitioner contemporaneously acknowledged the rights he had and was giving up, including the right to have a jury and not the judge or the State's experts make the mental abnormality determination, and further asserted that he was following the reasoned advice of counsel.  *See* Dkt. No. 1 at 13; Dkt. No. 18 at 40-41.  Further, Petitioner identifies no specific flaw with Respondent's reasoning, which relied on the determinations of the Appellate Division in denying his appeal on these grounds, and which did consider the breadth of his argument, despite Petitioner's conclusory allegations to the contrary.  *See* Dkt. No. 18 at 41-43. Accordingly, the Court adopts the Report-Recommendation as to this ground.

### E.    Ground 5: The State Court Failed to Conduct a Proper Trial Waiver Allocution

Petitioner's fifth ground is that the state court failed to conduct a proper allocution during his mental abnormality trial waiver.  Dkt. No. 1 at 14-16.  Petitioner's objections make clear that this ground largely reiterates Petitioner's concerns with the procedure addressed in his other grounds based on the mental abnormality trial waiver, grounds four, six, and seven.  *See* Dkt. No. 39 at 6-9 (identifying ground five as "Petitioner's waiver was not voluntary" and reiterating Petitioner's prior request for assignment of new counsel due to ineffectiveness, his later move to withdraw his waiver, and his disagreement that there is no federal standard for such a waiver). Insofar as the Court has determined that Petitioner's allegations that his trial waiver was not knowing, intelligent, and voluntary is without merit, *see supra* § III.D, the Court will proceed to consider the specific challenges to the waiver procedure discussed in grounds six and seven.  Those determinations notwithstanding, the Court adopts the Report-Recommendation as to this ground. *See* Dkt. No. 38 at 8-9, 21-22.

11

**F.     Ground 6: The State Court Improperly Refused Petitioner's Adjournment Request**

Petitioner's sixth ground is that the state court improperly refused Petitioner's request for an adjournment of his mental abnormality trial, in violation of his due process rights.  Dkt. No. 1 at 16-18.  The basis for Petitioner's adjournment request was the fact that prior to the scheduled trial date, Petitioner's expert, Dr. Ewing, revised his expert report to concur with the State's experts' revised reports, which found that Petitioner had a mental abnormality and was a dangerous sex offender requiring confinement, and included new allegations of sexual abuse Petitioner perpetrated against two of his stepchildren for many years before his incarceration.  *Id*. at 17-18. The State indicated that the stepchildren were prepared to serve as witnesses at the mental abnormality trial, *id*. at 17, and the state court found that Petitioner was not prejudiced by late notice of the two new witnesses and denied the request for a continuance, *id*. at 18.  On this ground, Magistrate Judge Lovric adopted the reasoning of Respondent's brief that there was no established federal law on the standard for granting an adjournment in a civil confinement trial, and that the state court decision here comported with constitutional requirements in criminal matters as reasonable and not arbitrary, and Petitioner was not prejudiced.  Dkt. No. 38 at 21; Dkt. No. 18 at 44-46 (noting, *inter alia*, that in the 14 months after the mental abnormality trial waiver, neither Petitioner nor his counsel could retain an expert to testify in Petitioner's favor).

Petitioner's objections in support of this ground largely reiterate his general objections or concerns raised previously, and discussed above, *see, e.g.*, §§ III.D-E.  *See* Dkt. No. 39 at 8-10. Petitioner acknowledges in his Objections that the disclosure of new witness evidence was made "a few months before commencement of the trial," *id*. at 8, but argues that his "adjournment claim was not limited to his request seeking another independent doctor [expert], but was based on additional facts as articulated in his Traverse."  *Id*. at 9 (citing Dkt. No. 29 at 20-24).  However, in his Traverse, Petitioner makes this very argument with no additional facts.  *See* Dkt. No. 29 at 23

("Based on the aforementioned facts presented reveal/show Petitioner was prejudiced by not permitting him an adjournment to obtain an independent expert to represent him . . . ."). As noted by Respondent and endorsed by Magistrate Judge Lovric, Petitioner was not prejudiced by the denial of his adjournment request because he did not ultimately find an expert to testify in his favor at the dispositional hearing, 14 months later. *See* Dkt. No. 38 at 21-22; Dkt. No. 18 at 43-46. Because his only other articulated argument in support of this ground is more appropriately addressed in the immediately subsequent discussion about effective assistance of counsel, the Court adopts the Report-Recommendation as to this ground.

G.   **Ground 7: Petitioner Was Deprived of Effective Assistance of Counsel**

Petitioner's seventh ground concerns alleged ineffective assistance of counsel at his mental abnormality trial and related proceedings. Dkt. No. 1 at 18-25. Magistrate Judge Lovric noted that there is no well-established federal law concerning ineffective assistance of counsel at civil confinement proceedings, *see* Dk. No. 18 at 48-51, and found that, even if there were, the state trial and appellate courts did not unreasonably deny Petitioner's claim, *see id*. at 51-58. Dkt. No. 38 at 8-9, 22. In his objections supporting this ground, Petitioner argues that the trial court improperly failed to inquire into Petitioner's complaints about his assigned counsel, and states in conclusory terms that if it had, there would have been a ruling in Petitioner's favor. Dkt. No. 39 at 10-11. Moreover, Petitioner argues that the New York Court of Appeals has applied federal constitutional standards for ineffective assistance of counsel to individuals challenging civil confinement, and that he would have met the standard under *Strickland v. Washington*, 464 U.S. 668 (1984). *Id*. at 11.

Upon *de novo* review, the Court agrees with Magistrate Judge Lovric that Petitioner's ineffective assistance of counsel argument is without merit. The Court accepts *arguendo*

Petitioner's position that in *State v. Floyd Y.*, 22 N.Y.3d 95 (2013), the New York Court of Appeals held that individuals subject to MHL Article 10 civil confinement proceedings are entitled to a right to counsel commensurate with similar criminal rights.  *See id.* at 105 (observing that MHL "article 10 provides for a host of procedural protections" including that the "respondent has a right to counsel").  However, Petitioner's complaints about his counsel's representation largely concern procedural timing issues which Petitioner does not and apparently cannot link to any prejudicial outcome.  *See, e.g.*, Dkt. No. 1 at 18-19 (identifying failures to respond to Petitioner's letters and the filing of a motion to dismiss the MHL petition only "a few days before trial was to commence").  Further, Petitioner notes several effective aspects of his counsel's representation, including having the mental abnormality trial moved forward from November 2016 to June 13, 2016.  *Id*.  Petitioner also notes that his counsel declined to advance certain arguments, including with respect to the State's failure to follow timing guidelines for MHL proceedings and the hearsay evidence in the State's experts' reports, *see id*. at 19-22, which arguments this Court has found to be without merit, *see supra* §§ III.A & n.5, III.C, *infra* § III.H.  Petitioner's argument that, as a result of his counsel's lack of preparedness, he was left with no choice but to waive a trial and admit to a mental abnormality, is plainly belied by the record in this case and the waiver allocution. *See* Dkt. No. 18 at 46-48 (quoting the waiver allocution and Petitioner's acknowledgment that he could argue his case to a jury).  Moreover, "[t]he failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which Petitioner was entitled."  *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (quoting *Strickland,* 466 U.S. at 690).  Accordingly, Petitioner has not adequately alleged error, let alone made a "showing that [his] counsel's errors were so serious as to deprive [him] of a fair trial[.]"  *Strickland*, 466 U.S. at 687, 694 (1984); *Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007) (noting that "[u]nder *Strickland*, a

14

defendant must show that . . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"); *United States ex rel. Bradley v. McMann*, 423 F.2d 656, 657 (2d Cir. 1970) (even though counsel "did not interview or consult with [petitioner] until the day trial was to begin" petitioner failed to demonstrate how the trial outcome would have been different sufficient to support his ineffective assistance of counsel claim); *McCulloch*, 2019 WL 4327271, at *8 (holding that petitioner's "ineffective assistance claims fail to satisfy the *Strickland* standard" because "he does not demonstrate how [his counsel's] actions prejudiced his defense").  The Court thus adopts the Report-Recommendation as to this ground.

### H.    Ground 8: The State Court Improperly Considered Unsubstantiated Hearsay

Petitioner's eighth ground is that the state court violated his due process rights by improperly considering unsubstantiated hearsay allegations at the dispositional hearing that followed his mental abnormality trial waiver.   Dkt. No. 1 at 25-27.   In the Report-Recommendation, Magistrate Judge Lovric adopted the reasoning of Respondent's brief in dismissing this ground because there is no clearly established federal law providing for the use of hearsay at a dispositional hearing in a civil confinement proceeding, *see* Dkt. No. 18 at 62-62, and because, in any event, the included hearsay evidence did not make the dispositional hearing fundamentally unfair, *see id*. at 65-69.  Dkt. No. 38 at 9-10, 22.  In his objections supporting the ground, Petitioner argues that federal due process does apply to MHL Article 10 dispositional hearings, *but see McCulloch*, 2019 WL 4327271, at *10 ("The Supreme Court has not clearly established that the Sixth Amendment right to confront and cross-examine witnesses attaches in involuntary civil commitment proceedings."), and notes that in *Floyd Y.*, 22 N.Y.3d 95, the inclusion of hearsay testimony was found to be prejudicial, whereas in Petitioner's case it has not

been.  *See* Dkt. No. 39 at 12.  Petitioner specifically complains that "prior to the hearsay evidence Petitioner's independent [medical] examiner found no mental abnormality, then when the hearsay evidence . . . [came to light], changed his report and determined based on that evidence [that Petitioner] had a mental abnormality."  *Id*.[10]

Initially, it is clear that Petitioner is primarily concerned with the fact that his own expert, rather than the state court or other fact finder, relied on hearsay evidence to determine that Petitioner had a mental abnormality and required confinement.  This concern is understandable, because the MHL "essentially envisions a "battle of the experts" to determine whether the respondent has a mental abnormality."  *Floyd Y.*, 22 N.Y.3d at 105-06.  It is notable, however, that there is no "inflexible rule excluding all basis hearsay" and instead "hearsay basis evidence is admissible if it satisfies two criteria. First, the proponent must demonstrate through evidence that the hearsay is reliable. Second, the court must determine that the 'probative value in helping the jury evaluate the [expert's] opinion substantially outweighs [its] prejudicial effect.'"  *Id*. at 107-09 (quoting Fed. R. Evid. 703).  Significantly, Petitioner does not allege that the hearsay evidence, whether the alleged hearsay probation records or the evidence from Petitioner's two minor stepchildren, played more than the allowable role of permitting the fact finder to understand the basis for the admissible expert testimony.  *See McCulloch*, 2019 WL 4327271, at *11 ("Under both federal and New York law, expert testimony 'is not rendered inadmissible' merely because it

---

[10] In *Floyd Y.*, the court held that "[t]he admission of the unreliable hearsay was not harmless error. The State alleged that Floyd Y. was a pedophile and presented evidence that he had abused four prepubescent children. However, two of those allegations were based on hearsay that violated Floyd Y.'s due process rights. There is a reasonable possibility the jury could have reached another verdict had it not heard testimony that Floyd Y. had committed those two sex offenses."  *Floyd Y.*, 22 N.Y.3d at 110.  Here, unlike in *Floyd Y.*, Petitioner's own medical expert found the hearsay evidence sufficiently probative and reliable to revise his report to determine that Petitioner had a mental abnormality and was a dangerous sex offender requiring confinement.  *See supra* § III.F.

relies on other evidence which is itself not admissible.") (citing Fed. R. Evid. 703; *Floyd Y.,* 22 N.Y.3d at 107 ("we have held that hearsay may play a role in an expert's testimony because the expert may base an opinion on hearsay if it 'is of a kind accepted in the profession as reliable in forming a professional opinion'")). As such, this objection fails. Further, it does not appear that the state court made any error by determining that the hearsay in question was sufficiently reliable in light of the record of the case. *See, e.g.*, *State v. Kerry K.*, 157 A.D.3d 172, 188 (2d Dep't 2017) (it was not error to include sworn statements regarding unindicted conduct found to be sufficiently reliable and more probative than prejudicial). Finally, it bears noting that there was ample evidence in the record, even disregarding the hearsay evidence from the stepchildren, such that Petitioner was not prejudiced by the inclusion of the hearsay testimony. *See* Dkt. No. 18 at 67-68 (describing the State's evidence, including Petitioner's refusal to engage in treatment and lack of remorse for his actions, and Petitioner's inability to present favorable expert testimony). Accordingly, the Court adopts the Report-Recommendation as to this ground.

## I.    Ground 9: The State Did Not Meet Its Burden at the Dispositional Hearing

Petitioner's ninth ground is that the State did not meet its burden of proving that Petitioner was a dangerous sex offender requiring civil confinement by clear and convincing evidence at the dispositional hearing. Dkt. No. 1 at 27-29. Magistrate Judge Lovric recommended dismissing this ground because Petitioner failed to exhaust the claim by not raising it to the Appellate Division or the Court of Appeals, and because the claim is meritless, as explained in Respondent's brief. *See* Dkt. No. 38 at 22-23 (citing Dkt. No. 18 at 69-74). In his objections in support of this ground, Petitioner argues that the claim has properly been exhausted and is thus preserved, and objects to the Report-Recommendation's conclusion "that the evidence before the state court was sufficient." Dkt. No. 39 at 13-14. On the merits, Petitioner essentially argues that the evidence before the court

only consisted of expert reports and opinions, which were based largely on inadmissible hearsay, and which without such hearsay would not provide the necessary clear and convincing evidence. *See id.*; *see also* Dkt. No. 29 at 35-37.

Upon *de novo* review, the Court finds that this ground for relief in the Petition is without merit even under the more stringent standard for criminal—as opposed to civil confinement—proceedings articulated in *Jackson v. Virginia*, 443 U.S. 309, 319 (1979) (evidence is legally sufficient to support a criminal conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). Initially, Petitioner's objections with respect to the hearsay evidence from probation records and his two minor stepchildren included in the State's experts' reports and opinions is without merit, as explained above. *See supra* § III.H. Beyond hearsay, Petitioner's remaining argument is that the State's experts relied on the facts that (a) Petitioner has maintained his innocence of the sexual offenses for over 25 years, and (b) "Petitioner did not fully participate in sex offender treatment" while incarcerated, which is insufficient to find that Petitioner was a dangerous sex offender who had trouble controlling his criminal behavior. Dkt. No. 29 at 36; Dkt. No. 39 at 14. However, this argument was presented to and rejected by the Appellate Division. *See* Dkt. No. 18 at 73 ("the Appellate Division held that the hearing 'court's determination following the dispositional phase of the proceedings is supported by the written opinions and testimony of two experts'") (quoting *State v. Daniel J.*, 180 A.D.3d 1347, 1350 (4th Dep't 2020)). The record is clear that enough evidence was presented, discounting the hearsay evidence, for a reasonable factfinder to have determined that Petitioner was dangerous and required civil confinement. *See* Dkt. No. 18 at 67 (observing that the State evidence included: "petitioner's years-long, escalating pattern of sexually abusing children, as established by his

guilty plea to abusing his stepdaughter and stepson from his first marriage, and his convictions for sexually assaulting two prepubescent girls during home invasions in 1991; his inability to stop himself despite adverse consequences; his failure to take part in sex offender treatment while in prison; and his refusal to admit his wrongdoing").[11]   The Court accordingly adopts the Report-Recommendation as to this ground, as well.

**J.      Ground 10: The State Court Violated Petitioner's Procedural Rights**

Petitioner's final ground is that he has been deprived of due process as a result of the multiple violations of the procedural protections afforded by MHL Article 10.  Dkt. No. 1 at 29-31.  Petitioner's objection in support of this ground makes clear that it is in substance a catch-all for the procedural violations he identified earlier in the Petition as grounds for relief.  *See* Dkt. No. 39 at 14-15 (describing his challenge as applying to the full "State action and an erroneous deprivation due to inadequate procedures collectively[,]" and again citing *Spitzer*, 2007 WL 4115936).  Petitioner's specific objection here is that the Report-Recommendation only analyzed Petitioner's concerns with respect to the timing of the probable cause hearing and mental abnormality trial waiver, *see id*. at 14, apparently because the Report-Recommendation only cited to the earlier discussion of Petitioner's first and third grounds, *see* Dkt. No. 38 at 23.  However, in the Petition, ground ten only discusses two specific concerns: the timing of Petitioner's probable cause hearing, and the fact that his case was referred to a case review team that ultimately referred

---

[11] Petitioner also argued, for the first time in his Traverse, that his behavior while previously on supervised release from incarceration indicates that he is no longer dangerous, *see* Dkt. No. 29 at 37, however even if accepted as true, *cf*. Dkt. No. 18 at 20 (observing that "[a]lthough petitioner had engaged in community-based sex-offender treatment while on probation in the 1980s, he had continued to offend"), such evidence does not refute the ample evidence the state court relied on to reach the opposite conclusion by clear and convincing evidence.  *See State v. Kenneth II*, 190 A.D.3d 33, 40 (3d Dep't 2020) ("When reviewing legal sufficiency, courts must review the evidence that was admitted at trial . . . and view that evidence in a light most favorable to the nonmoving party.") (citing, *inter alia*, *State of New York v Floyd Y.*, 30 N.Y.3d 963, 964 (2017)).

him for civil detention.  *See* Dkt. No. 1 at 29-31.  For the reasons stated above, Petitioner's timing

concerns are insufficient.  *See supra* §§ III.A, III.C.  Further, as discussed above, Magistrate Judge

Lovric rightly observed in his analysis of Petitioner's eighth and ninth grounds that Petitioner had

failed to assert sufficient bases for his release, *see supra* §§ III.H, III.I, so Petitioner suffered no

prejudice from the referral for civil detention at the onset of the MHL process.  Accordingly,

having determined that Petitioner's other arguments concerning alleged procedural deficiencies in

his MHL Article 10 processes are without merit, the Court adopts the Report-Recommendation as

to this final ground.

### K.    Certificate of Appealability

Finally, in light of the Court's *de novo* determinations above, the Court agrees with

Magistrate Judge Lovric that a certificate of appealability is not appropriate in this case because

Petitioner has not made "a substantial showing of the denial of a constitutional right" as required

by 28 U.S.C. § 225w3(c)(2).  *See* Dkt. No. 38 at 23-24.[12]

Accordingly, the Report-Recommendation is adopted in its entirety.

### IV.   CONCLUSION

For these reasons, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 38, is **ADOPTED in its entirety**;

and the Court further

**ORDERS** that the Petition for a writ of *habeas corpus*, Dkt. No. 1, is **DENIED and**

**DISMISSED**; and the Court further

**ORDERS** that no certificate of appealability shall be issued with respect to any of

---

[12] Any further request for a certificate of appealability must be addressed to the Court of Appeals.
*See* Fed. R. App. P. 22(b).

Petitioner's claims; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Respondent's favor, serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules, and close the case.

**IT IS SO ORDERED.**

Dated: June 26, 2024
      Albany, New York

Anne M. Nardacci
U.S. District Judge